**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| WC 707 CESAR CHAVEZ, LLC, | § | Case No. 25-11915 (CGB) |
| | § | |
| Debtor. | § | |
| | § | |

### LENDER'S MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASE

**This pleading requests relief that may be adverse to your interests.  If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held. Any response must be timely filed with the United States Bankruptcy Clerk, Western District of Texas, Homer J. Thornberry Federal Judicial Building, 903 San Jacinto Blvd., Suite 322, Austin, TX 78701. If a timely response is filed, the Court will then set a hearing on the Motion, and you will be provided with notice of the date, time, and place of the hearing.  If you do not attend the hearing, the Court may decide that you do not oppose the Motion.**

# TABLE OF CONTENTS

*Page*

INDEX OF AUTHORITIES ......................................................................... ii

I.     PRELIMINARY STATEMENT ................................................................1

II.     JURISDICTION ........................................................................................2

III.    BACKGROUND ........................................................................................2

      A.      Debtor, its sole asset, and the triple net lease .........................................2

      B.      The Loan ...............................................................................................3

      C.      Debtor's repeated defaults .....................................................................4

      D.      Foreclosure attempts and state-court litigation ......................................5

      E.      Debtor's bankruptcy case ......................................................................6

IV.    This Chapter 11 case should be dismissed with prejudice for "cause" UNDER Section 1112(b) of the Bankruptcy Code ..............................................................6

      A.      Filing in bad faith is "cause" for dismissal. ............................................6

          1.      This two-party dispute is not proper for bankruptcy proceedings. .............9

          2.      All the indicia of bad faith from Little Creek are present. ........................11

          3.      Apparent equity in the property does not contravene Debtor's bad faith. ....................................................................................................16

          4.      Dismissal with prejudice is warranted. ...................................................17

CERTIFICATE OF SERVICE .....................................................................20

INDEX OF EXHIBITS .................................................................................21

# INDEX OF AUTHORITIES

*Page(s)*

## Cases

*In re 6th & San Jacinto, LLC*,
   No. 21-10942 (Bankr. W.D. Tex. Mar. 29, 2022) ...................................................................15

*In re Anderson Oaks (Phase I) Ltd. P'ship*,
   77 B.R. 108 (Bankr. W.D. Tex. 1987)...........................................................................8, 11

*In re Arboretum Crossing, LLC*,
   No. 21-10546 (Bankr. W.D. Tex. Mar. 8, 2022) ....................................................................15

*In re Brook Valley VII, Joint Venture*,
   496 F.3d 892 (8th Cir. 2007) .......................................................................................10

*In re Concord Storage & Warehouse Co., Inc.*,
   40 B.R. 831 (Bankr. S.D. Ohio 1984)..............................................................................13

*In re Elmwood Dev. Co.*,
   964 F.2d 508 (5th Cir. 1992) .........................................................................................7

*Great Value Storage LLC v. Princeton Cap. Corp.*,
   No. 01-23-00618-CV, 2025 WL 2412902 (Tex. App.—Houston [1st Dist.]
   Aug. 21, 2025) .....................................................................................................2

*In re GVS Portfolio I B, LLC*,
   No. 21-10690 (CSS), 2021 WL 2285285 (Bankr. D. Del. June 4, 2021).................... 1, 15-16

*In re Little Creek Dev. Co.*,
   779 F.2d 1068 (5th Cir. 1986) .......................................................................7-8, 11-14, 16

*In re Marino*,
   No. 09-33545-H3-11, 2010 WL 519772 (Bankr. S.D. Tex. Feb. 9, 2010)..............................8

*In re McMahan*,
   481 B.R. 901 (Bankr. S.D. Tex. 2012) ............................................................................. 9-10

*In re Perry*,
   411 B.R. 368 (Bankr. S.D. Tex. 2009) ...............................................................................3

*In re Phoenix Piccadilly, Ltd.*,
   849 F.2d 1393 (11th Cir. 1988) .....................................................................................17

*In re Red River Talc LLC*,
   670 B.R. 251 (Bankr. S.D. Tex. 2025) ...............................................................................7

*Page(s)*

**Cases**

*In re Russell*,
    348 B.R. 441 (Bankr. S.D. Tex. 2006) .................................................................18

*In re Shead*,
    No. CIV.A. H-08-1386, 2008 WL 1995373 (S.D. Tex. May 6, 2008)....................18

*In re Sherwood Enters., Inc.*,
    112 B.R. 165 (Bankr. S.D. Tex. 1989) ............................................................. 7-8

*In re Traxcell Techs., LLC*,
    657 B.R. 453 (Bankr. W.D. Tex. 2024).....................................................8-9, 11-13

*In re Triumph Christian Ctr., Inc.*,
    493 B.R. 479 (Bankr. S.D. Tex. 2013) .......................................................... 8-9, 13

*In re Turner*,
    No. 22-60200, 2022 WL 3363687 (Bankr. W.D. Tex. 2022)......................... 8-9, 17

*In re WC 3rd & Trinity, LP*,
    No. 21-10252 (Bankr. W.D. Tex. Apr. 21, 2022).....................................................15

*In re WC 511 Barton Blvd., LLC*,
    No. 21-10943 (Bankr. W.D. Tex. Mar. 29, 2022) ...................................................15

*In re WC 6th & Rio Grande, LP*,
    No. 23-11040 (Bankr. W. D. Tex. Feb. 16, 2024)...................................................15

*In re WC 717 N. Harwood Prop., LLC*,
    No. 21-10630 (Bankr. W.D. Tex. Mar. 29, 2022) ...................................................15

*In re WC Alamo Indus.*,
    No. 22-10226 (Bankr. W.D. Tex. Apr. 21, 2022).....................................................15

*In re WC Braker Portfolio B, LLC*,
    No. 22-10628 (Bankr. W.D. Tex. Oct. 13, 2022) ...................................................15

*In re WC Braker Portfolio, LLC*,
    No. 22-10293 (Bankr. W.D. Tex. May 24, 2022).....................................................15

*In re WC Culebra Crossing SA, LP*,
    No. 21-10360 (Bankr. W.D. Tex. Dec. 22, 2021)...............................................2, 15

*Page(s)*

**Cases**

*In re WC Manhattan Place, LLC,*
  No. 22-10047 (Bankr. W.D. Tex. Mar. 29, 2022) ...................................................15

*In re WC Met Ctr., LLC,*
  No. 21-10698 (Bankr. W.D. Tex. Mar. 29, 2022) ...................................................15

*In re WC S. Congress Square, LLC,*
  No. 20-11107 (Bankr. W.D. Tex. Aug. 23, 2022) ...................................................15

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................................17

11 U.S.C. § 349(a) ...........................................................................................................17

11 U.S.C. § 1112(b) ....................................................................................................... 6-7

28 U.S.C. § 157(b)(2) ........................................................................................................2

28 U.S.C. § 1334...............................................................................................................2

28 U.S.C. § 1409...............................................................................................................2

**Treatise**

Black's Law Dictionary (12th ed. 2024)...............................................................................3, 10

**Other Authority**

*Travis Central Appraisal District Property Search Portal,*
  https://travis.prodigycad.com/property-detail/191603/2025
  (last visited Dec. 22, 2025) .....................................................................................16

iv

Cesar Rainey Street, LLC (the "Lender") files this motion to dismiss (this "Motion") and respectfully states as follows:

## I.        PRELIMINARY STATEMENT

1.        This chapter 11 case is not a good-faith attempt to reorganize a struggling business. Instead, it is the latest ploy by Debtor WC 707 Cesar Chavez, LLC, a single-asset holding company controlled by Nate Paul, to avoid honoring the multi-million-dollar loan agreement it entered with Lender.  For years, Debtor has been in default on a now-matured loan, and Lender has repeatedly tried to initiate foreclosure on the piece of real property Debtor pledged as security.  Four times, Lender attempted to foreclose the property and four times Debtor has responded with state-court actions to enjoin foreclosure.  As to the most recent foreclosure posting, Debtor sought an injunction in state court, which was denied following a full evidentiary hearing.  Debtor then sought a stay from the court of appeals.  That too was denied.  Debtor then initiated an original proceeding in the Supreme Court of Texas.  That too was denied.  Now, on the morning of the fourth scheduled foreclosure sale, Debtor filed for bankruptcy in this Court, seeking to accomplish with the automatic stay what Debtor could not achieve in state court.

2.        This is a clear-cut case warranting dismissal for "cause," because the Debtor's bankruptcy petition, filed on the morning of foreclosure, was a bad-faith tactic to stall Lender from validly exercising its rights.  Specifically, this single asset real estate debtor, whose sole asset is subject to a triple net lease, presents precisely the sort of two-party dispute that this Court and other courts have repeatedly said does not belong in bankruptcy.  And if that were not enough (it is), the petition features every indicator of bad faith outlined by the Fifth Circuit in its leading case on the subject, and a sister bankruptcy court has already dismissed for cause another Nate-Paul-controlled entity as filed in bad faith under a nearly identical set of facts.  *In re GVS Portfolio I B,*

*LLC*, No. 21-10690 (CSS), 2021 WL 2285285, at *9 (Bankr. D. Del. June 4, 2021). This Court should dismiss this chapter 11 proceeding with prejudice.

## II.   JURISDICTION

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5.      The statutory predicates for the relief requested are sections 105(a) and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code") and related Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), including Bankruptcy Rules 1017 and 9014.

6.      This case has not previously been converted from another chapter of Title 11.

## III.   BACKGROUND

### A.   Debtor, its sole asset, and the triple net lease

7.      Debtor WC 707 Cesar Chavez, LLC is a Delaware limited liability company. It is part of the World Class network of entities controlled by convicted felon Natin "Nate" Paul. *See Great Value Storage LLC v. Princeton Cap. Corp.*, No. 01-23-00618-CV, 2025 WL 2412902, at *1, 4 & n.2 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025) (identifying "WC 707 Cesar Chavez, LLC" as a "Paul-created entity"). Mr. Paul and World Class entities have been sanctioned and found in contempt multiple times, including in bankruptcy proceedings in this Court. *E.g.*, *In re WC Culebra Crossing SA, LP*, Case No. 21-10360 (Bankr. W.D. Tex. Dec. 22, 2021) [Dkt.246: Order Regarding Motion for Civil Contempt and Sanctions]; *see also infra*.

8.      Debtor's sole asset is a 0.76-acre retail tract located at 707 E. Cesar Chavez St., Austin, Texas 78701 (the "Property"). The Property is encumbered by a single commercial lease agreement dated July 22, 2004 (the "Lease"), whereby Debtor is the landlord/lessor. *See* Ex.A, p.1. The original Lease term was twenty years, expiring on June 30, 2024, with a tenant option to

renew for four consecutive five-year options, totaling a 20-year renewal option.  Ex.A §§ 2(a), 10. The Lease automatically renewed on July 1, 2024, for its first five-year renewal term extending the lease term to at least June 30, 2029, with three remaining consecutive five-year automatic renewal options expiring on June 30, 2044.  *See* Ex.A § 10.  Since the Lease inception, the tenant has operated an IHOP restaurant on the Property.

9.      The Lease is a true "triple net lease" meaning "the lessee pays all the expenses…leaving the lessor with an amount free of all claims."  *Net-net-net lease*, Black's Law Dictionary (12th ed. 2024); *see In re Perry*, 411 B.R. 368, 375 (Bankr. S.D. Tex. 2009) ("The lease in question is a triple net lease; consequently, the lessee not only makes a regular rental payment, but also is responsible for payment of ad valorem taxes, insurance, utilities, and repairs and maintenance.").

10.      Specifically, per the terms of the Lease, the tenant is responsible for payment of:

- rent, Ex.A § 2(b);
- insurance, Ex.A § 4(a)-(h);
- maintenance and repair costs, Ex.A § 5(a)-(c);
- taxes and assessments, Ex.A § 7(a)-(b); and
- utilities, Ex.A § 8(b).

11.      Tenant is also responsible for structural repairs to the Property (e.g. roof and foundation repairs), *see* Ex.A § 5(a), making the lease what is sometimes referred to as an "absolute net lease."

**B.      The Loan**

12.      In April 2017, Debtor and the original lender Amplify Credit Union ("Original Lender") entered into a Loan Agreement (the "Loan Agreement"), under which Debtor, as borrower, is obligated to pay the original principal amount of $2,713,252.00 plus interest (the "Loan").  *See* Ex.B § 1.  The Loan is evidenced by a Real Estate Lien Note (the "Note"), Ex.C,

3

and secured by a properly recorded Deed of Trust (with Security Agreement) on the Property and a properly recorded Assignment of Leases and Rents, Ex.B § 2.

13.      Debtor's obligations under the Note were further guaranteed by Nate Paul and two entities controlled by him (World Class Holdings, LLC and World Class Holdings III, LLC).  Ex.D (the "Guaranties").  Debtor also entered a Cross-Collateral Agreement, wherein Debtor agreed that any default on the Loan constitutes a default of a different loan made to a different World Class entity.  Ex.E.

### C.      Debtor's repeated defaults

14.      Despite the triple net nature of the Lease and a tenant that reliably pays its rent, the Debtor stopped making payments to the Original Lender on the Note in May 2020.  *See* Ex.F, p.1. Accordingly, on May 27, 2020, Original Lender sent its first Notice of Default and demand for payment to Debtor, with a ten-day payment cure deadline, which stated that the Note was delinquent and demanded immediate payment of the past due amount on the Note.  Ex.F, p.2.

15.      Debtor continued in failing to pay, and on June 12, 2020, Original Lender sent its Second Notice of Default and demand for payment to Debtor, with an additional ten-day payment cure deadline, which stated that the Note was delinquent and demanded immediate payment of the past due amount on the Note.  Ex.G.

16.      On June 29, 2020, due to continued defaults on the Note, the obligation under the Note was accelerated, and Original Lender made demand on the Note by sending to Debtor a Notice of Acceleration ("Notice of Acceleration"), which notified Debtor that the entire indebtedness owing on the Note, and all interest accrued but unpaid thereon, had been accelerated and was due and payable in full.  Ex.H.

17.      On September 9, 2020, Original Lender and Lender entered into an Assignment and Assumption of Note and Security Instruments (the "Assignment"), under which the Original

Lender assigned all its rights, title, and interest under the Loan Documents and in connection with the Loan to Lender.  Ex.I.

### D.    Foreclosure attempts and state-court litigation

18.    Because of Debtor's continued failure to pay, Lender has attempted to exercise its contractual right to non-judicial foreclosure.  Lender posted the Property for foreclosure in November 2020.  Ex.J.  Borrower filed an Original Petition and Application for a Temporary and Permanent Injunction in Travis County District Court.  Ex.K.  The district court granted a TRO but ultimately denied Debtor's request to enjoin a future foreclosure sale.  *See* Ex.L.

19.    Lender again posted the Property for nonjudicial foreclosure in April 2022, and Debtor filed a new action in Harris County, seeking a temporary restraining order.  Ex.M.  That request was denied, and Debtor nonsuited the action.  Exs.N, O.

20.    On September 16, 2025, Lender again posted the Property for nonjudicial foreclosure.  Ex.P.  Per the posted notice, a sale was scheduled for October 7, 2025.  Ex.P, p.1.  Debtor again moved in the Travis County suit for a TRO and injunctive relief.  Ex.Q.  The district court initially granted a TRO but ultimately denied injunctive relief following a full evidentiary hearing.  Ex.R.

21.    Finally, on October 16, 2025, Lender again posted the Property for nonjudicial foreclosure.  Ex.S.  And again, Debtor's pattern of delay and obstruction continued.  Per the posted notice, a sale was scheduled for December 2, 2025.  Ex.S, p.1.  But before that time, Debtor filed an interlocutory appeal of the district court's prior order denying injunctive relief and sought emergency relief from the court of appeals "barring [Lender] from foreclosing on the Property." Ex.T, p.8.  The court of appeals denied that request.  Ex.U.

22.     Then on November 26, 2025 (the day before Thanksgiving), Debtor filed a petition for writ of mandamus in the Supreme Court of Texas, asking the Court to "prohibit[] Cesar Rainey from foreclosing on December 2, 2025, and during the pendency of [the] appeal." Ex.V, p.10. The Supreme Court of Texas likewise denied that request (and the mandamus petition) on December 1. Ex.W.

23.     At present, the Loan has been in default for over five years, and the Debtor owes Lender $5.143 million.

### E.    Debtor's bankruptcy case

24.     Just hours before the scheduled foreclosure sale, on December 2, 2025, Debtor filed its chapter 11 petition and initiated this bankruptcy proceeding.  Official Form 204 (i.e., the required list of top 20 unsecured) attached to Debtor's petition lists only two creditors:  Debtor's prepetition state court litigation counsel, Scale LLP, with a claim listed as $111,199.38; and Julia Clark & Associates, an accounting firm, with a claim listed as $250.00.  Dkt.1, p. 7.

25.     Likewise, the schedules show a small number of creditors other than Lender: the Travis County Tax Office, Julia Clark & Associates, and Scale LLP. Dkt.7, pp.14-16 (Forms 206D and 206E/F).  As noted, however, taxes are the responsibility of the tenant under the triple-net lease. Ex.A § 7(a)-(b).

## IV.    THIS CHAPTER 11 CASE SHOULD BE DISMISSED WITH PREJUDICE FOR "CAUSE" UNDER SECTION 1112(B) OF THE BANKRUPTCY CODE.

### A.    Filing in bad faith is "cause" for dismissal.

26.     Section 1112(b) of the Bankruptcy Code provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter…for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."  11 U.S.C. § 1112(b)(1).

27.     "Lack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal under 11 U.S.C. § 1112(b)." *In re Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992); *accord*, *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings"); *In re Red River Talc LLC*, 670 B.R. 251, 304 (Bankr. S.D. Tex. 2025) ("The Fifth Circuit recognizes that a lack of good faith in filing a chapter 11 is cause to dismiss the case."). This good-faith requirement ensures that the powerful tools of bankruptcy are not used merely "to delay creditors without benefitting them in any way" or "to achieve reprehensible purposes." *Little Creek*, 779 F.2d at 1072. It also ensures these tools are wielded only by debtors with "clean hands." *Id.* "In attacking the Debtor's good faith in filing, movant must establish a prima facie case, after which the Debtor has the burden of proving that the petition was filed in good faith." *In re Sherwood Enters., Inc.*, 112 B.R. 165, 170-71 (Bankr. S.D. Tex. 1989).

28.     Determining whether a filing is in good faith requires an "on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id.* While no one factor is required, the Fifth Circuit in *Little Creek* described the conditions that "usually exist" in a bad-faith filing:

(a) The debtor has one asset, such as a tract of undeveloped or developed land;
(b) The secured creditors' liens encumber the single asset;
(c) There are no employees, little or no cash flow, and no available income to sustain a plan or reorganization or make protection payments;
(d) There are only a few, if any, unsecured creditors whose claims are relatively small;
(e) The property has usually been posted for foreclosure[1] because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court;
(f) Bankruptcy offers the only possibility of forestalling loss of the property;
(g) There are allegations of wrongdoing by the debtor or its principals.

---

[1] "Alternatively," in state-court litigation, "the debtor has lost or has been required to post a bond which it cannot afford."

*Id.*  Where "[s]everal" of these conditions are present, it indicates that "the protection of the bankruptcy laws is not proper…because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation." *Id.*

29.  A telltale sign of a bad-faith bankruptcy is where "[t]he case is a two-party dispute between the debtor and a single creditor." *In re Traxcell Techs., LLC*, 657 B.R. 453, 459 (Bankr. W.D. Tex. 2024) (Parker, J.).  Though this factor was "not originally stated in *Little Creek,*" "[c]ourts routinely dismiss two-party disputes in chapter 11, characterizing them as having been filed in bad faith." *Id.* at 461; *In re Marino*, No. 09-33545-H3-11, 2010 WL 519772, at *3 (Bankr. S.D. Tex. Feb. 9, 2010) ("This court has generally found cause to dismiss cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute.").

30.  As this Court has recognized for almost forty years, two-party disputes "simply have no place in bankruptcy." *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987) (Clark, J.).  This is due to the powerful tools a debtor gains in bankruptcy, which are unnecessary and unfair when the dispute is overwhelmingly with a single creditor.  *See id.* Accordingly, where a bankruptcy presents a two-party dispute, it is the "[m]ost important fact" in the good-faith analysis.  *In re Triumph Christian Ctr., Inc.*, 493 B.R. 479, 495 (Bankr. S.D. Tex. 2013).  Indeed, this Court has recognized that the presence of a two-party dispute "strongly favors a finding of bad faith" and "can be independent grounds for dismissing a case."  *Traxcell*, 657 B.R. at 461-62 (citing *In re Turner*, No. 22-60200, 2022 WL 3363687, at *4 (Bankr. W.D. Tex. 2022) (J. Parker)).

31.  Every one of the *Little Creek* indicators of bad faith is present in this case, and the bankruptcy should be dismissed for cause.

**1.      This two-party dispute is not proper for bankruptcy proceedings.**

32.     To start with the "[m]ost important" factor, this case is "essentially a two-party dispute" between Lender and Debtor.  *Triumph*, 493 B.R. at 495.  This consideration is present where the case is "overwhelmingly a dispute" between two parties, even where "the Debtor does have some other creditors."  *Id.*

33.     For example, this Court has found a "two party dispute" where 94% of the noncontingent debt was held by a single group of creditors, notwithstanding the fact that the schedules claimed over $2 million of other "contingent, unliquidated, or disputed claims." *Traxcell*, 657 B.R. at 461.  Likewise, another case was "very much a two-party dispute" where the major creditor held 83% of secured claims, 72% of the debt, and a "lien on virtually all of the Debtor's assets" such that if the creditor foreclosed, the debtor would have "los[t] his entire business."  *In re McMahan*, 481 B.R. 901, 918 (Bankr. S.D. Tex. 2012).

34.     Here, Lender's $5,143,519 claim (see Lender's filed Proof of Claim No. 1) makes up 98% of the $5,254,968 in claims filed against the Debtor and asserted in the schedules, after removing the $571,715.99 scheduled secured claim of Travis County Tax Office, which is not yet due, is the responsibility of the solvent tenant, and has consistently been paid timely by tenant in the past.  *See* Dkt.7, at pp. 2, 13.  Furthermore, if the claim of Debtor's litigation counsel, Scale, LLP, which was incurred as part of Debtor's failed state court attempts to stymie Lender from exercising its contractual remedies, is removed then Lender's claim accounts for 99.995% of all filed and scheduled secured and unsecured claims in this case.  Removing the tax claim and Debtor's litigation counsel's claim, leaves the Debtor with $250 of other debts (owed to its accountant).

35.     Lender's claim thus "far outweighs" the competing creditors' noncontingent claims, confirming that this is a "two-party dispute."  *Turner*, 2022 WL 3363687, at *4.  Indeed,

the Property's "triple net" lease ensures that the lessee, and not Debtor, bears all of the Property's financial responsibilities, leaving Debtor to collect rents "with an amount free of all claims." *Net-net-net lease*, Black's Law Dictionary (12th ed. 2024).  By Debtor's own design, the Lease ensures that there are few claims in play other than Lender's.  Lender is the sole secured creditor and holds a lien on Debtor's sole asset, such that Debtor's entire business—which is simply holding the Property and collecting rent from the Lease—will be lost in the event of foreclosure.  *Cf. McMahan*, 481 B.R. at 918.

36.     Bankruptcy law is not needed where, as here, the dispute is dominated by two parties.  "Chapter 11 is there to allow companies whose assets have equity to attempt to preserve such equity *for the benefit of their creditors*."  *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 902 (8th Cir. 2007) (emphasis added).  But there is no need for the strong medicine of bankruptcy, which is designed to preserve equity and spread it out among multiple creditors, when one creditor holds nearly all the debt and claims.  State-law foreclosure proceedings, by contrast, are designed precisely for a case like this—a controversy based on the breach of a single loan agreement, secured by a single piece of real property—and are fully capable of resolving this dispute between a single lender and a single borrower.  Debtor has in fact availed itself of state law courts on numerous occasions, including the appellate process reaching the Texas Supreme Court as recently as December 1, 2025, when Debtor's Petition for Writ of Mandamus was denied.  Now Debtor attempts to use the U.S. Bankruptcy Court as an end-run around Texas state court rulings in this two-party dispute.  These bad faith tactics should not be countenanced.

37.     Lender would also be prejudiced by the imposition of bankruptcy law on this two-party dispute.  A bankruptcy would "confer[] unwarranted leverage" in favor of Debtor "without the attendant equities that normally justify that leverage," which this Court has emphatically stated

is not the purpose of the Bankruptcy Code. *Anderson*, 77 B.R. at 112 (rejecting attempt by debtor "to use the Bankruptcy Code as a device with which to force its lender into renegotiating their loan"). Doing so would impose extra-contractual terms on Lender and effectively destroy Lender's contractual right to foreclosure. And of course, Lender, who has gone *years* without payment on a multi-million-dollar loan and has attempted four times to foreclose on the Property, would be further "subjected to the costs and delays of a bankruptcy proceeding." *Little Creek*, 779 F.2d at 1073.

38.     This case is thus overwhelmingly a two-party dispute, which has no place in bankruptcy. This alone justifies dismissal of the bankruptcy petition for cause.

**2.       All the indicia of bad faith from Little Creek are present.**

39.     Even if this case were not simply a two-party dispute, every indicator of bad faith identified by the Fifth Circuit in *Little Creek* is present here. *Cf. Traxcell*, 657 B.R. at 459 (noting that *Little Creek* did not discuss two-party-dispute consideration). This independently warrants dismissal.

40.     ***First,*** Debtor has "one asset," which is "a tract of…developed real property." *Little Creek*, 779 F.2d at 1073. Debtor's only meaningful asset is the Property, which is a 0.76-acre commercial tract of developed real property. Debtor is not an operating business, but a holding company meant only to hold this sole piece of land and collect rent from a lessee under a triple-net lease.

41.     ***Second,*** Lender's lien "encumber[s] this tract." *Little Creek*, 779 F.2d at 1073. The Property is encumbered by Lender's recorded Deed of Trust and Assignment of Leases and Rents, which evidences a first priority recorded lien that secures the Loan, and Lender is the sole secured creditor.

42.     **Third,** there are "no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments." *Little Creek*, 779 F.2d at 1073.  Here, "there are no employees to protect," which is a key goal of bankruptcy.  *Id.*; *see* SOFA, Dkt.8, at p.1 (zero income).  Nor do the schedules reflect adequate cash flow or other income to cover "the ongoing expenses of the estate." *Traxcell*, 657 B.R. at 460; *see* Dkt.7, at p. 3 (zero cash or cash equivalents); Dkt.8, at p. 1 (zero income), p. 13 (no officers or directors).  While the Lease generates a modest income, Debtor was unable or unwilling to cover the monthly payments owed to Lender, which led to the default.  That rent is certainly insufficient to cover the full amount of the Loan, which is now due in full and is rapidly accruing default interest.

43.     **Fourth,** there are "few…unsecured creditors" with "relatively small" claims. *Little Creek*, 779 F.2d at 1073.  As discussed, Lender holds at least 98% of the debt at issue here, and 100% of the secured debt (again, not including taxes, which are paid by tenant).  This "low proportion of unsecured debts tends to indicate bad faith because it suggests the debtor filed in contemplation of a single, large, secured debt." *Traxcell*, 657 B.R. at 460-61.  The only debts listed other than that of Lender are an unsecured claim for $250.00 by an accountant, and an unsecured claim for $111,199.38 for Debtor's litigation counsel, Scale LLP.  Together, these claims account for 2% of Debtor's total outstanding debt.  Furthermore, Scale LLP is the law firm that has represented Debtor in the myriad unsuccessful efforts to stymie Lender's contractual remedies in state court.  A single asset debtor with a triple net lease should not be allowed to manufacture unsecured creditors by hiring law firms to (unsuccessfully) frustrate the sole lender in the two-party state court proceeding and then argue that such creditors weigh against a two-party dispute.

44.    **Fifth,** the Property has "been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court." *Little Creek*, 779 F.2d at 1073.  The Property is currently subject to Lender's right to nonjudicial foreclosure, which resulted from years of non-payment of the debt owed to Lender. Debtor has attempted to defend against foreclosure in state court, four times unsuccessfully seeking injunctive relief in different actions in different courts, including an appeal to the 3rd Court of Appeals and a mandamus petition to the Texas Supreme Court.  Only after those efforts in state court failed and Lender attempted to foreclose did Debtor file this bankruptcy.

45.    This Court has recently acknowledged that it is "classic bad faith when a debtor attempts to use a bankruptcy filing to impede and relitigate a matter involving a significant debtor asset… unfavorably decided at the state court level." *Traxcell*, 657 B.R. at 462.  That is exactly the case here, where Debtor is trying to use this Court to get an improper "[fifth] bite at the apple" at avoiding foreclosure—a fact which "heavily favors a finding of bad faith." *Id.*; *accord*, *In re Concord Storage & Warehouse Co., Inc.*, 40 B.R. 831, 834 (Bankr. S.D. Ohio 1984) (where chapter 11 filings were solely meant "to stop the foreclosure actions previously instituted in the various state courts," the petitions could "be dismissed on this basis alone without further discussion").

46.    **Sixth,** bankruptcy "offers the only possibility of forestalling loss of the property." *Little Creek*, 779 F.2d at 1073.  But for this bankruptcy filing, the planned foreclosure would have occurred on December 2, 2025, and Debtor would have likely lost the Property.  This alone casts doubt on Debtor's motives, but the timing of the filing on the "eve" (or in this case, the "morning") of foreclosure especially evidences an intent to frustrate the legitimate efforts of Lender to enforce its rights and "leans strongly in favor of a finding of bad faith." *Triumph*, 493 B.R. at 495.  Debtor

has had *years* to pay off the Loan.  It declined to take advantage of two contractual opportunities to cure its default.  It was not until just before the scheduled foreclosure that Debtor sought bankruptcy protections.  This is not a good-faith attempt to restructure its obligations, but instead Debtor's *fifth* last-minute filing meant to prevent the exercise of Lender's rights.

47.    **Seventh,** there are countless "allegations of wrongdoing" by Nate Paul, who controls the Debtor.  *Little Creek*, 779 F.2d at 1073.  Paul is, of course, a convicted felon who pleaded guilty to lying to lenders, who was held in criminal contempt and incarcerated for lying to a court, and who was fined for violating court orders by making illegal transfers from bank accounts. Ex.X.  As recent as December 2, 2025, two days after the filing of the chapter 11 petition, Paul was held in civil contempt of another court and committed to Travis County jail.  Ex.Y.  Mr. Paul's misconduct has carried over to this Court.  *See infra*.  It would blink reality to suggest that Paul has "clean hands," which is a threshold requirement to wield bankruptcy's "powerful equitable weapons."  *Little Creek*, 779 F.2d at 1072.

48.    Especially relevant here, Paul was indicted on two counts directly related to the financing of this Property, whereby it was alleged that Paul "knowingly made [a] false statement and report for the purpose of influencing the action of the Credit Union [Original Lender] on Paul's application for the loans to WC 707 Cesar Chavez, LLC…."  Ex.Z, p.19 ¶ 83.  Likewise, as has been a hallmark for World Class entities seeking bankruptcy protection in this Court, the Debtor previously fraudulently transferred $265,750 to its affiliate World Class Capital Group, LLC in violation of the Loan Documents.  *See* Ex AA (bank transactions); Ex.B § 7.

49.    More generally, but also relevant, Paul's "WC" companies have flooded the bankruptcy courts with petitions and then repeatedly committed misconduct in those proceedings. In the Western District of Texas alone, Paul-controlled entities have been held in contempt for

failing to follow court orders and ordered to show cause why sanctions should not issue for the same reason. *E.g.*, *In re WC Culebra Crossing SA, LP*, Case No. 21-10360 (Bankr. W.D. Tex. Dec. 22, 2021) [Dkt.246: Order Regarding Motion for Civil Contempt and Sanctions]; *In re WC S. Congress Square, LLC*, Case No. 20-11107 (Bankr. W.D. Tex. Aug. 23, 2022) [Dkt.343: Order to Show Cause].

50.     Moreover, a chapter 11 trustee has been appointed in no less than *twelve* World Class/Paul cases[2] after it became clear that a WC debtor entity had been making unauthorized transfers. *E.g.*, *In re WC Braker Portfolio B, LLC*, Case No. 22-10628, (Bankr. W.D. Tex. Oct. 13, 2022) [Dkt.7] ("Chapter 11 trustees were appointed in all the [WC] affiliate cases and many of those cases were later converted to chapter 7."). Given Paul's repeated abuse of the bankruptcy system, there is no reason to believe that the pending petition was filed in good faith or that Debtor would end the pattern of misconduct by Paul-controlled entities.

51.     Lest there be any doubt about the motives here, another bankruptcy court applying nearly identical factors ruled a chapter 11 bankruptcy by another Paul-controlled entity was "not filed in good faith and must be dismissed." *GVS*, 2021 WL 2285285, at *9. There, the debtor— an entity indirectly owned by Paul and within the World Class corporate structure—incurred debt obligations as part of a complex mezzanine financing scheme. *Id.* at *1-2. When the debtor defaulted on its loan, the secured party initiated foreclosure proceedings. *Id.* at *3-4. Two days

---

[2]*In re WC 6th & Rio Grande, LP*, Case No. 23-11040 (Bankr. W. D. Tex. Feb. 16, 2024) (Bradley, J.) [Dkt.84]; *In re WC Braker Portfolio B, LLC*, Case No. 22-10628, (Bankr. W.D. Tex. Oct. 13, 2022) [Dkt.31]; *In re WC Braker Portfolio, LLC*, Case No. 22-10293 (Bankr. W.D. Tex. May 24, 2022) [Dkt.48]; *In re WC Alamo Indus.*, Case No. 22-10226 (Bankr. W.D. Tex. Apr. 21, 2022) [Dkt.48]; *In re WC 3rd & Trinity, LP*, Case No. 21-10252 (Bankr. W.D. Tex. Apr. 21, 2022) [Docket. No. 115]; *In re WC S. Congress Square, LLC*, Case No. 20-11107 (Bankr. W.D. Tex. Apr. 20, 2022) [Docket. No. 198]; *In re WC Manhattan Place, LLC*, Case No. 22-10047 (Bankr. W.D. Tex. Mar. 29, 2022) [Dkt.74]; *In re WC 717 N. Harwood Prop., LLC*, Case No. 21-10630 (Bankr. W.D. Tex. Mar. 29, 2022) [Dkt.122]; *In re WC Met Ctr., LLC*, Case No. 21-10698 (Bankr. W.D. Tex. Mar. 29, 2022) [Dkt.74]; *In re 6th & San Jacinto, LLC*, Case No. 21-10942 (Bankr. W.D. Tex. Mar. 29, 2022) [Dkt.53]; *In re WC 511 Barton Blvd., LLC*, No. 21-10943 (Bankr. W.D. Tex. Mar. 29, 2022) [Dkt.51]; *In re Arboretum Crossing, LLC*, Case No. 21-10546 (Bankr. W.D. Tex. Mar. 8, 2022) [Dkt.114].

before the scheduled sale, the debtor sought an injunction in state court, and when the state court declined to issue a preliminary injunction, the debtor filed a chapter 11 petition. *Id.* at *4-5. The bankruptcy court granted a motion to dismiss the bankruptcy, reasoning that several indicia suggested a bankruptcy would serve no valid purpose—*e.g.*, there was a single asset, a small number of unsecured creditors, and no employees, and state court was suitable for resolving the dispute. *Id.* at *8-9. Moreover, "the fact that th[e] case was filed immediately before foreclosure in order to obtain the automatic stay coupled with the two-party nature of the dispute" suggested the filing was merely for "a tactical advantage" to delay foreclosure proceedings. *Id.* at *9. Paul is using an identical strategy here and the Court should not bless it.

52. In sum, every one of the indicia of bad faith identified by the Fifth Circuit in *Little Creek* is present here. The facts do not suggest any plausible hope of rehabilitation, but yet another last-ditch effort by a Paul-controlled holding company to delay a foreclosure that it could not resist in the state courts. Because at least "[s]everal" of these indicia are present, Debtor's "[r]esort to the protection of the bankruptcy laws is not proper." *Id.* Thus, even if the Court declines to dismiss this case as a two-party dispute, it should dismiss the case under the Fifth Circuit's binding guidance in *Little Creek*. *GVS*, 2021 WL 2285285, at *9 (dismissing Paul-controlled entity from bankruptcy because "several" similar indicia of bad faith were present, even though the "two-party nature of the dispute" gave the court "pause").

### 3. Apparent equity in the property does not contravene Debtor's bad faith.

53. Debtor might invoke its alleged "equity" in the property to justify this bankruptcy. Indeed, according to the tax rolls, while not binding, the Property is appraised for $26,750,000 per

public Travis Central Appraisal District records.[3]  But possible equity in a property does not preclude a finding of bad faith.  *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) ("Because the bankruptcy court found that a bad faith filing had occurred, it properly did not change the consequences of that finding simply because of the debtor's possible equity in the property….The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.").

54.     Quite the opposite, a significant equity cushion, as may be the case here, suggests the petition lacks any reorganizational purpose.  For example, this Court dismissed a petition as filed in bad faith where "[t]he Debtor's schedules reveal that the Debtor has substantial assets— and much equity in those assets."  *Turner*, 2022 WL 3363687, at *4.  The Court reasoned that since "the value of the Debtor's assets far outweigh[ed] the debts owed," the bankruptcy did "not appear to benefit" any of the creditors and did not benefit the debtor "other than to forestall" state-court proceedings.  *Id.*  Just so here, where the apparent equity cushion means that the planned foreclosure would create ample funds to pay off Lender, likely with millions of dollars left over for remaining creditors (if any).  The large amount of equity only confirms that there is no need for the bankruptcy.

**4.         Dismissal with prejudice is warranted.**

55.     Section 349(a) of the Bankruptcy Code provides in relevant part that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title…." 11 U.S.C. § 349(a). But under section 105(a) of the Bankruptcy Code, the Court may "tak[e] any action or mak[e] any

---

[3]  *Travis Central Appraisal District Property Search Portal*, https://travis.prodigycad.com/property-detail/191603/2025 (last visited Dec. 22, 2025).  Upon information and belief, county appraisals do not account for lease obligations encumbering real estate such as the Lease with 19 years remaining that encumbers the Property in this case.  Lender reserves all rights regarding valuation of the Property.

determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

56.     "Among the causes that may produce a dismissal with prejudice is filing a bankruptcy petition in bad faith." *In re Shead*, No. CIV.A. H-08-1386, 2008 WL 1995373, at *2 (S.D. Tex. May 6, 2008).  Because of the bad-faith nature of this filing, the continued efforts of Debtor to prevent the foreclosure sale, and the repeated abuses of Nate-Paul-related entities, the Court should dismiss this case with prejudice to refiling until after the foreclosure sale. *E.g.*, *In re Russell*, 348 B.R. 441, 449 (Bankr. S.D. Tex. 2006) ("Dismissal with prejudice to refiling for 180 days is appropriate to prevent abuse of the bankruptcy process.").

WHEREFORE, Lender respectfully requests that the Court dismiss this case and grant it such other and further relief as may be just and proper.

Respectfully submitted,

**BRACEWELL LLP**

*/s/ Jason G. Cohen*
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bracewell.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:      (713) 222-3055
Facsimile:      (800) 404-3970

-and-

**WHITE & CASE LLP**
Christopher L. Dodson
Texas Bar No. 24050519
609 Main Street, Ste 2900
Houston, TX 77002
Telephone:(713) 496-9643
Facsimile: (713) 496-9701
E-mail: chris.dodson@whitecase.com

*Counsel for Cesar Rainey Street, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been served electronically via the Court's ECF noticing system on December 23, 2025.

*/s/ Jason G. Cohen*
Jason G. Cohen

# INDEX OF EXHIBITS

| Exhibit | Document Title |
|---|---|
| A | 7/22/2004 Lease Agreement & Attachments |
| B | 4/20/2017 Loan Agreement |
| C | 4/20/2017 Real Estate Lien Note |
| D | 4/20/2017 Guaranties |
| E | 4/26/2017 Cross-Collateral Agreement |
| F | 5/27/2020 Notice of Default & Demand for Payment |
| G | 6/12/2020 Second Notice of Default & Demand for Payment |
| H | 6/29/2020 Notice of Acceleration |
| I | 9/9/2020 Assignment & Assumption of Note & Security Instruments |
| J | 11/17/2020 Affidavit of Posting, Filing, and Mailing |
| K | 11/27/2020 Plaintiff's Original Petition and Application for Temporary Restraining Order, Temporary and Permanent Injunction |
| L | 12/15/2020 Order Denying Application for Temporary Injunction |
| M | 4/18/2022 Plaintiff's Original Petition & Application for Temporary Restraining Order, Temporary Injunction, & Permanent Injunction |
| N | 4/19/2022 Order Denying Application for Temporary Restraining Order |
| O | 6/20/2022 Notice of Nonsuit Without Prejudice |
| P | 9/16/2025 Notice of Substitute Trustee's Sale |
| Q | 10/1/2025 Plaintiff's Verified Emergency Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction |
| R | 11/6/2025 Order Denying Application for Temporary Injunction |
| S | 10/16/2025 Notice of Substitute Trustee's Sale |
| T | 11/13/2025 Appellant's Emergency Motion for Temporary Order Pursuant to Rule 29.3 |
| U | 11/24/2025 Order Denying Emergency Relief |
| V | 11/26/2025 Relator's Emergency Motion for Temporary Relief |
| W | 12/1/2025 Order Denying Relator's Emergency Motion for Temporary Relief |
| X | 3/18/2024 Second Amended Order of Contempt & Order of Commitment |
| Y | 12/4/2025 Order & Judgment of Civil Contempt & Order of Commitment For Civil Contempt |
| Z | 11/7/2023 Superseding Indictment |
| AA | Summary of Transfers from Debtor |