IHOP 1421/Austin, Travis County, Texas

## LEASE AGREEMENT

THIS LEASE AGREEMENT is made and entered into as of July _22_ 2004, by and between:

(i) **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, with principal office and place of business at 450 South Orange Avenue, Orlando, Florida 32801 ("Landlord"), and

(ii) **ACG 1421, L.P.**, a Texas limited partnership, with a mailing address of c/o Martin P. Adler, 933 N. Central Expressway, Plano, Texas 75075 ("Tenant").

## W I T N E S S E T H:

Landlord leases to Tenant, for the purpose of operating an IHOP Restaurant (or such other restaurant concept owned by Franchisor) and for no other use or purpose whatsoever (except as may be permitted in this Lease) and subject to the terms and conditions of the Rent Addendum attached hereto, and Tenant rents from Landlord the following described premises, (hereinafter "Premises") located at 707 East Cesar Chavez Street, Austin, Travis County, Texas and being more particularly described in Exhibit "A" attached hereto and made a part hereof, together with all rights and privileges appurtenant thereto as may be necessary or convenient to Tenant's business, inclusive of all easements benefiting the Premises. Premises shall include all improvements and structures whether now existing or hereafter constructed thereon.

The following additional stipulations are hereby declared to be covenants of this Lease and shall, unless otherwise expressly stated, be applicable at all times throughout the term of this Lease and any extension or renewal thereof:

## 1. DEFINITIONS

For purposes of this Lease, the following terms shall have the definitions ascribed to them:

"CNL Affiliate" shall mean any party that controls or is controlled by or is under common control with CNL Financial Group, Inc. and/or CNL Financial Corporation. For purposes of this definition, "control" and correlative terms shall mean the possession, directly or indirectly, of the power to cause the direction of the management and policies of such party, whether through the ownership of voting securities, by contract or otherwise.

"Effective Date" shall mean the date set forth at the beginning of this Lease.

"Franchise Agreement" shall mean that certain franchise agreement between Franchisor and Tenant related to the Premises, and any amendments, renewals are replacements thereof.

"Franchisor" or "IHOP" shall mean **INTERNATIONAL HOUSE OF PANCAKES, INC.**, a Delaware corporation, its successors and assigns.

"Guarantor" shall mean **ACG TEXAS, L.P.**, a Delaware limited partnership, its successors and assigns.

"Landlord" shall mean **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, its successors and assigns.

"Lease" shall include this Lease Agreement and all amendments hereto, if any, entered into from time to time hereafter, together with the Rent Addendum and exhibits attached hereto.

"Lease Year" shall mean a fiscal period beginning on the Effective Date (and each anniversary thereof) and expiring on the last day of the twelfth (12th) month thereafter. In the event the Effective Date is not the first (1st) day of a calendar month, then the Lease Year shall commence on the first (1st) day of the calendar month following the Effective Date.

"Rent" shall mean the rent payable under this Lease as set forth in the Rent Addendum attached hereto and incorporated herein, and shall include Annual Rent (as defined in the Rent Addendum) and all other items described in this Lease as "additional rent".

"Tenant" shall include the named Tenant and any assignee or sublessee thereof pursuant to an assignment or sublease under Paragraph 17 of this Lease.

"Total Cost" shall mean the greater of $2,304,560.00 or the actual gross purchase price paid by the then current fee owner to purchase the Premises.

2. **TERM AND RENT**

(a) <u>Term</u>. The term of this Lease shall begin on the Effective Date and shall expire on June 30, 2024 (hereinafter the "Termination Date"), unless previously terminated or renewed or extended as provided herein.

(b) <u>Rent</u>. Rent shall be due and payable as provided in the Rent Addendum attached hereto and incorporated herein.

3. **ALTERATIONS AND IMPROVEMENTS, INVESTMENT TAX CREDIT, MECHANIC'S LIENS, LANDLORD'S DISCLAIMER**

(a) <u>Alterations and Improvements</u>.

(i) <u>Tenant's Property</u>. Tenant shall be permitted to install, use on and about, and remove from the Premises at any time and from time to time all trade fixtures and other personal property (exclusive of lighting, electrical, and heating and air conditioning improvements) which are not a component of the building located or to be located on the Premises (hereinafter referred to as the "Tenant's Property"), all of which at all times shall remain the property of Tenant with the right of removal (subject to Paragraph 3(d) below) at the expiration of this Lease. Tenant's Property shall include: (1) removable decor items and office equipment; (2) building lettering, signs, sign posts and sign standards; (3) unattached food and customer service equipment; and (4) food, customer service equipment and any other equipment attached to the building by bolts and screws

and/or by utility connections, or other means that can be removed without damage to the Premises, including without limitation, walk-in refrigerators and freezers, remote refrigeration systems, exhaust systems and hoods, and water heaters.

(ii)   Subsequent Improvements.   Tenant shall also have the right to make any additions, alterations, changes and improvements, structural and nonstructural, including but not limited to construction of additional buildings and additions to the then existing buildings, as Tenant shall desire; provided, however, (A) if the cost of such changes exceeds SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($75,000.00) or such changes are structural or impact the square footage of the then existing buildings, Tenant shall (1) submit plans of all changes to Landlord at least thirty (30) days in advance of the proposed construction date, which plans shall be subject to Landlord's reasonable approval, and (2) provide Landlord with evidence of Tenant's financial ability to pay for such changes, (B) if the cost of changes exceeds FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), Tenant shall deliver to Landlord unconditional payment and performance bonds for such work naming Landlord and Tenant as dual obligees, (C) all such construction shall be completed   in a workmanlike manner and in material compliance with all laws, building codes and ordinances applicable thereto and in accordance with the Franchise Agreement, at Tenant's sole expense, and (D) such additions, alterations, changes and improvements (whether structural or non-structural) shall not reduce the fair market value of the Premises, as reasonably determined by Landlord.

(iii)   Upon Termination, Subletting or Assignment.   Subject to the requirements of this Paragraph 3, Tenant shall have the right, at its option and expense, to redecorate or otherwise remodel the Premises upon any termination hereof or upon any permitted subletting or assignment in such manner as will, without reducing the fair market value thereof, avoid the appearance of the IHOP Restaurant operated under this Lease; provided, however, that in addition to the other requirements of this Paragraph 3, Tenant shall not impair the structural condition of the Premises, or reduce the size of the buildings on the Premises.

(iv)   Landlord's Property.   All subsequent improvements referred to in Paragraph 3(a)(ii) above, all improvements upon termination, subletting or assignment referred to in Paragraph 3(a)(iii) above, and any and all other additions, alterations, changes and improvements of any type (other than those that can be removed without causing damage to the Premises) shall be deemed to be a part of the Premises and the sole property of Landlord.

(b)   Investment Tax Credit.   Landlord hereby grants Tenant the right and privilege of applying for and receiving all investment tax credits, if any, under the Internal Revenue Code which may be available with respect to the building and other improvements to be constructed. To this end, Landlord agrees to execute all such further documents and supply such additional information as may be required to make such election effective.

(c)   Mechanic's and Other Liens.   Tenant shall not do or suffer anything to be done whereby the Premises, or any part thereof, may be encumbered by a mechanic's, materialman's,

or other lien for work or labor done, services performed, materials, appliances, or power contributed, used, or furnished in or to the Premises or in connection with any operations or any other activity of Tenant. If, whenever and as often as any lien is filed against the Premises, or any part thereof, purporting to be for or on account of any labor done, materials or services furnished in connection with any work in or about the Premises, done by, for or under the authority of Tenant, or anyone claiming by, through or under Tenant, Tenant shall discharge the same of record within ten (10) business days after service upon Tenant of written notice of the filing thereof; provided, however, Tenant shall have the right to remove the lien as an encumbrance upon the Premises by bonding same in accordance with applicable law and to contest any such lien; provided further that Tenant shall diligently prosecute any such contest, at all times effectively staying or preventing any official or judicial sale of the Premises under execution or otherwise, and, if unsuccessful, satisfy any final judgment against Tenant adjudging or enforcing such lien or, if successful, procuring record satisfaction or release thereof.

(d) Landlord's Disclaimer. All of Tenant's Property placed in or upon the Premises by Tenant shall remain the property of Tenant with the right to remove the same at any time during the term of this Lease. Landlord, if requested by Tenant, agrees to execute, acknowledge and deliver an instrument substantially in the form of Exhibit "D" attached hereto, or in other form customarily used by the financier of Tenant's Property and reasonably satisfactory to Landlord, by which Landlord subordinates its lien rights to the lien rights of any equipment lender or lessor of Tenant's Property, and to all rights of levy for distraint for rent against same; provided any damage caused by, or resulting from the removal of any of Tenant's Property or other personal property (including the leaving of holes or other openings in the roof or exterior of the building) shall be promptly repaired by Tenant or the party entitled to remove same. Landlord shall be entitled to charge a reasonable fee covering Landlord's actual costs in connection with execution of such documentation (which fee shall not exceed $500.00) and Tenant agrees to pay such fee as a condition precedent to Landlord's execution of such documents.

## 4. DESTRUCTION OF PREMISES; INSURANCE

(a) If the Premises are damaged or destroyed by fire, flood, tornado or other element, or by any other casualty and such damage or destruction does not occur within the last twenty four (24) months of the original or of any extended or renewed term of this Lease, this Lease shall continue in full force and effect and Tenant shall, as promptly as possible, restore, repair or rebuild the Premises to substantially the same condition as it existed before the damage or destruction, including any improvements or alterations required to be made by any governmental body, county or city agency, due to any changes in code or building regulations. Tenant shall for this purpose use all, or such part as may be necessary, of the insurance proceeds received from insurance policies required to be carried under the provision of Paragraph 4(b) of this Lease. If such insurance proceeds are not sufficient to pay such costs, Tenant shall pay such deficit. Should the Premises be damaged or destroyed by any of the foregoing described casualties within the last twenty-four (24) months of the original term or of any extended or renewed term of this Lease, then to the extent that the Premises are untenantable or unsuitable, in Tenant's reasonable opinion, for continued use in the normal conduct of Tenant's business, Tenant shall have the right, exercisable by written notice to Landlord given within thirty (30) days after the date of such damage or destruction, to terminate this Lease effective upon the date of such

damage or destruction.  If Tenant terminates this Lease as thus provided Landlord shall be entitled to all of the insurance proceeds on the Premises, but not to the proceeds of insurance carried by Tenant on Tenant's Property; provided, however, Tenant shall not have the right to terminate this Lease unless (i) the damage or destruction of the Premises was caused by a peril which was insured against as required by the provisions of Paragraph 4(b) of this Lease; and (ii) at the time of such damage and destruction the said insurance policies required to be carried by Tenant were in the amount of the full replacement cost of such improvements (without deduction or co-insurance) and in full force and effect; and (iii) the insurer has confirmed coverage and its obligation to pay.  If Tenant defaults in its obligation to carry insurance in the amounts required under Paragraph 4(b) of this Lease, then, prior to Tenant's termination of this Lease and in addition to the requirements set forth in the preceding sentence, Tenant shall be obligated to pay toward said reconstruction or to Landlord the difference between the amount of insurance actually carried and the amount required to be carried under this Paragraph 4.

(b)     Tenant, at its expense and as additional rent hereunder, shall throughout the term of this Lease and any extension or renewal thereof, keep the Premises insured with (i) "Special Form Causes of Loss" coverage (as such term is used in the insurance industry), at least as broad as the most commonly available ISO Special Cause of Loss Form, including coverage for glass breakage, vandalism and malicious mischief, and builder's risk (if the Premises are to be constructed pursuant to the terms of this Lease) for one hundred percent (100%) insurable replacement value with no co-insurance penalty, with any deductible in excess of Twenty-five Thousand Dollars ($25,000.00) to be approved by Landlord and, (ii) "Ordinance and Law Coverage" with limits of (i) not less than the building value for Coverage A (loss to the undamaged portion of the building), (ii) not less than fifteen percent (15%) of the building value for Coverage B (Demolition Cost Coverage), and (iii) not less than fifteen percent (15%) of the building value for Coverage C (Increased Cost of Construction Coverage).

(c)     Tenant shall maintain throughout the term of this Lease and any extension thereof, at its own expense and as additional rent, commercial general liability insurance including product liability and liquor liability (if alcohol is served) covering the Premises at least as broad as the most commonly available ISO Commercial General Liability policy form (occurrence basis) covering bodily injury, property damage and personal and advertising injury, for the joint benefit of and insuring Tenant and Landlord, with limits not less than One Million Dollars ($1,000,000.00) per occurrence, with a general aggregate of not less than Two Million Dollars ($2,000,000.00) and a "following form" umbrella liability policy or excess liability policy to include product liability and liquor liability (if alcohol is served), in an amount of not less than Ten Million Dollars ($10,000,000.00) per occurrence, with any deductible in excess of Twenty-five Thousand Dollars ($25,000.00) to be approved by Landlord.

(d)     Tenant shall maintain throughout the term of this Lease and any extension thereof, at its own expense, business interruption insurance covering risk of loss due to the occurrence of any of the hazards insured against under Tenant's "all risk" coverage insurance and providing coverage in an amount sufficient to permit the payment of Rents, taxes, insurance and operating expenses payable hereunder for a period (in such case) of not less than twelve (12) months.

(e)     In the event the Premises are located in an area identified by the National Flood Insurance Program as an area having "special flood hazards" (zones beginning with "A" or "V"), Tenant shall maintain throughout the term of this Lease and any extension thereof, flood insurance for the full replacement value of the Premises, with any deductible in excess of Twenty-five Thousand Dollars ($25,000.00) to be approved by Landlord.

(f)     In the event the Premises are located in a major earthquake damage area and earthquake insurance is available, Tenant shall maintain throughout the term of this Lease, and any extension thereof, earthquake insurance for the full replacement value of the Premises, with any deductible in excess of Twenty-five Thousand Dollars ($25,000.00) to be approved by Landlord.

(g)     Tenant shall maintain such other insurance on or in connection with the Premises as reasonably required from time to time by Landlord, which is commonly obtained in connection with properties similar to and in the same area as the Premises and which is commercially reasonable to obtain.

(h)     All insurance companies providing the coverage required under this Paragraph 4 shall be selected by Tenant and shall be rated A minus (A-) or better by Best's Insurance Rating Service (or equivalent rating service if not available), shall be licensed to write insurance policies in the state in which the Premises are located, and shall be acceptable to Landlord in Landlord's reasonable discretion. Tenant shall provide Landlord with copies of all policies or certificates of such coverage for the insurance coverages referenced in this Paragraph 4, and all commercial general liability and umbrella liability or excess liability policies shall name Landlord (and if Landlord is either a general or limited partnership, all general partners) and any mortgagee designated by Landlord as an additional insured. Any such coverage for additional insureds shall be primary and non-contributory with any insurance carried by Landlord or any other additional insured hereunder. All property insurance policies shall name Landlord (and if Landlord is either a general or limited partnership), all general partners and any mortgagee designated by Landlord as an additional named insured or as a loss payee as Landlord's interests may appear, and shall provide that all losses shall be payable as herein provided. All such policies of insurance shall provide that the amount thereof shall not be reduced and that none of the provisions, agreements or covenants contained therein shall be modified or canceled by the insuring company or companies without thirty (30) days prior written notice being given to Landlord; and that all insurance proceeds shall be paid by check payable to Landlord to be held in trust and applied pursuant to the terms of this Lease. Such policy or policies of insurance may also cover loss or damage to Tenant's Property, and the insurance proceeds applicable to Tenant's Property shall not be paid to Landlord or any mortgagee but shall accrue and be payable solely to Tenant. In the event of a casualty, Tenant shall be responsible for any deficiency between the replacement cost of the Premises and the amount actually paid by the insurance company.

## 5.     MAINTENANCE AND REPAIR

(a)     Tenant shall, during the term of this Lease and any renewals thereof, (i) maintain the Premises and all buildings and improvements thereon (interior and exterior, structural and otherwise) in good order and repair; (ii) not commit waste or permit impairment or deterioration of the Premises (normal wear and tear excepted); (iii) not abandon the Premises; (iv) to the

extent required under the Franchise Agreement applicable to the Premises, keep Tenant's Property, including trade fixtures, equipment, machinery and appliances thereon in good repair and replace trade fixtures, equipment, machinery and appliances on the Premises when necessary to keep such items in good repair; (v) comply in all material respects with all laws, ordinances, regulations and requirements of any governmental body and the Franchise Agreement applicable to the Premises; (vi) provide prompt notification to Landlord of any material adverse changes to the Premises of which Tenant is aware, such as material changes in any environmental condition, including the presence of biocontaminants, such as, but not limited to mold, and shall promptly undertake reasonable remediation (and preventative) actions in connection therewith; and (vii) subject to the provisions of Paragraph 4(a) with respect to damage within the last twenty-four (24) months of this Lease, and Paragraph 6 herein, return the Premises and all buildings and improvements thereon at the expiration of the term of this Lease or any extension thereof in as reasonably as good condition as when received, ordinary wear and tear excepted.

(b)  Tenant agrees that Landlord shall have no obligation under this Lease to make any repairs or replacements (including the replacement of obsolete components) to the Premises or the buildings or improvements thereon, or any alteration, addition, change, substitution or improvement thereof or thereto, whether structural or otherwise. The terms "repair" and "replacement" include, without limitation, the replacement of any portions of the Premises which have outlived their useful life during the term of this Lease (or any extensions thereof). Landlord and Tenant intend that the Rent received by Landlord shall be free and clear of any expense to Landlord for the construction, care, maintenance (including common area maintenance charges and charges accruing under easements or other agreements relating to the Premises), operation, repair, replacement, alteration, addition, change, substitution and improvement of or to the Premises and any building and improvement thereon. Upon the expiration or earlier termination of this Lease, Tenant shall remain responsible for, and shall pay to Landlord, any cost, charge or expense for which Tenant is otherwise responsible for hereunder attributable to any period (prorated on a daily basis) prior to the expiration or earlier termination of this Lease.

(c)  Tenant acknowledges and agrees that the Premises are and shall be leased by Landlord to Tenant in their present "AS IS" condition, and that Landlord makes absolutely no representations or warranties whatsoever with respect to the Premises (except as provided in Section 9 hereof) or the condition thereof. Tenant acknowledges that Landlord has not investigated and does not warrant or represent to Tenant that the Premises are fit for the purposes intended by Tenant or for any other purpose or purposes whatsoever, and Tenant acknowledges that the Premises are to be leased to Tenant in their existing condition, i.e., "AS IS", on and as of the Effective Date.

6.  **CONDEMNATION**

(a)  In the event that the whole or any material part of the building on the Premises or a material portion of the land (for purposes hereof, "material" shall mean more than 20% of the building on the Premises or more than 40% of the land) shall be taken during the term of this Lease or any extension or renewal thereof for any public or quasi public use under any governmental law, ordinance, regulation or by right of eminent domain, or shall be sold to the condemning authority under threat of condemnation, or if Tenant can demonstrate to Landlord's reasonable satisfaction that the Premises cannot be profitably operated as the type of restaurant

contemplated herein, or if all reasonable access to the adjacent roadways from the existing or comparable curb cuts shall be taken (any of such events being hereinafter referred to as a "taking"), then in such event, Tenant shall have the option of terminating this Lease as of a date no earlier than the date of such taking, such termination date to be specified in a notice of termination to be given by Tenant to Landlord not fewer than fourteen (14) days prior to the date on which possession of the Premises, or part thereof, must be surrendered to the condemning authority or its designee.

(b)     In the event of any taking which does not give rise to an option to terminate or in the event of a taking which does give rise to an option to terminate and Tenant does not elect to terminate, Landlord shall make its award available to Tenant and Tenant shall, to the extent of the award from such taking (which term "award" shall mean the net proceeds after deducting expenses of any settlement, or net purchase price under a sale in lieu of condemnation but shall exclude the value of Landlord's reversionary interest), promptly restore or repair the Premises and all improvements thereon (except those items of Tenant's Property which Tenant is permitted to remove under the terms of this Lease) to the same condition as existed immediately prior to such taking insofar as is reasonably possible.  If the estimated cost of restoration or repair shall exceed the amount of Landlord's award, Tenant shall deposit with Landlord the amount of such excess.  The award and any excess shall be held in trust by Landlord and used, to the extent required, for the purpose of such restoration or repair.  A just and proportionate part of the Rent payable hereunder shall be abated from the date of such taking until ten (10) days after Tenant has restored same and thereafter the Rent shall be reduced in proportion to the reduction in the then rental value of the Premises after the taking in comparison with the rental value prior to the taking.  If the award shall exceed the amount spent or to be spent promptly to effect such restoration, repair or replacement, such excess shall unconditionally belong to Landlord and shall be paid to Landlord.

(c)     In the event of any partial taking where this Lease is not terminated, Tenant shall not be entitled (except for use in reconstruction) to any part of the compensation or award given Landlord attributable to the taking of the fee of the Premises, but Tenant shall have the right to amounts (i) to reimburse Tenant for any cost which Tenant may incur in removing Tenant's Property from the Premises and (ii) to compensate Tenant for loss of Tenant's business.

(d)     If this Lease is terminated by reason of a taking, then Landlord shall be entitled to receive the reimbursement for its entire award in any such condemnation or eminent domain proceedings or purchase in lieu thereof and Tenant hereby assigns to Landlord all of its right, title and interest in and to all and any part of such award, provided, however, Tenant shall be entitled to receive any portion of any award (i) to reimburse Tenant for any cost which Tenant may incur in removing Tenant's Property from the Premises and (ii) to compensate Tenant for loss of Tenant's business.

## 7.    TAXES AND ASSESSMENTS

(a)     Tenant shall pay prior to delinquency all taxes and assessments which may be levied upon or assessed against the Premises and all taxes and assessments of every kind and nature whatsoever arising in any way from the use, occupancy, possession or transfer of ownership (excluding, however, any taxes incurred by Landlord (or a successor landlord) in

connection with a transfer of ownership) of the Premises or assessed against the improvements situated thereon, together with all taxes levied upon or assessed against Tenant's Property. To that end, Landlord shall not be required to pay any taxes or assessments whatsoever which relate to or may be assessed against this Lease, the Rent and other amounts due hereunder, the Premises, improvements and Tenant's Property; provided, however, that any taxes or assessments which may be levied or assessed against the Premises for a period ending after the termination hereof shall be prorated between Landlord and Tenant as of such date.

(b)      Within forty five (45) days after Tenant receives the paid receipted tax bills, Tenant shall furnish Landlord with copies thereof.  Tenant may, at its option, contest in good faith and by appropriate and timely legal proceedings any such tax and assessment; provided, however, that Tenant shall indemnify and hold harmless Landlord from any loss or damage resulting from any such contest, and all expenses of same (including, without limitation, all attorneys' and paralegal fees, court and other costs) shall be paid solely by Tenant.

## 8.    COMPLIANCE, UTILITIES, SURRENDER

(a)      Tenant, at its expense:  shall promptly comply with all municipal, county, state, federal and other governmental requirements and regulations, whether or not compliance therewith shall require structural or other changes in the Premises; will procure and maintain all permits, licenses and other authorizations required for the use of the Premises or any part thereof then being made and for the lawful and proper installation, operation and maintenance of all equipment and appliances necessary or appropriate for the operation and maintenance of the Premises; and shall comply with all easements, restrictions, reservations and other instruments of record applicable to the Premises, including without limitation, any requirement in such instruments on behalf of the owner or occupant of the Premises to procure and maintain insurance, and whether now in effect or enacted during the term of this Lease.  Tenant shall indemnify and save Landlord harmless from all expenses and damages by reason of any notices, orders, violations or penalties filed against or imposed upon the Premises, or against Landlord as owner thereof, because of Tenant's failure to comply with this paragraph.

(b)      Tenant shall pay all charges for heat, water, gas, sewage, electricity and other utilities used or consumed on the Premises and shall contract for the same in its own name. Landlord shall not be liable for any interruption or failure in the supply of any such utility service to the Premises.

(c)      Tenant shall peacefully surrender possession of the Premises, the buildings and other improvements thereon to Landlord at the expiration, or earlier termination, of the original term or any extended or renewed term of this Lease.

## 9.    QUIET ENJOYMENT

Landlord covenants and warrants that Landlord has full power and authority to enter into this Lease, and that Tenant shall have and enjoy full, quiet and peaceful possession of the Premises, its appurtenances and all rights and privileges incidental thereto during the term hereof and any renewals or extensions, subject to the provisions of this Lease and any easements, restrictions, reservations and other instruments of record applicable to the Premises and in

existence at the time of the conveyance of the Premises to Landlord by Tenant or thereafter. Landlord agrees to cause the holder of any mortgage now or hereafter relating to the Premises to execute and deliver to Tenant a Subordination and Nondisturbance Agreement substantially in the form contemplated by Paragraph 18 of this Lease.

**10.  OPTION TO RENEW**

Tenant shall have four (4) successive five (5) year options to extend this Lease for up to an additional twenty (20) years upon the same terms, covenants, conditions and rental as set forth herein provided that Tenant is not in Default hereunder at the commencement of such option period.  In the event Tenant elects not to exercise each such five (5) year option, Tenant shall give written notice to Landlord not less than six (6) months prior to the Termination Date. Should Tenant fail to give Landlord such timely written notice during the required period, this Lease shall automatically renew pursuant to the terms hereof.

**11.  [INTENTIONALLY OMITTED]**

**12.  NONCOMPETE**

Tenant shall not own an interest in, or operate, another IHOP Restaurant within a two (2) mile radius of the Premises (or such lesser radius as approved by Franchisor) during the term of this Lease and any renewals hereof.  Violation of this covenant shall, at Landlord's option, be and constitute a Default hereunder and, because the parties agree that damages would not be an adequate remedy, Tenant hereby agrees that Landlord shall be entitled to equitable relief, including injunctive relief and specific performance in addition to any remedy available at law. Tenant further agrees that the restrictions and the duration of such restrictions set forth in this paragraph are reasonable under the circumstances and in particular, in relation to Tenant's restaurant business.

**13.  DEFAULT**

(a)  If any one or more of the following events occur, said event or events shall be referred to as a "Default" under this Lease:

(i)  If Tenant fails to pay Rent or any other charges required under this Lease when same shall become due and payable, and such failure continues for ten (10) days or more after written notice from Landlord.

(ii)  If Tenant fails to perform or observe any term, condition, covenant, agreement, or obligation required under this Lease and such failure continues for thirty (30) days after written notice from Landlord (except that such thirty (30) day period shall be automatically extended for such additional period of time as is reasonably necessary to cure such Default, if such Default cannot be cured within such period, provided Tenant is in the process of diligently curing the same).

(iii)  If Tenant (a) fails to pay Rent or any other charges required under any other lease or agreement with Landlord or a CNL Affiliate (each an "Other Lease") when same shall become due and payable and such failure continues for fourteen (14) days

0914332/106945/749713; IHOP #1421
Austin, Travis County, Texas

after Tenant's receipt of written notice from Landlord, or (b) fails to perform or observe any material term, condition, covenant, agreement, or obligation required under any Other Lease, and such failure continues for thirty (30) days or more after written notice from Landlord; provided, however, that with respect to a default under subclause (a) herein, the aggregate of all amounts in default, or a series of payment defaults, under such Other Leases must exceed the sum of Fifty Thousand Dollars ($50,000.00), and in the event of any such default, Landlord shall be entitled to the default interest rate specified in the Other Leases during the term of any such default, and any of Tenant's monies deposited with Landlord shall be immediately and irrevocably assigned to Landlord to apply to any obligations of Tenant owed to Landlord in any manner Landlord deems necessary.

Notwithstanding the foregoing, this Lease shall remain cross-defaulted with an Other Lease to the extent set forth herein only for so long as CNL Net Lease Funding 2003, LLC or a CNL Affiliate is the Landlord under such Other Lease.

(iv)    If any default or event of default shall occur and remain uncured under the Franchise Agreement following any cure period applicable thereto and established in the Franchise Agreement, or if such Franchise Agreement is terminated for any reason.  In the event the Franchise Agreement is terminated, Tenant shall notify Landlord of such termination within two (2) business days of its receipt of notice of termination. Notwithstanding the foregoing, Tenant shall have the right to engage in good faith disputes with Franchisor under the Franchise Agreement without such dispute constituting a Default under this Lease, provided that such dispute shall not prevent Tenant from performing its obligations under this Lease.

(v)    If Tenant fails to continuously operate its business within the Premises except for temporary periods of closure caused by casualty, repairs, Acts of God, or temporary and reasonable periods of remodeling, or other appropriate business reasons, not to exceed ninety (90) days in any Lease Year without first obtaining Landlord's written approval which shall not be unreasonably withheld, conditioned or delayed.

(vi)    If Tenant shall make an assignment for the benefit of creditors or file a petition, in any federal or state court, in bankruptcy or reorganization, or make an application in any such proceedings for the appointment of a trustee or receiver for all or any portion of its property.

(vii)    If any petition shall be filed under federal or state law against Tenant in any bankruptcy, reorganization, or insolvency proceedings, and said proceedings shall not be dismissed or vacated within sixty (60) days after such petition is filed.

(viii)    If a receiver or trustee shall be appointed under federal or state law for Tenant, or any guarantor of Tenant's obligations hereunder, for all or any portion of the property of either of them, and such receivership or trusteeship shall not be set aside within thirty (30) days after such appointment.

     (b)    Upon the happening of any one or more of the aforementioned Defaults which are not cured within the cure period applicable thereto, if any, Landlord shall have the right, in addition to any other rights and remedies, to terminate this Lease by giving written notice of same to Tenant.  Upon such notice, this Lease shall cease and expire, and Tenant shall surrender the Premises to Landlord.  Notwithstanding such termination, Tenant's liability and obligation under all provisions of this Lease, including the obligation to pay Rent and any and all other amounts due hereunder shall survive and continue.  In addition, in the event of Tenant's Default under this Lease, Landlord may, by notice to Tenant, accelerate the monthly installments of Rent due hereunder for the remaining term of this Lease, in which event such amount, together with any sums then in arrears, shall immediately be due and payable to Landlord.  Tenant hereby expressly agrees that its occupation of the Premises after Default constitutes forcible detainer (or equivalent) as is defined by the law in force in the jurisdiction in which the Premises are located. Tenant further agrees that in the event of a Default, any monies deposited by Tenant with Landlord shall be immediately and irrevocably assigned and released to Landlord (without further action by Landlord or Tenant) to be applied by Landlord against any and all of Tenant's obligations under this Lease, in any manner as Landlord may determine.

     (c)    If this Lease shall terminate as provided hereinabove, Landlord may re-enter the Premises and remove Tenant, its agents and subtenants, together with all or any of Tenant's Property, by suitable action at law, or by force.  Tenant waives any right to the service of any notice of Landlord's intention to re-enter and Landlord shall not be liable in any way in connection with any action it takes pursuant to this paragraph.  Notwithstanding such re-entry or removal, Tenant's liability under Lease shall survive and continue.

     (d)    In case of re-entry, repossession or termination of this Lease, Tenant shall remain liable for Rent, any additional rent and all other charges provided for in this Lease for the otherwise remaining term of this Lease, and any and all expenses which Landlord may have incurred in re-entering the Premises including, but not limited to, allocable overhead, alterations to the building, leasing, construction, architectural, legal and accounting fees.  Landlord shall have the right, but not the obligation, to relet the whole or part of the Premises upon terms which Landlord, in its sole discretion, deems appropriate and Tenant shall be responsible for all expenses incurred by Landlord in reletting or attempting to relet and all rent collected for reletting shall be credited against all of Tenant's obligations hereunder.

     (e)    In the event of a Default, Landlord may, at its sole option, enter upon the Premises, if deemed necessary by Landlord in its sole discretion, and/or do whatever may be deemed necessary by Landlord in its sole discretion to cure such failure by Tenant.  Tenant shall pay to Landlord within five (5) days of Landlord's request, all costs incurred by Landlord in connection with Landlord's curing of such failure.  In addition to the above costs, in the event Landlord does not receive payment from Tenant when due under this paragraph, then interest at the rate of eighteen percent (18%) per annum or, if less, the highest rate allowable by law, shall be due and payable with respect to such payment from the due date thereof until Landlord receives such payment.

     (f)    In the event either party engages legal counsel in connection with the enforcement of any of the terms and provisions of this Lease, then, in addition to all other sums due from the party deemed liable hereunder, such liable party shall pay to the other any and all attorneys' fees,

paralegal fees, and legal costs and expenses incurred by such non-breaching party, whether or not judicial proceedings are filed, and including on appeal and in any bankruptcy proceedings.

(g)     Notwithstanding the foregoing, in the event Tenant fails (beyond any applicable cure periods set forth herein) to (1) maintain and keep in full force and effect any or all of the insurance policies required pursuant to Paragraph 4 of this Lease, or (2) pay when due any and all taxes and/or assessments levied or assessed against the Premises, or (3) maintain or repair the Premises pursuant to Paragraph 5 of this Lease, then in the event Landlord does not terminate this Lease, and at Landlord's request and in Landlord's sole discretion, Tenant shall escrow funds for payment of such insurance premiums, taxes and assessments, and utilities maintenance costs and repair costs in the following manner:

(i)     Tenant shall immediately pay to Landlord all sums expended by Landlord, plus an additional ten percent (10%) thereof, for purposes of:  (1) bringing current or reinstating or purchasing the insurance required under Paragraph 4 of this Lease; and/or (2) paying all taxes and assessments which are past due or currently due.   Thereafter, Tenant shall pay to Landlord on the first (1st) day of each month along with the monthly payment of Rent a sum (the "Escrow Funds") equal to one-twelfth (1/12th) of:  (A) the yearly premium(s) for the insurance required to be maintained pursuant to Paragraph 4 of this Lease; and/or (B) the annual taxes and assessments levied or assessed against the Premises as reasonably estimated by Landlord, based on the prior year's taxes and assessments levied or assessed against the Premises.

(ii)     Landlord shall apply the Escrow Funds to pay said insurance and/or taxes and assessments.  No interest shall be payable by Landlord on the Escrow Funds unless required by applicable law, in which event all such interest shall be first applied by Landlord to pay such insurance and/or taxes and assessments. Landlord shall provide to Tenant an annual accounting of the Escrow Funds in a reasonable format showing credits and debits to the Escrow Funds and the purpose for which each debit to the Escrow Funds was made.

(iii)     If the amount of the Escrow Funds held by Landlord at the time of the annual accounting thereof shall exceed the amount deemed necessary by Landlord to provide for the payment of insurance and/or taxes and assessments as they become due, such excess shall be credited to Tenant against the next monthly installment or installments of Escrow Funds due.  If at any time the amount of the Escrow Funds held by Landlord shall be less than the amount deemed necessary by Landlord to pay the insurance and/or taxes and assessments as they become due, Tenant shall pay to Landlord any amount necessary to make up the deficiency within thirty (30) days after written notice from Landlord to Tenant requesting payment thereof is received by Tenant.

(iv)     The foregoing Escrow Funds arrangement shall terminate if Tenant fully and faithfully complies with the provisions of this Paragraph 13(g) for a period of twenty-four (24) consecutive months.  Upon the termination of this Lease, Landlord shall promptly refund (or credit to Tenant against amounts due to Landlord in the case of termination due to Tenant's Default) any Escrow Funds held by Landlord.

(h)    The rights and remedies of Landlord set forth herein shall be in addition to any other right and remedy now or hereinafter provided by law, and all such rights and remedies shall be cumulative. No action or inaction by Landlord shall constitute a waiver of any Default, and no waiver of any Default shall be effective unless it is in writing, signed by Landlord.

## 14.    HOLDING OVER

In the event Tenant remains in possession of the Premises after the expiration of this Lease without executing a new written lease acceptable to Landlord and Tenant, Tenant shall occupy the Premises as a tenant from month to month subject to all the terms hereof (except as modified by this paragraph), but such possession shall not limit Landlord's rights and remedies by reason thereof nor constitute a holding over. In the event of such month to month tenancy, the monthly installment of Annual Rent due for each such month shall increase to be one hundred twenty five percent (125%) of the monthly installment thereof which was payable during the last month of the term of this Lease.

## 15.    WAIVER OF SUBROGATION

Notwithstanding anything in this Lease to the contrary, other than Tenant's obligations to repair, restore or rebuild described in Paragraph 4 of this Lease, neither party shall be liable to the other for any damage or destruction of the Premises resulting from fire or other casualty covered by insurance required of either party hereunder, whether or not such loss, damage or destruction of the Premises are caused by or results from the negligence of such party (which term includes such party's officers, employees, agents and invitees), and each party hereby expressly releases the other from all total liability for or on account of any said insured loss, damage or destruction, whether or not the party suffering the loss is insured against such loss, and if insured whether fully or partially. Each party shall procure all endorsements of insurance policies carried by it necessary to protect the other from any right of subrogation and/or liability in the event of such loss.

## 16.    LANDLORD'S LIEN FOR RENTS

As security for Tenant's payment of Rent and all other payments required to be made by Tenant hereunder (including, by way of illustration only, taxes, damage to the Premises, court costs, and attorneys' fees), Tenant hereby grants to Landlord a lien upon all of Tenant's Property now or hereafter located upon the Premises. The lien herein provided shall be subordinate to the lien of any chattel mortgage, collateral assignment or security interest given by Tenant to any seller or provider of purchase money financing of Tenant's Property. In the event of a Default, Landlord may enter upon the Premises and take possession of Tenant's Property, or any part thereof, and may sell all or any part of Tenant's Property at public or private sale in one or successive sales, with or without notice, to the highest bidder for cash and on behalf of Tenant. Landlord may sell and convey Tenant's Property, or any part thereof, to such bidder, delivering to such bidder all of Tenant's title and interest in such property sold to such bidder. The proceeds of such sale shall be applied by Landlord first toward the costs of such sale and then toward the payment of all sums due from Tenant to Landlord under this Lease. Notwithstanding anything in this paragraph to the contrary, Tenant shall be entitled to collaterally grant a security interest in

Tenant's interest in this Lease to Bank of America, N.A., and in connection therewith Landlord agrees to execute a Landlord's Consent substantially in the form attached hereto as Exhibit "E".

## 17.     ASSIGNMENT AND SUBLETTING

(a)     Tenant shall not have the right, without first obtaining Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed, to assign or sublet any part or all of the Premises to any party for any purpose. A change in ownership of the controlling interest of Tenant shall also constitute an assignment subject to this paragraph. Landlord, without being deemed unreasonable, may withhold its consent to any proposed assignment or subletting where (i) such assignment or subletting would violate any material term of any then material existing agreement applicable to the Premises, or (ii) the financial capacity of such assignee or subtenant is materially less than that of Tenant or (iii) such assignee or subtenant does not intend to operate a national or regionally recognized restaurant on the Premises or (iv) even if such assignee or subtenant intends to operate such a nationally or regionally recognized restaurant on the Premises, the type of restaurant or the operating history of such assignee or subtenant or the operating history of such type of restaurant reflects an inability to generate gross sales and potential sales growth equal to or greater than that of Tenant. Notwithstanding the foregoing, Landlord acknowledges that Tenant shall have the absolute right to assign this Lease to Tenant's Franchisor. Any assignment or subletting permitted hereunder or consented to by Landlord shall not relieve Tenant of its liability for the continued performance of all terms, covenants and conditions of this Lease, including without limitation the payment of all Rent and other charges hereunder. Likewise, as a condition of any such assignment by Tenant, the assignee shall be required to execute and deliver to Landlord, upon the effective date of such assignment, an agreement, in recordable form, whereby such assignee assumes and agrees to discharge all obligations of Tenant under this Lease; provided however, that (A) in the event of a sale of all of Tenant's business or assets, Tenant shall be released from all liability under this Lease if the purchaser (and assignee or sublessee of the Lease) shall have a net worth of not less than SIX MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($6,200,000.00); and (B) in the event of an assignment of this Lease by Tenant in connection with a sale of less than all of Tenant's business or assets, Landlord may release Tenant from all liability hereunder if the purchaser (and assignee or sublessee of the Lease) shall have a net worth of not less than SIX MILLION TWO HUNDRED THOUSAND AND NO/100 DOLLARS ($6,200,000.00), and is otherwise acceptable to Landlord in its reasonable discretion.

(b)     In the event of the subletting or assignment of this Lease, any monetary consideration obtained from an assignee or transferee for such subletting or assignment (not including any value related to Tenant's business) shall be paid to Landlord. In the event of the subletting or assignment of this Lease, if Tenant derives funds or rental income greater than what it is paying to Landlord under this Lease, the Annual Rent provided for herein shall be increased to that amount received by Tenant from sublessee or assignee of this Lease.

(c)     Prior to any permitted assignment hereunder, Tenant shall deliver to Landlord written notice of such assignment or subletting, together with: (i) a copy of the assignment or subletting documents (including copies of any recorded documents related thereto); (ii) the name, address and telephone number of such assignee or sublet tenant and a designated contact person therefor; (iii) a new insurance policy and binder complying with the terms of this Lease

and naming such assignee or sublet tenant as the tenant of the Premises; and (iv) an agreement executed by such assignee or sublet tenant, in recordable form, whereby such assignee or sublet tenant assumes and agrees to discharge all obligations of Tenant under this Lease. Landlord shall execute and return within ten (10) days of receipt any consents and estoppels reasonably requested by Tenant, the assignee or sublessee, or their lenders, in connection with such assignment or sublease.

(d)     Landlord shall have the right without limitation to sell, convey, transfer or assign its interest in the Premises or its interest in this Lease, and upon such conveyance being completed all covenants and obligations of Landlord under this Lease accruing thereafter shall cease, but such covenants and obligations shall run with the land and shall be binding upon the subsequent landlord or owners of the Premises or of this Lease.

## 18.     SUBORDINATION, NON DISTURBANCE, ATTORNMENT, ESTOPPEL CERTIFICATE.

(a)     Upon written request of the holder of any mortgage (which term "mortgage" shall also include deeds of trust) now or hereafter relating to the Premises, Tenant shall subordinate its rights under this Lease to the lien thereof and to all advances made or hereafter to be made upon the security thereof, and Tenant shall execute, acknowledge and deliver an instrument substantially in the form of Exhibit "B" attached hereto or in other reasonable form customarily used by such encumbrance holder to effect such subordination; provided, however, as a condition of all such subordinations, the holder of such mortgage shall be first required to agree with Tenant that, notwithstanding the foreclosure or other exercise of rights under any such first or other mortgage, Tenant's possession and occupancy of the Premises and the improvements and its leasehold estate shall not be disturbed or interfered with, nor shall Tenant's rights and obligations under this Lease be altered or adversely affected thereby so long as Tenant is not in Default.

(b)     Notwithstanding anything in Paragraph 18(a) above to the contrary, in the event the holder of any such mortgage elects to have this Lease be superior to its mortgage, then upon notification to Tenant to that effect by such encumbrance holder, this Lease shall be deemed prior to the lien of said mortgage, whether this Lease is dated prior or subsequent to the date of said mortgage, and Tenant shall execute, acknowledge and deliver an instrument, in the form customarily used by such encumbrance holder to effect such priority.

(c)     In the event proceedings are brought for the foreclosure of, or in the event of the exercise of the power of sale under any mortgage made by Landlord encumbering the Premises, or in the event of delivery of a deed in lieu of foreclosure under such a mortgage, Tenant shall attorn to the purchaser upon any such foreclosure or sale and recognize such purchaser as "Landlord" under this Lease, and upon the request of the purchaser, Tenant shall execute, acknowledge and deliver an instrument, in form and substance satisfactory to such purchaser, evidencing such attornment.

(d)     Each party agrees, within ten (10) days after written request by the other, to execute, acknowledge and deliver to and in favor of any proposed mortgagee or purchaser of the Premises, an estoppel certificate, substantially in the form of Exhibit "C" attached hereto, stating,

among other things (i) whether this Lease is in full force and effect, (ii) whether this Lease has been modified or amended and, if so, identifying and describing any such modification or amendment, (iii) the date to which Rent and other charges have been paid, and (iv) whether the party furnishing such certificate knows of any default on the part of the other party under this Lease, or has any claim against such party and, if so, specifying the nature of such default or claim.

(e)     Upon written demand by the holder of any mortgage encumbering the Premises, Tenant shall forthwith execute, acknowledge and deliver an agreement in favor of and in the form customarily used by such encumbrance holder, by the terms of which Tenant shall agree to give prompt written notice to such encumbrance holder in the event of any casualty damage to the Premises or in the event of any default on the part of Landlord under this Lease, and shall agree to allow such encumbrance holder a reasonable length of time after notice to cure or cause the curing of such default before exercising Tenant's rights under this Lease, or terminating or declaring a default under this Lease.

(f)     In the event Landlord transfers, sells or assigns the Premises during the term of this Lease or any renewals thereof Tenant shall, within seven (7) days after written request by Landlord, request from Franchisor a franchisor certificate stating that Tenant is not in default under any franchise agreement with Franchisor, and shall deliver such certificate to Landlord upon receipt.

## 19.    USE OF PREMISES

The use of the Premises shall be limited to the operation of an IHOP Restaurant, or such other use as may be approved by Landlord, in writing and in advance, which approval shall not be unreasonably withheld, conditioned or delayed. Landlord shall not be required to approve any use which Landlord deems to be "noxious or offensive", which shall be defined to mean an off-track betting business, massage parlor, blood bank, or adult or adult video rental store (which are defined as stores in which thirty percent (30%) or more of the inventory is not available for sale to children under eighteen (18) years old); or a business, the primary or exclusive operation of which consists of a dance hall, bar serving alcoholic beverages, billiard or pool hall, bingo parlor, video game arcade or night club. Tenant shall continuously operate (or during such hours as Tenant then operates its business) such restaurant on the Premises except for temporary closure due to repairs, Acts of God, and similar matters. Tenant shall at all times maintain the Premises and operate its business in substantial material compliance with all applicable regulations and requirements of all county, municipal, state, federal and other governmental authorities, and instruments of record affecting the Premises which are now in force or which are enacted during the term of this Lease.

## 20.    NOTICES

All notices and other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a nationally recognized overnight courier or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Landlord:    **CNL NET LEASE FUNDING 2003, LLC**
                   450 South Orange Avenue
                   Orlando, FL 32801-3336
                   Attention: Property Management
                   Fax: (407) 422-2933

with copy to:      **DALE A. BURKET, ESQUIRE**
                   Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
                   215 North Eola Drive
                   Post Office Box 2809
                   Orlando, Florida 32802
                   Fax: (407) 843-4444

If to Tenant:      **ACG 1421, L.P.**
                   Attn: Martin P. Adler
                   933 N. Central Expressway
                   Plano, Texas 75075
                   Fax: (972) 509-7075

with a copy to:    **ARGONNE CAPITAL GROUP, LLC**
                   Attn: Will House
                   One Buckhead Plaza, Suite 1560
                   3060 Peachtree Road, NW
                   Atlanta, Georgia 30305
                   Fax: (404) 364-2985

Any party may change its address for notices by written notice in like manner as provided in this paragraph and such change of address shall be effective seven (7) days after the date written notice of such change of address is given. Notice for purposes of this Lease shall be deemed given by the party who is giving such notice when it shall have been received or refused from the U.S. certified or registered mail, or from a nationally recognized overnight courier, with sufficient postage prepaid.

With respect to any such notice, Tenant shall, and Landlord shall use its best efforts to, simultaneously deliver a copy of such notice by facsimile at the appropriate facsimile number above to the other party; provided however, that certified mail or overnight courier delivery shall nevertheless be required to effect proper notice hereunder.

## 21.   INDEMNIFICATION

Tenant does hereby indemnify and exonerate and agrees to hold harmless Landlord against and from all liabilities, losses, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable architects' fees, attorneys' fees, paralegal fees, and legal costs and expenses incurred by Landlord, whether or not judicial proceedings are filed, and including on appeal and in any bankruptcy proceedings, which may be imposed upon or asserted against or incurred by Landlord by reason of any of the following occurring:

0914332/106945/749713; IHOP #1421
Austin, Travis County, Texas

18

(a)     any work or thing done in respect of construction of, in or to the Premises or any part of the improvements now or hereafter constructed on the Premises;

(b)     any use, possession, occupation, operation, maintenance or management of the Premises or any part hereof;

(c)     any failure to, or to properly, use, possess, occupy, operate, maintain or manage the Premises or any part thereof;

(d)     the condition, including environmental conditions, of the Premises or any part thereof;

(e)     any negligence on the part of Tenant or any of its agents, contractors, servants, employees, licensees or invitees;

(f)     any accident, injury or damage to any person or property occurring in, on or about the Premises or any part thereof including any sidewalk adjacent thereto;

(g)     any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease on its part to be performed or complied with.

## 22.   COOPERATION

(a)     Landlord shall fully cooperate with Tenant throughout the term of this Lease to secure or maintain proper zoning, building and other permits and compliance with all applicable laws. Landlord shall within ten (10) days of request execute any petitions, requests, applications and the like as Tenant shall reasonably request in order to obtain any permit, license, variances and approvals which, in the reasonable judgment of Tenant, are necessary for the lawful construction and/or operation of Tenant's business on the Premises, provided, however, that Tenant shall indemnify and save Landlord harmless from any and all expenses, costs, charges, liabilities, losses, obligations, damages and claims of any type which may be imposed upon, asserted against or incurred by Landlord by reason of same.

(b)     Landlord shall have the right, in Landlord's sole discretion, to enter into an exchange agreement with a qualified intermediary in order to effectuate a like-kind exchange of the Premises for one or more other properties. Landlord and Tenant agree that Tenant, at no cost to Tenant, shall cooperate with Landlord in effecting a like-kind exchange of the Premises by Landlord pursuant to and in accordance with the provisions of Section 1031 of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

## 23.   EXCULPATION

Neither Party shall not be liable to the other, or the other's employees, agents, invitees, licensees or any other person whomsoever for any injury to person or damage to property on or about the Premises caused by the other party's negligence or misconduct, its agents, servants or employees or of any other person entering the building under express or implied invitation by the

other party or due to any other cause whatsoever, unless caused in whole or in part by the negligence or neglect of such party, its employees or its authorized representatives.

## 24.  LANDLORD'S LIABILITIES

The term "Landlord" as used in this Lease means the owner from time to time of the Premises. Neither Landlord nor any partner, shareholder or beneficiary thereof shall have any personal liability with respect to any of the provisions of this Lease, and if Landlord is in default with respect to its obligations hereunder, Tenant shall look solely to the equity of Landlord in the Premises.

## 25.  SUCCESSORS

The covenants, conditions and agreements contained in this Lease shall bind and inure to the benefit of Landlord and Tenant and their respective heirs, legal representatives, successors and assigns.

## 26.  ENTIRE AGREEMENT/MEMORANDUM OF LEASE

This Lease contains the entire agreement between the parties hereto and may not be modified in any manner other than in writing signed by the parties hereto or their successors in interest. A memorandum of this Lease shall be executed by the parties and shall be recorded in the official records of the county where the Premises are located.

## 27.  GENDER

Whenever the context hereof permits or requires, words in the singular may be regarded as in the plural and vice-versa, and personal pronouns may be read as masculine, feminine and neuter.

## 28.  BROKERAGE FEES

It is understood and agreed that neither party has incurred any real estate brokerage fees or commissions arising out of this Lease and each party agrees to hold the other harmless from and against all such fees and commissions incurred, and costs related thereto including legal fees, as a result of its own conduct or alleged conduct.

## 29.  CAPTIONS

The captions of this Lease are for convenience only, and do not in any way define, limit, disclose, or amplify terms or provisions of this Lease or the scope or intent thereof.

## 30.  NOT A SECURITY ARRANGEMENT

The parties hereto agree and acknowledge that this transaction is not intended as a security arrangement or financing secured by real property, but shall be construed for all purposes as a true lease.

## 31.  NET LEASE

It is the intention of the parties hereto that this Lease is and shall be treated as a triple net lease.  Any present or future law to the contrary notwithstanding, except as expressly set forth in this Lease, this Lease shall not terminate, nor shall Tenant be entitled to any abatement, suspension, deferment, reduction, setoff, counterclaim, or defense with respect to Rent, nor shall the obligations of Tenant hereunder be affected by reason of:  any damage to or destruction of the Premises or any part thereof; any taking of any Premises or any part thereof or interest therein by condemnation or otherwise; any prohibition, limitation, restriction or prevention of Tenant's use, occupancy or enjoyment of the Premises or any part thereof, or any interference with such use, occupancy or enjoyment by any person or for any other reason; any title defect or encumbrance or any matter affecting title to the Premises or any part thereof; any eviction by paramount title or otherwise; any default by Landlord hereunder; any proceeding relating to Landlord; the impossibility or illegality of performance by Landlord, Tenant or both; any action of governmental authority; any breach of warranty or misrepresentation; any defect in the condition, quality or fitness for use of the Premises or any part thereof; or any other cause whether similar or dissimilar to the foregoing and whether or not Tenant shall have notice or knowledge of any of the foregoing.  The parties intend that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated in accordance with an express provision of this Lease.

## 32.  WAIVER

No waiver by either party of any provision hereof shall be deemed a wavier of any other provision hereof or of any subsequent breach by the other party of the same or any other provision.  Either party's consent to, or approval of, any act as required hereunder shall not be deemed to render unnecessary the obtaining of such party's consent to or approval of any such subsequent act by the other party.  The acceptance of Rent hereunder by Landlord shall not be a waiver of any preceding Default by Tenant of any provision hereof, other than the failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent.

## 33.  TIME OF THE ESSENCE

Landlord and Tenant agree that time shall be of the essence of all terms and provisions of this Lease.

## 34.  GOVERNING LAW

This Lease shall be construed in accordance with the laws of the state in which the Premises are located.

## 35.  LEASE SECURITIZATION.

(a)     Landlord reserves the right to assign, transfer, participate, pledge, hypothecate or encumber, or any combination thereof, all or any part of Landlord's interest in this Lease or any

of the collateral and documents described herein or related hereto without Tenant's consent. Without limiting the generality of the foregoing, Tenant acknowledges that this Lease may be securitized, and Tenant agrees to cooperate in good faith with Landlord's reasonable requests relating to the securitization program process and requirements. Tenant shall make information reasonably pertinent to the lease securitization program available to Landlord which Landlord may use for such program only, and Tenant agrees to assist Landlord in completing any documents reasonably necessary to accomplish any such transfer and/or securitization transaction.

36.  **ECONOMIC SUBSTITUTION**

In the event Tenant determines in its reasonable business discretion, exercised in good faith, that the Premises are inadequate or unprofitable for the purposes for which the same are then used pursuant to this Lease, then Tenant may, at Tenant's option, during the term of the Lease or any extensions thereof, give written notice to Landlord of its intention to substitute another improved property having an IHOP Restaurant located thereon, which shall have a value no less than the greater of the following: (i) the then current value of the Premises as established by a qualified independent appraiser selected by Landlord (who is a member of the American Institute of Real Estate Appraisers); or (ii) the Total Cost; provided, however, the substitute property meets all of Landlord's underwriting requirements, including, but not limited to, confirmation that the rating of any bonds or trust certificates issued in connection with a securitization in which the Lease is included will not change as a result of the substitution. Such other substitute property shall be subject to (iii) Landlord's approval (in Landlord's sole and absolute discretion); and (iv) the approval of any then mortgagee having an interest in the Premises. In addition to any other requirements of this paragraph with respect to the substitute property, it shall not be unreasonable for Landlord to reject a substitute property based on: (v) an unacceptable site inspection performed by Landlord or its agents, (vi) location of the substitute property in the State of Tennessee, (vii) Tenant's failure to comply with any of Landlord's normal due diligence and opinion letter requirements or (viii) failure of the substitute property to comply with any of Landlord's normal due diligence requirements. The terms of the related lease for such substitute property shall be identical to this Lease, except that the term shall be for the then remainder of the term of this Lease (considering renewal options). Tenant shall pay all reasonable costs associated with the closing to effect the substitution. Upon Landlord's and any mortgagee's approval of the substitution of the Premises, a closing of title shall take place as soon as reasonably practical thereafter, but in no event later than sixty (60) days after Tenant is notified that Landlord has approved the substitution. If Landlord and Landlord's mortgagee (if any) do not approve such substitute property, Tenant may submit other properties to Landlord for Landlord's (and Landlord's mortgagee, if any) approval.

37.  **SEVERABILITY**

If any provision of this Lease becomes unenforceable for any reason, such unenforceability shall not limit or impair the operation or validity of any other provision of this Lease.

**38.** **JURISDICTION, VENUE, AND GOVERNING LAW**

If any party to this Lease institutes any lawsuit or other action or proceeding against the other party and pertaining to this Lease, any right or obligation of any party hereunder, breach of this Lease or otherwise pertaining to the Premises, the sole and exclusive venue and jurisdiction for filing and maintaining any such lawsuit or other action or proceeding shall be in the jurisdiction where the Premises are located, and the parties to this Lease waive the right to institute or maintain any such suit, action or proceeding in any other courts or forums whatsoever. Each party by executing this Lease consents and submits itself to the personal jurisdiction of such court. This Lease shall be construed and governed in accordance with the laws of the state where the Premises are located without regard to conflict of law principles.

**39.** **SUBORDINATION OF DISTRIBUTIONS**

All management, employment and shareholder agreements of Tenant shall include provisions that subordinate any rights of the owners and shareholders of Tenant to receive owner advances, equity advances, loan repayments and distributions to the payments due Landlord under this Lease. Tenant's failure to comply with this paragraph shall constitute a Default of this Lease entitling Landlord to pursue any and all available remedies under applicable law and this Lease.

**40.** **COUNTERPARTS**

This Lease may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one agreement.

**[Signatures on Next Page]**

IN WITNESS WHEREOF, the parties hereto have executed and sealed this Lease Agreement to be effective as of the day and date first above written.

**"LANDLORD"**

Signed, Sealed and Delivered
in the presence of:

**CNL NET LEASE FUNDING 2003, LLC**, a
Delaware limited liability company

Name: _Pokrosulcz_

By: _____

Name: _John L. Farra_

Title: _Manager_

Name: _William J. Snow II_

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me on this _14_ day of June, 2004, by _John L. Farra_, as _Manager_ of **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, on behalf of the limited liability company. He is personally known to me and did not take an oath.

_____
Notary Signature

_____
Printed Name
Notary Public, State of _____
Commission Number: _____
My Commission Expires: _____

Wilda Otero
My Commission CC962926
Expires November 14, 2004

**"TENANT"**

Signed, sealed and Delivered
in the presence of:

                           **ACG 1421, L.P.**, a Texas limited partnership

                           By:  **ACG TEXAS GP CORP.**, a Texas
                                   corporation, its General Partner

Name: C. Wilson House

                           By:

Name: Paul L Hudson

                           Martin P. Adler
                           President and Chief Executive Officer


STATE OF TEXAS
COUNTY OF _____Collin_____

      Before me *Shannon L. Tedford* _____, on this day personally appeared **Martin P. Adler**, known to me (or proved to me on the oath of _____), to be the person whose name is subscribed to the foregoing instrument, and known to me to be the President and Chief Executive Officer of **ACG TEXAS GP CORP.**, a Texas corporation as General Partner of **ACG 1421, L.P.**, a Texas limited partnership, and acknowledged to me that he/she executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation and limited partnership. Given under my hand and seal of office this *29th* day of June 2004.

                                             Notary Public, State of Texas

```
SHANNON L. TEDFORD
NOTARY PUBLIC
MY COMMISSION EXPIRES
SEPTEMBER 17, 2006
```

                                        Printed Name: *Shannon L. Tedford*
                                        Notary Commission No._____
                                        My Commission Expires: *09.17.06*


<u>EXHIBITS ATTACHED</u>
Exhibit "A" - Legal Description
Exhibit "B" - Subordination, Non-Disturbance and Attornment Agreement
Exhibit "C" - Estoppel Certificate
Exhibit "D" - Subordination of Landlord's Lien
Exhibit "E" - Landlord's Consent

## EXHIBIT "A"

### (Legal Description)

707 East Cesar Chavez Street, Austin, Travis County, Texas 78701-4100

Being Lots 7, 8, 9 and 10, Block 190, ORIGINAL CITY OF AUSTIN in TRAVIS County, Texas, according to the map or plat thereof on file in the General Land Office in the State of Texas.

IHOP #1421
Austin, Travis County, Texas

## EXHIBIT "B"

## SUBORDINATION, NON-DISTURBANCE
## AND ATTORNMENT AGREEMENT

**THIS AGREEMENT**, made and entered into as of the _____ day of _____, 200__, by and between _____, a _____, whose address is _____ (hereinafter referred to as the "Lender"), _____, a _____, whose address is _____ (hereinafter referred to as the "Tenant"), and _____, a _____, whose address is _____ (hereinafter referred to as the "Landlord");

## W I T N E S S E T H :

**WHEREAS**, Lender is the holder of a mortgage loan (hereinafter referred to as the "Loan") to Landlord, which Loan is secured by, inter alia, a [[ Commercial Mortgage/Deed of Trust ]] and Security Agreement executed by Landlord to and in favor of Lender (hereinafter referred to as the "Mortgage"), encumbering Landlord's property located at _____, in _____ County, _____ (hereinafter referred to as the "Mortgaged Premises"); and

**WHEREAS**, Landlord has leased all or some portion of the Mortgaged Premises (hereinafter referred to as the "Premises") to Tenant by Lease dated _____, 20___, as amended by _____ dated _____, 20___ (hereinafter collectively referred to as the "Lease"); and

**WHEREAS**, Lender, in connection with the Loan, requires that the Lease and all of the rights of Tenant thereunder be subordinated to the Mortgage and all of the rights of Lender thereunder; and

**WHEREAS**, Tenant desires to receive certain assurances that its possession of the Premises will not be disturbed in such event, and Lender is willing to grant certain assurances upon the terms and conditions hereinafter set forth;

**NOW, THEREFORE**, the parties hereto, in consideration of the mutual covenants herein contained and intending to be legally bound, hereby agree as follows:

1.      The Lease and all of the rights of Tenant thereunder shall be and are hereby declared to be and at all times hereafter shall be and remain subject and subordinate in all respects to the Mortgage and all of the rights of Lender thereunder. Notwithstanding such subordination, Lender hereby agrees that the Lease shall not terminate in the event of a foreclosure of the Mortgage. Tenant agrees to attorn to and to recognize Lender (as mortgagee in possession or otherwise), or the purchaser at such foreclosure sale, as Tenant's landlord for the balance of the term of the Lease, in accordance with the terms and provisions thereof, but

subject, nevertheless, to the provisions of this Agreement, which Agreement shall be controlling in the event of any conflict.

2.      Lender hereby agrees with Tenant that, so long as Tenant and/or its permitted successors and assigns comply with all of the terms, provisions, agreements, covenants and obligations set forth in the Lease subject to any notice, grace or cure periods, Tenant's possession of the Premises under the Lease shall not be disturbed or interfered with by Lender.

3.      Tenant hereby agrees that Lender, or any purchaser at a foreclosure sale, shall not be (a) liable for any act or omission of Landlord under the Lease, (b) subject to any offsets or defenses which Tenant may have at any time hereafter against Landlord, (c) bound by any rent which Tenant may have paid to Landlord for more than the current month, and (d) bound by any amendment or modification of the Lease made without Lender's prior written consent.

4.      Tenant hereby agrees that any entity or person which at any time hereafter becomes the landlord under the Lease, including, without limitation, Lender or the purchaser at a foreclosure sale, shall be liable only for the performance of the obligations of the landlord under the Lease which arise and accrue during the period of such entity's or person's ownership of the Premises.

5.      Tenant hereby agrees that, thirty (30) days before exercising any of its rights and remedies under the Lease in the event of any default by Landlord thereunder, it shall send written notice to Lender at the address set forth above, by certified mail, return receipt requested, of the occurrence of any default by Landlord in the terms and provisions of the Lease and describe with reasonable specificity the events constituting such default. Tenant further agrees that with respect to any default of Landlord which would entitle Tenant to cancel the Lease or offset or abate the rent payable thereunder, any provision of the Lease to the contrary notwithstanding, no such cancellation or offset or abatement of rent shall be effective unless Lender shall have received notice in the form and manner required by the provisions of this paragraph, and shall have failed within thirty (30) days of the date of receipt of such notice to cure or cause to be cured, or if such default cannot be cured within such thirty (30) day period, shall have failed to commence and diligently prosecute the cure of, such default.

6.      This Agreement shall supersede, as between the parties hereto, all of the terms and provisions of the Lease which are inconsistent herewith.

7.      This Agreement may not be modified orally or in any other  manner than by an agreement in writing signed by the parties hereto, or their respective successors in interest. This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their successors and assigns. For the purposes hereof, "successors and assigns" of Tenant shall include the following parties: (a) any holder of a security interest in Tenant's leasehold estate or Tenant's personal property or trade fixtures located on the Mortgaged Premises, including but not limited to Bank of America, N.A. which has of even date herewith made a loan to Tenant secured by such collateral; and (b) International House of Pancakes, Inc. or its assigns pursuant to its right to assume the Lease.

8.      This Agreement shall be construed in accordance with the laws of the State of Texas.

9.      This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one Agreement.

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**LENDER:**

_____

_____

By:_____

Name:_____

Title:_____


**TENANT:**

_____

_____

By:_____

Name:_____

Title:_____


**LANDLORD:**

_____

_____

By:_____

Name:_____

Title:_____

# EXHIBIT "C"

## ESTOPPEL CERTIFICATE

The undersigned with respect to the premises at _____ as more particularly described in Exhibit "A" attached hereto and made a part hereof by this reference (the "Premises"), certifies and affirms the following to _____ [["Tenant")]] [["Landlord")]] and to _____ [["Mortgagee")]] [["Purchaser")]]:

1.  Tenant leases the Premises from Landlord under that certain Lease dated _____, attached hereto and made a part hereof by this reference (the "Lease").

2.  Rental under this Lease has been paid through _____, 20__. No rent has been paid more than thirty (30) days in advance, except as described in the preceding sentence. The monthly base rental amount is $_____.

3.  The term of the Lease is _____ through _____, a period of _____ years. Tenant has _____ options to extend the Lease for _____ years each, for a total term including all options through _____ as set forth in the Lease.

4.  Landlord holds $_____ as security deposit pursuant to the Lease and any amendments thereof.

5.  Tenant, to the best of the undersigned's knowledge and belief without any independent investigation, is not in default under any term of the Lease.

6.  Landlord, to the best of the undersigned's knowledge and belief without any independent investigation, is not in default under any terms of the Lease.

7.  The Lease is in full force and effect and there have been no modifications or amendments unless attached hereto.

8.  Knowledge means the actual knowledge of _____ without independent investigation.

This Certificate may be relied upon by [[Purchaser]] [[Mortgagee]], who intends to [[purchase the Premises] [and the Lease from Landlord], and by any mortgage lender of such person]] [[provide secured [lease] [loan] financing to [Landlord] [Tenant]].

Dated this _____ day of _____, 200____
[[Landlord]] [[Tenant]]: _____
By: _____
Title: _____

# EXHIBIT "D"

## SUBORDINATION OF LANDLORD'S LIEN

Lender:

[[Name and Address of Lender]]

Premises:

[[Concept/Site #/Address]], the legal description of which is attached to this Subordination of Landlord's Lien as Exhibit "A"

Landlord:

[[Name and Address of Landlord]]

Tenant:

[[Name and Address of Tenant]]

     1.    <u>Subordination of Landlord's Lien as to Personal Property</u>:  Landlord hereby subordinates, as to the lien related to Lender's security interest only, any lien, right or claim it may now or hereafter possess relative to certain goods and equipment (hereinafter referred to as "Collateral", a description of which is attached as Exhibit "B"), now or to be installed on or deposited at the above described Premises, provided that:

     (a)    The Collateral shall remain personal property and not be deemed a fixture whether or not it becomes attached to any real property.

     (b)    The Collateral may be recovered or repossessed at any time by Lender and Landlord will not interfere therewith, regardless of the manner or degree of the attachment of the Collateral to the Premises, provided Lender provides Landlord with twenty-four (24) hours prior written notice of its intent to remove the Collateral. In the event that such removal creates any type of holes or openings in the roof or exterior of the building, Lender will immediately repair, close, secure, and seal such holes or openings in such a manner that (a) leaves the building in a secure condition and (b) prevents the intrusion of weather, vermin or other damaging elements into the building and Lender shall be liable for any and all damage caused to the building by its failure to repair, close, secure, and seal any such holes or openings. Further, Lender shall be responsible for restoring and repairing to Landlord's reasonable satisfaction any and all damages to the Premises caused by the removal, recovery or repossession of the Collateral, all of which shall be completed within seven (7) days from such removal, recovery or repossession. If such Collateral is not removed within thirty (30) days after Landlord serves Lender written notice of termination of the Lease, then such Collateral shall be deemed abandoned.

(c)    Lender may enter upon the Premises at any reasonable time in order to inspect the Collateral; provided, however, Lender shall make arrangements with Tenant prior to such inspection.  If the Premises have been vacated, such arrangements shall be coordinated with Landlord.

2.    Notice to Landlord:  In the event Tenant shall fail, refuse or neglect to perform, observe or comply with any term, condition, covenant, agreement or obligation contained in any agreement entered into by and between Lender and Tenant in conjunction with the Collateral in favor of Lender as to Tenant's interest in the Collateral, Lender shall provide Landlord with written notice of the same and Landlord may, at its option and sole discretion, enter upon the Premises, and/or do whatever may be deemed necessary by Landlord to cure such failure by Tenant.  Further, Lender shall provide Landlord with written notice of Tenant's satisfaction of its obligations to Lender related to the Collateral, within thirty (30) days of such satisfaction.

3.    Notice:  All notices and other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a nationally recognized overnight courier or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Landlord: _____
_____
_____
_____

with copy to: _____
_____
_____

If to Tenant: _____
_____
_____

with copy to: _____
_____
_____

If to Lender: _____
_____
_____
_____

with a copy to: _____
_____
_____
_____

Any party may change its address for notices by written notice in like manner as provided in this paragraph and such change of address shall be effective seven (7) days after the date notice of such change of address is given. Notice for purposes of this Subordination of Landlord's Lien shall be deemed given by the party who is giving such notice when it shall have been received or refused from the U.S. certified or registered mail, or from a nationally recognized overnight courier, with sufficient postage prepaid.

With respect to any such notice, the parties shall use their best efforts to simultaneously deliver a copy of such notice by facsimile at the appropriate facsimile number above to the other party or parties; provided however, that certified mail or overnight courier delivery shall nevertheless be required to effect proper notice hereunder.

4.      This Subordination of Landlord's Lien shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors, and assigns.

5.      This Subordination of Landlord's Lien is made and entered into under, and shall be construed according to, the laws of the State of Texas, and the exclusive jurisdiction for any action arising hereunder shall be the State in which the Premises are located.

6.      This Subordination of Landlord's Lien may not be amended except by a written instrument signed by the parties hereto.

7.      This Subordination of Landlord's Lien shall not impair, modify or otherwise affect the terms of the Lease, including, without limitation, Tenant's obligations to pay rent and any other sums payable by Tenant pursuant to the terms of the Lease.

**(Signatures on Following Pages)**

**"LANDLORD"**

Signed, Sealed and Delivered
in the Presence of:

_____

_____    By:_____
Name:_____    Name:_____
                                    As Its:_____

_____
Name:_____


(INSERT APPROPRIATE NOTARY BLOCK)

**"LENDER"**

Signed, Sealed and Delivered
in the Presence of:

_____

_____        By:_____
Name:_____        Name:_____
                                                     As Its:_____

_____
Name:_____

**"TENANT"**

Signed, Sealed and Delivered
in the Presence of:

_____

_____          By:_____
Name:_____          Name:_____
                                          As Its:_____


_____
Name:_____


(INSERT APPROPRIATE NOTARY BLOCK)

0914332/106945/749713; IHOP #1421
Austin, Travis County, Texas

## EXHIBIT "A"

### Legal Description of the Premises

(attach copy of legal description)

## EXHIBIT "B"

The Collateral means the following owned by Tenant, or in which Tenant has an interest (but only to the extent of such interest): all furniture, trade fixtures, building lettering, signs, sign posts, sign standards, food and customer service equipment (whether unattached or attached to the improvements by bolts and screws and/or by utility connections including, without limitation, walk-in refrigerators and freezers, remote refrigeration systems and exhaust systems and hoods and water heaters), equipment and other items of personal property now owned, acquired, held or used by Tenant in its operation of an IHOP restaurant and all additions to, substitutions for and replacements of the foregoing, but does not mean and specifically excludes (except as specifically set forth above) all lighting, electrical, heating, air cooling and air conditioning apparatus, gas, electric and power equipment, pipes, pumps, tanks, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, and communications apparatus, drapes, attached floor coverings, including carpeting, storm doors and windows, toilets and sinks, ducts and compressors, and related machinery and equipment including but not limited to compressors, regardless of whether any of the foregoing are affixed or attached to the Premises.

## EXHIBIT "E"

## <u>LANDLORD'S CONSENT #</u> _____

This Landlord's Consent (this "<u>Agreement</u>") is dated to be effective as of _____ _____, 2004, by and between _____ ("<u>Landlord</u>"), _____ ("<u>Tenant</u>"), and **BANK OF AMERICA, N.A.**, a national banking association ("<u>Lender</u>"), and each intending to be legally bound, agrees as follows:

1.      Landlord is the sole owner of certain premises located at _____ ("<u>Premises</u>"), which Landlord has leased to Tenant pursuant to a certain that certain Lease Agreement dated of even date herewith by and between _____ and _____ (the "<u>Lease</u>"). The Lease is in full force and effect and there are no uncured events of default under the Lease.

2.      Lender has entered into certain credit facilities on even date herewith with Tenant and as may hereafter be amended, restated, renewed or modified from time to time (collectively, the "<u>Loan</u>"). The Loan, among other things, evidences certain indebtedness owed by Tenant to Lender and provides for security therefor.

3.      The security for the Loan consists of, among other collateral, an assignment to Lender of Tenant's interest in the Lease (the "Leasehold Interest") and certain property of Tenant (the "Personalty") pursuant to that certain Collateral Assignment of Lessee's Interest in Leases ("Collateral Assignment") dated of even date herewith, as more fully described in the documents evidencing, securing and otherwise executed in connection with the Loan, all or a portion of which property is or will be located on or affixed to the Premises. For purposes of this Agreement, the collateral is specifically set forth on <u>Exhibit A</u> attached hereto and incorporated herein by reference, and includes, but is not limited to, all items defined as "Tenant's Property" under the Lease (the Leasehold Interest and the Personalty, are hereinafter collectively referred to as the "<u>Collateral</u>"). Landlord acknowledges that the Collateral Assignment will encumber all of Tenant's Leasehold Interest, including all of Tenant's interest in the Premises. Landlord hereby consents to the execution and delivery by Tenant, and the recordation of, the Collateral Assignment. Landlord hereby consents to the security interest in the Personalty.

Further, Landlord acknowledges that Lender has entered that certain Global IHOP Agreement dated of even date herewith with International House of Pancakes, Inc. (the "Franchisor"), which sets forth the rights of Lender and Franchisor should Franchisor exercise its rights under the certain the Addendum to the Lease dated of even date herewith between Landlord and Tenant. Should Franchisor assume the Lease pursuant to the Addendum to the Lease, Lender's rights under this Landlord's Consent shall be subject to the terms and provisions of the Global IHOP Agreement. Further, Landlord acknowledges that Lender has the right, as provided for in the Global IHOP Agreement: (a) enter into a management arrangement with Franchisor, or (b) assign its rights hereunder to Franchisor. A copy of the IHOP Global Agreement has been provided by Lender to Landlord.

4.      Landlord hereby subordinates, as to the lien related to Lender's security interest only, any rights, liens, and security interests which Landlord may now or hereafter claim to have in and to the Personalty (including any statutory lien in favor of Landlord and any consensual security interest granted to Landlord under the Lease).

5.      Landlord agrees that the Personalty shall remain personal property and, irrespective of the manner of attachment to the Premises, shall not become a fixture or a part of the realty and may be removed by Lender as provided below.  Lender agrees to send to Landlord notices of foreclosure respecting the Personalty at the same times and in the same manner as such notices are given to Tenant.

6.      In addition to the provisions set forth in the Lease relating to "Tenant's Property" as defined thereunder, Landlord shall:

        (i)     not interfere with any enforcement by Lender of Lender's rights and remedies with respect to any Personalty that is located on the Premises;

        (ii)    not interfere with Lender's access to the Premises in order to exercise Lender's rights and remedies; and

        (iii)   not interfere with Lender's removal of the Personalty from the Premises, and from any other premises at which the Personalty may be found.

7.      Should Landlord intend to terminate the Lease or otherwise take any action which would, if successful, terminate or otherwise impair the rights of Tenant or Lender in the Personalty or the Premises, Landlord shall give not less than thirty (30) days written notice of such intended action to Lender.

8.      This Agreement is being executed solely for the benefit of Lender and its successors and assigns and shall be rendered null and void automatically upon the earliest to occur of (a) the expiration, termination or release of the security interest granted to Lender by Tenant in the Personalty, (b) the twentieth (20th) day after a termination of the Lease or of Tenant's right to possess the Premises by Landlord prior to the scheduled expiration of the term of the Lease, following Tenant's default under the Lease and notice to Lender as aforesaid, or otherwise, or (c) the expiration of the term of the Lease.  If any or all of the Personalty remains on or in the Premises upon the earlier to occur of the twentieth (20th) day following a termination of Tenant's right to possess the Premises as described in clause (b) of this paragraph 8 or the expiration of the term of the Lease, then Lender shall be deemed to have transferred its right, title and interest in and to the Collateral to Landlord, and Landlord may thereafter dispose of the Personalty as Landlord may see fit.  Nothing set forth herein shall be construed to require Lender to remove the Personalty from the Premises or to take any other action.

9.      Lender shall give Landlord at least forty-eight (48) hours prior written notice of Lender's desire to exercise any of its rights with respect to the Personalty, including but not limited to, Lender's desire to enter the Premises and remove the Personalty.  Tenant agrees that Landlord shall have no obligation to verify Lender's rights with respect to the Personalty at any time.

10.     Lender's right to enter the Premises for the purpose of removing Personalty therefrom is subject to (i) Lender's providing Landlord with the notice required pursuant to Section 9 hereof, (ii) the requirement that any such entry and removal shall be during normal business hours or at a time otherwise reasonably acceptable to Landlord, shall be at Lender's risk and expense, and shall be accomplished within the time periods set forth below, and (iii) Lender's using due care in removing the Personalty and not causing damage to the Premises as a result thereof.  In the event that such removal creates any type of holes or openings in the roof or exterior of the building, Lender will immediately repair, close, secure, and seal such holes or openings in such a manner that (a) leaves the building in a secure condition and (b) prevents the intrusion of weather, vermin or other damaging elements into the building and Lender shall be liable for any and all damage caused to the building by its failure to repair, close, secure, and seal any such holes or openings.  Further, Lender shall be responsible for restoring and repairing to Landlord's reasonable satisfaction any and all damages to the Premises caused by the removal, recovery or repossession of the Collateral.  If such repairs are not commenced within five (5) days, or completed within fifteen (15) days, after such removal, recovery or possession, then Landlord, at its option, may cause such repairs to be performed at the expense of Lender.  Payment for any such repairs undertaken by Landlord shall be due within ten (10) days of written notice to Lender of the amount due, with an itemized invoice.  Landlord reserves the right to accompany Lender during any removal of the Personalty from the Premises.

11.     Lender shall indemnify, defend, and hold harmless Landlord from and against any claim, loss, cost or damage based on damage to property and injury to persons resulting or claimed to have resulted from any entry by Lender, or any other exercise of Lender's rights with respect to the Personalty.

12.     In addition to the rights of Lender relating to the Personalty, Landlord agrees that, in the event of a termination of the Lease prior to the expiration of the term thereof, Landlord shall serve upon Lender written notice of such termination together with a statement of any and all sums which would be due under the Lease as of the date of notice (but for the termination of the Lease) (the "Cure Amount") and a description of any and all events of default under the Lease.  Within twenty (20) days from its receipt of the notice of termination, Lender (or its designee) shall have the option, but not the obligation, to obtain a new lease for the Premises by providing Landlord with written notice of its desire to exercise such option.  Upon Landlord's receipt of such notice, Landlord shall enter into a new lease for the Premises with Lender (or its designee) which shall:

(a)     Commence as of the date of the termination of the Lease, and shall be effective for the remainder of the term of the Lease, and contain all of the terms and conditions that were set forth in the Lease including, but not limited to, those pertaining to rental payments and options to renew the term of the Lease;  and

(b)     Require the tenant under the new lease to cure any events of default under the terminated lease which are capable of being cured and not waived by Lessor.

(c)     Landlord hereby acknowledges that should Lender or International House of Pancakes, Inc. succeed to the interest to Tenant under the Lease, an event of

default by Tenant under Sections 13 (iv) and (v) shall not apply to Lender or Franchisor.

Notwithstanding the foregoing, Landlord shall not be obligated to enter into a new lease unless the Cure Amount, plus all fees and expenses, including reasonable counsel fees incurred by Landlord in connection with Tenant's Defaults, termination of the Lease, recovery of possession, negotiations with Lender and preparation and execution of the new lease, shall be reimbursed to Landlord.

13.     Landlord agrees that the name of the Lender may be added to any and all insurance policies required to be carried by Tenant.  Further, Landlord acknowledges that Lender has received evidence of all insurance required under Section 4 of the Lease from Tenant.

14.     If there is any litigation relating to or arising out of this Agreement, the party or parties determined to be prevailing shall be entitled to recover reasonable legal fees and costs in connection with such action from the non-prevailing party or parties.

15.     All notices and other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a nationally recognized overnight courier or mailed by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

If to Tenant:

                                               _____
933 N. Central Expressway
Plano, Texas 75075
Attention:  Martin P. Adler
Telephone No. (469) 429-2703
Facsimile No. (972) 509-7075

with a copy to:

ARGONNE CAPITAL GROUP, LLC
Attn:  Will House
One Buckhead Plaza, Suite 1560
3060 Peachtree Road, NW
Atlanta, Georgia 30305
Fax:  (404) 364-2985

If to Lender:

BANK OF AMERICA, N.A.
Restaurant Finance Group
GA1-006-13-20
600 Peachtree Street, NE
Atlanta, Georgia 30308-2214
Attention: Bobby R. Oliver, Jr.
Telephone No. (404) 607- 4673
Facsimile No. (404) 607-4075

If to Landlord:

_____

450 South Orange Avenue
Orlando, FL 32801-3336
Attention: Property Management
Telephone No: (407)540-2207
Fax: (407) 422-2933

with copy to:

DALE A. BURKET, ESQUIRE
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, Florida 32802
Telephone No. (407) 418-6363
Fax: (407) 843-4444

Any party may change its address for notices by written notice in like manner as provided in this paragraph and such change of address shall be effective seven (7) days after the date notice of such change of address is given. Notice for purposes of this Agreement shall be deemed given by the party who is giving such notice when it shall have been received or refused from the U.S. certified or registered mail, or from a nationally recognized overnight courier, with sufficient postage prepaid.

With respect to any such notice, each party shall use its best efforts to, simultaneously deliver a copy of such notice by facsimile at the appropriate facsimile number above to the other party; provided however, that certified mail or overnight courier delivery shall nevertheless be required to effect proper notice hereunder.

16.     In the event that Lender becomes liable under the Lease, or enters into a new lease with Landlord pursuant to the terms of this Agreement, Lender shall have the absolute right to at any time thereafter assign the Lease or new Lease to INTERNATIONAL HOUSE OF PANCAKES, INC., a Delaware corporation.

17.     Nothing herein shall be deemed to affect the obligations or limit the liability of Tenant or any guarantor under the Lease.

18.     This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.

19.     This Agreement shall inure to the benefit of Lender and Tenant, and their respective successors and assigns, shall be binding upon Landlord, its heirs, assigns, representatives and successors. For purposes hereof, the Landlord's successors and assigns include, without limitation, any and all persons and entities (other than Lender or its successors or assigns) who at any time acquire an interest in the Premises. This Agreement shall not be modified, terminated or revoked except by written instrument executed by each of the parties hereto.

20.     The parties agree that this Agreement shall not be recorded.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first above written.

LANDLORD:

_____

By:_____
Name:_____
Title: _____

LENDER:

BANK OF AMERICA, N.A.

By:_____
    BOBBY R. OLIVER, JR.
    VICE PRESIDENT

TENANT:

_____

BY: _____

     By:_____
       Martin P. Adler
       President and Chief Executive Officer

         **(CORPORATE SEAL)**

## EXHIBIT A

### LENDER'S COLLATERAL

"Collateral" shall mean:

I.    **Leasehold Interest:**   Leasehold interest in the Premises pursuant to a Collateral Assignment of Lessee's Interest in Lease given by Tenant to Lender.

II.    **Personalty:**

**"Tenant's Property" as defined in the Lease.**

**Accounts:**    Any and all accounts and other rights of Tenant to the payment for goods sold or leased or for services rendered whether or not earned by performance, contract rights, book debts, checks, notes, drafts, instruments, chattel paper, acceptances, and any and all amounts due to Tenant from a factor or other forms of obligations and receivables, now existing or hereafter arising out of the business of Tenant.

**Inventory:**    Blanket Lien:  Any and all of Tenant's goods held as inventory.

**Equipment:**    Blanket Lien:  Any and all of Tenant's goods held as equipment.

**Fixtures:**    Blanket Lien:  Any and all of Tenant's goods held as fixtures.

**Instruments and/or Investment Documents:**  Blanket Lien:  Any and all of Tenant's instruments, documents, and other  writings of any type.

**General Intangibles:**  Blanket Lien:  Any and all of Tenant's general intangible property.

**Substitutions, Proceeds and Related Items**.  Any and all substitutes and replacements for, accessions, attachments and other additions to, tools, parts and equipment now or hereafter added to or used in connection with, and all cash or non-cash proceeds and products of, the Collateral (including, without limitation, all income, benefits and property receivable, received or distributed which results from any of the Collateral, such as dividends payable or distributable in cash, property or stock; insurance distributions of any kind related to the Collateral, including, without limitation, returned premiums, interest, premium and principal payments; redemption proceeds and subscription rights; and shares or other proceeds of conversions or splits of any securities in the Collateral); any and all choses in action and causes of action of Tenant, whether now existing or hereafter arising,  relating directly or indirectly to the Collateral (whether arising in contract, tort or otherwise and whether or not currently in litigation); all certificates of title, manufacturer's statements of origin, other documents, accounts and chattel paper, whether now existing or hereafter arising directly or indirectly from or related to the Collateral; all warranties, wrapping, packaging, advertising and shipping materials used or to be used in connection with or related to the Collateral; all of Tenant's books, records, data, plans, manuals, computer software, computer tapes, computer systems, computer disks, computer programs, source codes and object

codes containing any information, pertaining directly or indirectly to the Collateral and all rights of Tenant to retrieve data and other information pertaining directly or indirectly to the Collateral from third parties, whether now existing or hereafter arising; and all returned, refused, stopped in transit, or repossessed Collateral, any of which, if received by Tenant, upon request shall be delivered immediately to Lender.

**Balances and Other Property.**  The balance of every deposit account of Tenant maintained with Lender and any other claim of Tenant against Lender, now or hereafter existing, liquidated or unliquidated, and all money, instruments, securities, documents, chattel paper, credits, claims, demands, income, and any other property, rights and interests of Tenant which at any time shall come into the possession or custody or under the control of Lender or any of its agents or affiliates for any purpose, and the proceeds of any thereof.  Lender shall be deemed to have possession of any of the Collateral in transit to or set apart for it or any of its agents or affiliates.

IHOP 1421/Austin, Travis County, Texas

**RENT ADDENDUM**
to
**LEASE AGREEMENT**

THIS RENT ADDENDUM dated July 22, 2004, by and between **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, as "Landlord", and **ACG 1421, L.P.**, a Texas limited partnership, as "Tenant", for IHOP 1421, Austin, Travis County, Texas, is attached to and made a part of that certain Lease Agreement by and between Landlord and Tenant of even date herewith (the "Lease"). Notwithstanding any other provision to the contrary which may be contained in said Lease, it is specifically agreed by and between Landlord and Tenant as follows:

1. **Definitions.** Capitalized terms used in this Rent Addendum shall, unless otherwise defined, have the meaning ascribed to them in the Lease.

2. **Annual Rent.**

(a) Beginning on the Effective Date, Tenant covenants and agrees to pay to Landlord annual rent ("Annual Rent") according to the following schedule:

| Lease Year | Annual Rent | Monthly Installment |
|------------|-------------|---------------------|
| 1 | $182,060.24 | $15,171.69 |
| 2 | $190,126.20 | $15,843.85 |
| 3 | $198,192.16 | $16,516.01 |
| 4 | $206,258.12 | $17,188.18 |
| 5 | $214,324.08 | $17,860.34 |

All payments of Annual Rent shall be paid in equal monthly installments paid monthly in advance, on the first (lst) business day of each month.

(b) Increases in Annual Rent. Commencing at the end of the fifth (5th) Lease Year after the Effective Date, and on each anniversary of such date thereafter during the term of this Lease (and any extension thereof), Annual Rent shall be increased by an amount equal to the previous year's Annual Rent multiplied by one and one quarter percent (1.25%).

(c) Partial Months. If the Effective Date is on a day other than the first day of a calendar month, then Rent for the partial rental month shall be prorated on a per diem basis and shall be paid by Tenant to Landlord for such month.

(d) Annual Rent Adjustment in the Event of Certain Sales of Premises. Notwithstanding the foregoing, in the event that Landlord shall sell the Premises and assign this Lease to an unrelated third party at any time during the first four (4) Lease Years, the Annual Rent payable from and after the date of such sale and assignment through the end of the fifth

(5th) Lease Year shall be adjusted to the Annual Rent shown in Paragraph 2(a) above for the fifth (5th) Lease Year, effective as of the day of closing of said sale and assignment. To compensate Tenant for such increase and as a condition to such increase, Landlord shall pay to Tenant upon transfer of the Premises and assignment of the Lease a lump sum payment equal to the difference between (i) the total of all Annual Rent payments outlined in Paragraph 2(a) above, which would have otherwise (but for such sale and assignment by Landlord) been due and payable by Tenant hereunder for the period beginning on the day of such closing through the end of the fourth (4th) Lease Year, and (ii) the total of all Annual Rent payments as adjusted pursuant to this paragraph (d) for the period beginning on the day of such closing through the end of the fourth (4th) Lease Year. Landlord shall not be required to adjust Annual Rent as provided in this paragraph in the event of any such sale that closes after the fourth (4th) Lease Year. For purposes of this paragraph, the term "unrelated third party" shall not include any CNL Affiliate or any transferee in connection with the securitization of the Lease by the Landlord.

    3.    **Percentage Rent.**

[INTENTIONALLY DELETED]

    4.    **Sales/Use Tax.** Tenant shall also pay to Landlord any sales and use tax imposed on any Rent payable hereunder from time to time by state law or any other governmental entity, which sums are due monthly as to monthly Rent payments on the due date of the Rent payment under this Lease.

    5.    **Reporting.** Tenant shall, during the term of this Lease and any extensions thereto: (i) keep books and records reflecting its financial condition including, but not limited to, the operation of the Premises in accordance with generally accepted accounting principles consistently applied; (ii) furnish to Landlord within forty-five (45) days after the end of each fiscal quarter of Tenant an unaudited financial statement (including a balance sheet, income and expense statement, statement of cash flows, and debt and lease schedules of Tenant) of Tenant and Guarantor, and a statement of income and expenses of the Premises (including store level sales on a monthly basis); (iii) furnish to Landlord, fiscal year-end audited current signed financial statements of Guarantor (and including as part of it the unaudited financial statements of Tenant) (including an annual balance sheet, a profit/loss statement, statement of cash flows and footnotes) within the earlier of (a) ten (10) days after they are generated for Tenant or Guarantor, as applicable, and (b) one hundred twenty (120) days after the end of each fiscal year for Tenant or Guarantor, as applicable. Landlord shall have the right, from time to time during normal business hours, to examine such books, records and accounts at the offices of Tenant or Guarantor or other entity as is maintaining such books, records and accounts, and to make such copies or extracts thereof as Landlord shall desire. Tenant hereby authorizes Franchisor to release to Landlord any and all inspection reports issued by Franchisor to Tenant relating to the Premises. Further, in the event Landlord seeks to securitize or otherwise transfer the Lease, then (upon Landlord's request), Tenant agrees to cooperate with Landlord in providing such information as would be reasonably required for the transaction, including but not limited to income and expense statements for the Premises. Tenant agrees that any default by Guarantor regarding compliance with such requirements shall, at Landlord's option, be and constitute a Default under this Lease. Landlord shall maintain confidentiality and not disclose such information to third parties except (x) as may be required, in Landlord's reasonable judgment,

for the exercise of Landlord's rights under this Lease, or as may be required by law; (y) for disclosure in confidence to prospective lenders or purchasers; or (z) for purposes of a net lease securitization.

6.    **Intentionally Deleted.**

7.    **Late Charges.**  In the event any installment of Rent is not received by Landlord within ten (10) days after Tenant's receipt of written notice from Landlord that such installment has not been received on or before its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent.  All such late charges due hereunder shall be deemed additional rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency.  In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the expiration of any applicable grace period until Landlord receives such Rent.

8.    **Payments of Rents.**  For so long as CNL NET LEASE FUNDING 2003, LLC or a CNL Affiliate is Landlord under this Lease, all Rent payments shall be made by electronic funds transfer to Landlord to the account and in accordance with the procedures designated by Landlord, or in such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing; provided, however, that Tenant shall not be deemed in default under this Lease for failing to make any Rent payment by electronic funds transfer so long as such Rent payment is actually received by Landlord on or before the date on which such Rent payment is due, in accordance with Paragraph 13(a)(i) of this Lease.

9.    **No Abatement.**  Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction of (a) Rent, charges or other compensation, or (b) Tenant's other obligations under this Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

Initialed for Identification:

_____    _____
By Landlord                        By Tenant

for the exercise of Landlord's rights under this Lease, or as may be required by law; (y) for disclosure in confidence to prospective lenders or purchasers; or (z) for purposes of a net lease securitization.

6.     **Intentionally Deleted.**

7.     **Late Charges.**  In the event any installment of Rent is not received by Landlord within ten (10) days after Tenant's receipt of written notice from Landlord that such installment has not been received on or before its respective due date, there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent.  All such late charges due hereunder shall be deemed additional rent, and are not penalties but rather are charges attributable to administrative and collection costs arising out of such delinquency.  In addition to such late charge, in the event Landlord does not receive Rent when due hereunder, interest at the rate of the maximum rate allowable by law shall be due and payable with respect to such payment from the expiration of any applicable grace period until Landlord receives such Rent.

8.     **Payments of Rents.**  For so long as CNL NET LEASE FUNDING 2003, LLC or a CNL Affiliate is Landlord under this Lease, all Rent payments shall be made by electronic funds transfer to Landlord to the account and in accordance with the procedures designated by Landlord, or in such other manner as Landlord or its successors or assigns, respectively, may from time to time designate in writing; provided, however, that Tenant shall not be deemed in default under this Lease for failing to make any Rent payment by electronic funds transfer so long as such Rent payment is actually received by Landlord on or before the date on which such Rent payment is due, in accordance with Paragraph 13(a)(i) of this Lease.

9.     **No Abatement.**  Unless otherwise stated in the Lease, no abatement, offset, diminution or reduction of (a) Rent, charges or other compensation, or (b) Tenant's other obligations under this Lease shall be allowed to Tenant or any person claiming under Tenant, under any circumstances or for any reason whatsoever.

Initialed for Identification

_____          _____
By Landlord                      By Tenant

IHOP 1421/Austin, Travis County, Texas

## FRANCHISOR
## ADDENDUM TO LEASE

THIS ADDENDUM TO LEASE (the "Addendum") forms a part of that certain Lease Agreement dated July 22, 2004, by and between **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, as "Landlord", and **ACG 1421, L.P.**, a Texas limited partnership, as "Tenant" demising those certain premises located at 707 East Cesar Chavez Street, Austin, Travis County, Texas.

## R E C I T A L S:

WHEREAS, Landlord and Tenant acknowledge that the anticipated use of the Demised Premises is the conduct of an International House of Pancakes® Restaurant thereon, pursuant to the terms of a certain Franchise Agreement (the "Franchise Agreement") to be entered into between International House of Pancakes, Inc., a Delaware corporation ("IHOP"), as Franchisor, and Tenant, as Franchisee, and that by reason of such use certain benefits will inure to Landlord and Tenant; and

WHEREAS, Landlord and Tenant further acknowledge that in the event the Lease or Franchise Agreement, or both, are terminated by reason of the default of Tenant and the business of an International House of Pancakes® Restaurant upon the demised Premises ceases or is otherwise interrupted, certain damages to IHOP and/or its servicemark will result; therefore, IHOP has required, as a condition to the Franchise Agreement, that Landlord and Tenant enter into this Addendum for the purpose of granting certain succession rights to IHOP in the event of a default by Tenant under the Lease or in the event of a termination of the Franchise Agreement, or both, so that the business of an International House of Pancakes® Restaurant, at IHOP's election, may continue to be conducted upon the Demised Premises, as hereinafter provided.

NOW, THEREFORE, in consideration of the above premises and as an inducement to IHOP to enter into the Franchise Agreement with Tenant, the parties hereto hereby agree as follows:

Notwithstanding anything contained in the Lease to the contrary:

A.    In the event Landlord shall declare a default under the Lease due to Tenant's failure to perform any obligation of Tenant under the terms of the Lease, and in the event Tenant shall fail to cure such default within the period provided in the Lease or at law for such cure, before Landlord shall take any action to terminate the Lease or Tenant's right to possession of the Demised Premises, Landlord shall give written notice to IHOP of its intention to so terminate the Lease or Tenant's right to possession of the Demised Premises, whereupon IHOP shall have a period of ten (10) days after its receipt of said notice to notify Landlord in writing that IHOP has elected to cure such default and to succeed to Tenant's rights under the Lease. IHOP's right to so succeed to Tenant's interest under the Lease shall be conditioned upon IHOP tendering to Landlord an amount sufficient to cure any monetary defaults of Tenant then existing under the Lease, within ten (10) days after the date of IHOP's giving of such notice, and curing any

nonmonetary defaults within a reasonable period of time after IHOP shall obtain possession of the Demised Premises. Notwithstanding the foregoing, so long as Bank of America, N.A. ("Tenant's Lender") has any rights to the Collateral described in that certain Landlord's Consent between Landlord and Tenant's Lender of even date herewith ("Landlord's Consent"), IHOP's notice and cure period described in this Addendum shall not commence until the expiration of the rights of Tenant's Lender under paragraph 7 of the Landlord's Consent.

B.     If for any reason the Lease is terminated before IHOP shall have the right to exercise its election to succeed to Tenant's interest under the Lease, as contemplated above, Landlord shall promptly notify IHOP in writing of such termination, and, provided IHOP notifies Landlord in writing of its desire to obtain possession of the Demised Premises within ten (10) days after the date that IHOP shall receive written notice from Landlord that said Lease has been terminated, then Landlord shall enter into a new lease with IHOP for the remainder of the term and any option terms that would have been available under the Lease, but for such termination, within ten (10) days after the date that IHOP shall give such notice, provided IHOP pays Landlord an amount sufficient to cure any monetary defaults of Tenant then existing under the Lease and within a reasonable period of time after IHOP obtains possession of the Demised Premises, cures any nonmonetary defaults under the Lease.

C.     In the event of the termination of the Franchise Agreement as a result of Tenant's breach thereof, IHOP shall also have the right to succeed to the interest of Tenant under the Lease by giving written notice of Landlord of its election to so succeed to Tenant's interest under the Lease, within ten (10) days after the date of the termination of the Franchise Agreement.

D.     In the event IHOP elects to succeed to Tenant's interest under the Lease pursuant to paragraphs A, B or C above, IHOP shall attorn to Landlord and shall assume all of the obligations thereafter to be performed by Tenant under the Lease, including all amendments, addenda and supplements thereto; provided, however, that Paragraphs 12, 13(a)(iii) and Paragraph 17(b) of the Lease shall not apply for so long as IHOP is "Tenant" under the Lease.

E.     In the event IHOP elects to succeed to Tenant's interest under the Lease pursuant to paragraphs A, B or C above, IHOP shall have the unqualified right to sublease the Demised Premises to a franchisee or prospective franchisee of IHOP meeting IHOP's minimum standard qualifications, without the written consent of Landlord, and in so doing Tenant shall have no obligation to pay to Landlord any consideration or portion thereof derived by Tenant in connection therewith.

INITIALS:   Landlord: _____   Tenant: _____

nonmonetary defaults within a reasonable period of time after IHOP shall obtain possession of the Demised Premises. Notwithstanding the foregoing, so long as Bank of America, N.A. ("Tenant's Lender") has any rights to the Collateral described in that certain Landlord's Consent between Landlord and Tenant's Lender of even date herewith ("Landlord's Consent"), IHOP's notice and cure period described in this Addendum shall not commence until the expiration of the rights of Tenant's Lender under paragraph 7 of the Landlord's Consent.

      B.    If for any reason the Lease is terminated before IHOP shall have the right to exercise its election to succeed to Tenant's interest under the Lease, as contemplated above, Landlord shall promptly notify IHOP in writing of such termination, and, provided IHOP notifies Landlord in writing of its desire to obtain possession of the Demised Premises within ten (10) days after the date that IHOP shall receive written notice from Landlord that said Lease has been terminated, then Landlord shall enter into a new lease with IHOP for the remainder of the term and any option terms that would have been available under the Lease, but for such termination, within ten (10) days after the date that IHOP shall give such notice, provided IHOP pays Landlord an amount sufficient to cure any monetary defaults of Tenant then existing under the Lease and within a reasonable period of time after IHOP obtains possession of the Demised Premises, cures any nonmonetary defaults under the Lease.

      C.    In the event of the termination of the Franchise Agreement as a result of Tenant's breach thereof, IHOP shall also have the right to succeed to the interest of Tenant under the Lease by giving written notice of Landlord of its election to so succeed to Tenant's interest under the Lease, within ten (10) days after the date of the termination of the Franchise Agreement.

      D.    In the event IHOP elects to succeed to Tenant's interest under the Lease pursuant to paragraphs A, B or C above, IHOP shall attorn to Landlord and shall assume all of the obligations thereafter to be performed by Tenant under the Lease, including all amendments, addenda and supplements thereto; provided, however, that Paragraphs 12, 13(a)(iii) and Paragraph 17(b) of the Lease shall not apply for so long as IHOP is "Tenant" under the Lease.

      E.    In the event IHOP elects to succeed to Tenant's interest under the Lease pursuant to paragraphs A, B or C above, IHOP shall have the unqualified right to sublease the Demised Premises to a franchisee or prospective franchisee of IHOP meeting IHOP's minimum standard qualifications, without the written consent of Landlord, and in so doing Tenant shall have no obligation to pay to Landlord any consideration or portion thereof derived by Tenant in connection therewith.

INITIALS:    Landlord: _____    Tenant: _____

## EXHIBIT "B"

## SUBORDINATION, NON-DISTURBANCE
## AND ATTORNMENT AGREEMENT

      **THIS AGREEMENT,** made and entered into as of the _____ day of ___April 2017___, ~~200__~~, by and between _____Amplify Credit Union_____, a _state credit union_, whose address is _____3600 W. Parmer, Austin, Texas 78727_____ (hereinafter referred to as the "Lender"), _____ACG 1421, L.P._____, a _Texas limited partnership_ whose address is ~~Martin Buchan, 888 N. _____ Plano, Texas _____~~ (hereinafter referred to as the "Tenant"), and _WC 707 Cesar Chavez, LLC_, a _Delaware limited liability company_ whose address is _401 Congress Ave, 33rd Fl, Austin TX 78701_ (hereinafter referred to as the "Landlord");

*[handwritten margin note: c/o ACG Texas 1778 N Plano Rd suite 100 TX Richardson 75081]*

### W I T N E S S E T H :

      **WHEREAS,** Lender is the holder of a mortgage loan (hereinafter referred to as the "Loan") to Landlord, which Loan is secured by, inter alia, a [[ Commercial Mortgage/Deed of Trust ]] and Security Agreement executed by Landlord to and in favor of Lender (hereinafter referred to as the "Mortgage"), encumbering Landlord's property located at _707 East Cesar Chavez_, in _Travis_ County, _Texas_ (hereinafter referred to as the "Mortgaged Premises"); and

      **WHEREAS,** Landlord has leased all or some portion of the Mortgaged Premises (hereinafter referred to as the "Premises") to Tenant by Lease dated _July 22, 2004_, ~~20__~~, as amended by ___n/a___ dated _____, 20___ (hereinafter collectively referred to as the "Lease"); and

      **WHEREAS,** Lender, in connection with the Loan, requires that the Lease and all of the rights of Tenant thereunder be subordinated to the Mortgage and all of the rights of Lender thereunder; and

      **WHEREAS,** Tenant desires to receive certain assurances that its possession of the Premises will not be disturbed in such event, and Lender is willing to grant certain assurances upon the terms and conditions hereinafter set forth;

      **NOW, THEREFORE,** the parties hereto, in consideration of the mutual covenants herein contained and intending to be legally bound, hereby agree as follows:

      1.     The Lease and all of the rights of Tenant thereunder shall be and are hereby declared to be and at all times hereafter shall be and remain subject and subordinate in all respects to the Mortgage and all of the rights of Lender thereunder. Notwithstanding such subordination, Lender hereby agrees that the Lease shall not terminate in the event of a foreclosure of the Mortgage. Tenant agrees to attorn to and to recognize Lender (as mortgagee in possession or otherwise), or the purchaser at such foreclosure sale, as Tenant's landlord for the balance of the term of the Lease, in accordance with the terms and provisions thereof, but

subject, nevertheless, to the provisions of this Agreement, which Agreement shall be controlling in the event of any conflict.

2.    Lender hereby agrees with Tenant that, so long as Tenant and/or its permitted successors and assigns comply with all of the terms, provisions, agreements, covenants and obligations set forth in the Lease subject to any notice, grace or cure periods, Tenant's possession of the Premises under the Lease shall not be disturbed or interfered with by Lender.

3.    Tenant hereby agrees that Lender, or any purchaser at a foreclosure sale, shall not be (a) liable for any act or omission of Landlord under the Lease, (b) subject to any offsets or defenses which Tenant may have at any time hereafter against Landlord, (c) bound by any rent which Tenant may have paid to Landlord for more than the current month, and (d) bound by any amendment or modification of the Lease made without Lender's prior written consent.

4.    Tenant hereby agrees that any entity or person which at any time hereafter becomes the landlord under the Lease, including, without limitation, Lender or the purchaser at a foreclosure sale, shall be liable only for the performance of the obligations of the landlord under the Lease which arise and accrue during the period of such entity's or person's ownership of the Premises.

5.    Tenant hereby agrees that, thirty (30) days before exercising any of its rights and remedies under the Lease in the event of any default by Landlord thereunder, it shall send written notice to Lender at the address set forth above, by certified mail, return receipt requested, of the occurrence of any default by Landlord in the terms and provisions of the Lease and describe with reasonable specificity the events constituting such default. Tenant further agrees that with respect to any default of Landlord which would entitle Tenant to cancel the Lease or offset or abate the rent payable thereunder, any provision of the Lease to the contrary notwithstanding, no such cancellation or offset or abatement of rent shall be effective unless Lender shall have received notice in the form and manner required by the provisions of this paragraph, and shall have failed within thirty (30) days of the date of receipt of such notice to cure or cause to be cured, or if such default cannot be cured within such thirty (30) day period, shall have failed to commence and diligently prosecute the cure of, such default.

6.    This Agreement shall supersede, as between the parties hereto, all of the terms and provisions of the Lease which are inconsistent herewith.

7.    This Agreement may not be modified orally or in any other manner than by an agreement in writing signed by the parties hereto, or their respective successors in interest. This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their successors and assigns. For the purposes hereof, "successors and assigns" of Tenant shall include the following parties: (a) any holder of a security interest in Tenant's leasehold estate or Tenant's personal property or trade fixtures located on the Mortgaged Premises, including but not limited to Bank of America, N.A. which has of even date herewith made a loan to Tenant secured by such collateral; and (b) International House of Pancakes, Inc. or its assigns pursuant to its right to assume the Lease.

8.    This Agreement shall be construed in accordance with the laws of the State of Texas.

9.    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one Agreement.

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**LENDER:**

AMPLIFY CREDIT UNION

a state credit union

By:_____

Name:_____

Title:_____


**TENANT:**

ACG 1421, L.P.

a Texas limited Partnership

By:  ACG TEXAS GP CORP., a Texas corporation, its General Partner

By:_____

Name:____Inn Allen_____

Title:___Vice President of Real Estate____


**LANDLORD:**

WC 707 Cesar Chavez, LLC

a Delaware limited liability company

By:_____

Name:____Natin Paul_____

Title:_____President_____

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**LENDER:**

AMPLIFY CREDIT UNION

a state credit union

By: _[signature]_

Name: _Shirley Shuffield_

Title: _Commercial Loan Officer_


**TENANT:**

ACG 1421, L.P.

a Texas limited Partnership

By: ACG TEXAS GP CORP., a Texas corporation, its General Partner

By: _[signature]_

Name: _Ian Allen_

Title: _Vice President of Real Estate_


**LANDLORD:**

WC 707 Cesar Chavez, LLC

a Delaware limited liability company

By: _____

Name: _____

Title: _____

## RIDER TO SUBORDINATION, NON-DISTURBANCE
## AND ATTORNMENT AGREEMENT
## BETWEEN AMPLIFY CREDIT UNION, ACG 1421, L.P., AND
## WC 707 CESAR CHAVEZ, LLC

**Rider 1**

", and (e) liable for any deposit that Tenant may have given to Landlord which has not, as such, been transferred to the purchaser at a foreclosure sale. Such purchaser's obligations with respect to any lease shall be limited to the amount of such deposit actually received by the purchaser, and the purchaser shall be entitled to all rights, privileges and benefits of Landlord set forth in the Lease with respect thereto."

**Rider 2**

"Tenant and Landlord (collectively referred to in this subsection as the "Parties" and individually as a "Party") agree to execute and deliver from time to time, upon the request of the other Party or of any holder(s) of any of the indebtedness or other obligations secured by the Loan, a certificate regarding the status of the Lease, consisting of statements, if true (or if not, specifying why not), (a) that the Lease is in full force and effect, (b) the date through which rentals have been paid, (c) the date of the commencement of the term of the Lease, (d) the nature of any amendments or modifications of the Lease, (e) that to the best of the Party's knowledge that is executing certificate no default, or state of facts which with the passage of time or notice (or both) would constitute a default, exists under the Lease, or if a default exists, specifying the nature thereof (f) to the best of the Party's knowledge that is executing the certificate, no setoffs, recoupments, estoppels, claims or counterclaims exist against the other Party, and (g) such other matters as may be reasonably requested."

**Rider 3**

"In the event that Lender notifies Tenant of a default under the Loan, including but not limited to any default under the Note or Security Documents, and demands that Tenant pay its rent and all other sums due under the Lease directly to Lender, Tenant shall honor such demand and pay the full amount of its rent and all other sums due under the Lease directly to Lender, or as otherwise required pursuant to such notice beginning with any payment either due at the time of such notice of default or next due after such notice of default, without inquiry as to whether a default actually exists under the Loan, Security Documents or otherwise in connection with the Note, and notwithstanding any contrary instructions of or demands from Landlord. Such payment will not relieve Landlord of its obligations under the Lease. Landlord hereby consents and agrees to the payment and directs Tenant to pay Lender and not Landlord upon receipt by Tenant of any such notice from Lender. Landlord relieves Tenant of liability by reason of payment by Tenant to Lender as provided herein."

The Parties have caused this Rider to be executed on even date with the Subordination, Non-Disturbance and Attornment Agreement between Amplify Credit Union, ACG 1421, L.P., and WC 707 Cesar Chavez, LLC.

**LENDER:**

AMPLIFY CREDIT UNION
a state credit union

By: _____
Name: _____
Title: _____

**TENANT:**

ACG 1421, L.P.
a Texas limited partnership
By:  ACG TEXAS GP CORP, a Texas Corporation,
its General Partner

By: _____
Name: _____Ian Allen_____
Title: _____Vice President of Real Estate_____

**LANDLORD**

WC 707 CESAR CHAVEZ, LLC
a Delaware limited liability company

By: _____
Name: _____Natin Paul_____
Title: _____President_____

IHOP #1421 SDNA Rider
Austin, Travis County, Texas

     The Parties have caused this Rider to be executed on even date with the Subordination, Non-Disturbance and Attornment Agreement between Amplify Credit Union, ACG 1421, L.P., and WC 707 Cesar Chavez, LLC.

**LENDER:**

AMPLIFY CREDIT UNION
a state credit union

By: _(signature)_
Name: _Shirley P. Sheffield_
Title: _Commercial Loan Officer_

**TENANT:**

ACG 1421, L.P.
a Texas limited partnership
By:  ACG TEXAS GP CORP, a Texas Corporation,
its General Partner

By: _(signature)_
Name: _I_ Allen
Title: _Vice President of Real Estate_

**LANDLORD**

WC 707 CESAR CHAVEZ, LLC
a Delaware limited liability company

By: _____
Name: _____
Title: _____

IHOP #1421 SDNA Rider
Austin, Travis County, Texas

CO  242100143  ATCIAHM1

```
                                                    MEMO        2004146937
                                                    4 PGS
```

R.H

*UPON RECORDATION RETURN TO:*
LANDAMERICA AMERICAN TITLE
550 Bailey Avenue, Suite 550
Ft. Worth, Texas 76107
Attn: Joanna Cloud

LandAmerica Austin Title Company
Approved Attorney Department
1515 Capital of Texas Hwy South
Suite 500
Austin, Texas 78746

*THIS INSTRUMENT WAS PREPARED BY:*
DALE A. BURKET, ESQUIRE
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 N. Eola Drive
Orlando, Florida, 32801
(407) 843-4600

SPACE ABOVE THIS LINE FOR RECORDER'S USE

RETURN BY: MAIL (X)   PICK UP ( )
IHOP 1421/Austin, Travis County, Texas

## MEMORANDUM OF LEASE

**THIS MEMORANDUM OF LEASE** is made as of July 22, 2004 ("Effective Date"), by and between **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, with principal office and place of business at 450 South Orange Avenue, Orlando, Florida 32801 ("Landlord"), and **ACG 1421, L.P.**, a Texas limited partnership, with a mailing address of c/o Martin P. Adler, 933 N. Central Expressway, Plano, Texas 75075 ("Tenant").

In consideration of TEN AND NO/100 DOLLARS ($10.00) and other valuable consideration paid by Tenant to Landlord and the mutual covenants contained in that certain Lease Agreement between the parties hereto dated on even date herewith (hereinafter called the "Lease"), Landlord has leased and does hereby lease to Tenant, and Tenant has leased and does hereby lease from Landlord, upon the terms and conditions set forth in said Lease, the real property more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Premises").

The term of the Lease is twenty (20) years commencing on the Effective Date and ending on June 30, 2024. Said Lease provides for options to renew for four (4) five (5) year terms. Tenant shall not allow any mechanic's lien or similar type of lien to be filed against the Premises.

**[Signatures on Next Page]**

0914332/106945/749713; IHOP #1421
Austin, Travis County, Texas

IN WITNESS WHEREOF, Landlord and Tenant have executed and sealed this Memorandum of Lease to be effective as of the date first above written.

**"LANDLORD"**

Signed, Sealed and Delivered
in the presence of:

**CNL NET LEASE FUNDING 2003, LLC,** a
Delaware limited liability company

Name: _Wilda Otero_

By: _____
Name: _____ John L. Farren _____
Title: _____ Manager _____

Name: _R. J. Okolowicz_

STATE OF FLORIDA
COUNTY OF ORANGE

Before me _____ William T. Snow II _____, on this day personally appeared _____ John L. Farren _____, known to me (or ~~proved to me on the oath of~~ _____ Manager _____) to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _____ manager _____ of CNL NET LEASE FUNDING 2003, LLC, a Delaware limited liability company, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said limited liability company. Given under my hand and seal of office this _14th_ day of June 2004.

(NOTARY SEAL)

Notary Public, State of Florida

Printed Name: _____
Notary Commission No. _____
My Commission Expires: _____

William T. Snow, II
MY COMMISSION # DD111733 EXPIRES
April 25, 2006
BONDED THRU TROY FAIN INSURANCE, INC.

## "TENANT"

Signed, sealed and Delivered
in the presence of:

ACG 1421, L.P., a Texas limited partnership

By: **ACG TEXAS GP CORP.**, a Texas
corporation, its General Partner

Name: C. Wilson House

By: _____

Name: Paul L Hudson

Martin P. Adler
President and Chief Executive Officer

STATE OF TEXAS
COUNTY OF _____ Collin

Before me __Shannon L. Tedford__, on this day personally appeared **Martin P. Adler**, known to me ~~(or proved to me on the oath of~~ ) to be the person whose name is subscribed to the foregoing instrument, and known to me to be the President and Chief Executive Officer of **ACG TEXAS GP CORP.**, a Texas corporation as General Partner of **ACG 1421, L.P.**, a Texas limited partnership, and acknowledged to me that he/she executed said instrument for the purposes and consideration therein expressed, and as the act of said corporation and limited partnership. Given under my hand and seal of office this 23th day of June 2004.

SHANNON L. TEDFORD
NOTARY PUBLIC
MY COMMISSION EXPIRES
SEPTEMBER 17, 2006

Notary Public, State of Texas
Printed Name: __Shannon L. Tedford__
Notary Commission No. _____
My Commission Expires: 09.17.06

EXHIBIT "A"

(Legal Description)

707 East Cesar Chavez Street, Austin, Travis County, Texas 78701-4100

Being Lots 7, 8, 9 and 10, Block 190, ORIGINAL CITY OF AUSTIN in TRAVIS County, Texas, according to the map or plat thereof on file in the General Land Office in the State of Texas.

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

2004 Aug 02 01:05 PM    2004146937
EVANSK $20.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

IHOP #1421
Austin, Travis County, Texas

Return To:
LandAmerica Lawyers Title
2511 N. Loop 1604 W., #101
San Antonio, Texas 78258
GF # 12110203 B
ATC-02-DT /2425000599

RETURN TO AFTER RECORDING:

LandAmerica Commercial Services
450 S. Orange Avenue
Suite 170
Orlando, FL 32801
Attn: Christi Pawlak
LCS No. 04-001682

PREPARED BY:

Dale A. Burket, Esquire
Lowndes, Drosdick, Doster,
Kantor & Reed, P.A.
215 North Eola Drive
P. O. Box 2809
Orlando, Florida 32802

| | |
|---|---|
| | TRF   2005031206 |
| | 5 PGS |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT AND ASSUMPTION OF LEASE AND
## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE AND UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE ("Assignment") is effective as of this 18th day of February, 2005, between **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company ("Assignor"), and **RICHARD J. ROSENTHAL** ("Assignee"), under the following circumstances:

A.     Assignor is the Landlord with respect to that certain Lease Agreement between Assignor and ACG 1421, L.P., a Texas limited partnership, dated July 22, 2004 (collectively with all addenda thereto, the "Lease"), as evidenced by Memorandum of Lease dated July 22, 2004, filed of record August 2, 2004, as Document No. 2004146937 in the Official Public Records of Travis County, Texas, whereby Assignor leased to ACG 1421, L.P., that certain property known as IHOP, Site #1421, Austin, Travis County, Texas, more particularly described on the attached Exhibit "A";

B.     Assignor is the beneficiary of that certain Unconditional Guaranty of Payment and Performance executed by ACG Texas, L.P., d/b/a ACG Texas Restaurant, L.P., a Delaware limited partnersip ("Guarantor") dated July 22, 2004 to and for the benefit of CNL Net Lease Funding 2003, LLC (the "Guaranty"); and

C.     Assignor desires to assign to Assignee all of Assignor's right, title and interest in, to and under the Lease and the Guaranty, and Assignee desires to assume all of Assignor's obligations under the Lease arising after the date of this Assignment.

0914033/110364/807335
IHOP, Site #1421, Austin, Travis County, Texas
LCS No. 04-001682 CC

NOW, THEREFORE, for the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1. Assignor assigns to Assignee all right, title and interest of the Landlord in, to and under the Lease, and Assignee assumes and agrees to perform all of the obligations of Assignor under the Lease first arising from and after the date of this Assignment.

2. Assignor represents and warrants that Assignor holds all such right, title and interest of Landlord under the Lease, has the right to convey it to Assignee, that such right, title and interest are unencumbered by Assignor, that the Lease is in full force and effect, and that, to Assignor's actual knowledge, neither the Landlord nor the Tenant is in material default of any of its obligations under the Lease, nor has any event occurred which, with notice, the passage of time, or both, could constitute a material default under the Lease.

3. Assignor hereby agrees to indemnify Assignee against, and hold Assignee harmless from, any and all cost, liability, loss, damage or expense, including, without limitation, reasonable attorneys' fees, first arising or accruing prior to the date hereof in connection with Assignor's performance or observance of, or the failure to perform or observe, any agreement or obligation of Assignor arising under the Lease. Assignee hereby agrees to indemnify Assignor against, and hold Assignor harmless from, any and all cost, liability, loss, damage or expense, including, without limitation, reasonable attorneys' fees, arising or accruing as of or subsequent to the date hereof in connection with Assignee's performance or observation of, or failure to perform or observe any agreement or obligation arising under the Lease hereby assumed by Assignee.

4. Pursuant to paragraphs 4(e) and 10 of the Guaranty, the Guaranty shall apply and is hereby assigned to and for the benefit of the Assignee.

**[Signatures on Next Page]**

SIGNED as of the date first written above.

**"ASSIGNOR"**

Signed and Delivered
in the presence of:

**CNL NET LEASE FUNDING 2003, LLC, a**
Delaware limited liability company

Name: _P. J. OLOWICZ_

By: _____
Name: _John L. Forren_
Title: _Manager_

Name: _William T. Snow II_

STATE OF FLORIDA
COUNTY OF ORANGE

Before me _Wilda Otero_, on this day personally appeared _John L. Forren_, known to me (or proved to me on the oath of _____) to be the person whose name is subscribed to the foregoing instrument, and known to me to be the _Manager_ of **CNL NET LEASE FUNDING 2003, LLC**, a Delaware limited liability company, and acknowledged to me that he/she executed said instrument for the purposes and consideration therein expressed, and as the act of said limited liability company. Given under my hand and seal of office this _3_ day of _February_, 2005.

(NOTARY SEAL)

_Wilda Otero_
Notary Public, State of Florida

Printed Name:_____
Notary Commission No._____
My Commission Expires:_____

WILDA OTERO
MY COMMISSION # DD 341752
EXPIRES: November 14, 2008
Bonded Thru Notary Public Underwriters

**"ASSIGNEE"**

Signed and Delivered
In the presence of:

Name: _STEVEN M. KRAUS_

RICHARD J. ROSENTHAL

Name: _Sandra Anderson_

STATE OF _CA_
COUNTY OF _Los Angeles_

Before me _Sandra Anderson_ on this day personally appeared _Richard Rosenthal_, ~~known to me (or proved to me on the oath of~~ basis of satisfactory evidence) to be the person whose name is subscribed to the foregoing instrument, and known to me to be **RICHARD J. ROSENTHAL**, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed. Given under my hand and seal of office this _17_ day of _February_, 2005.

(NOTARY SEAL)

Notary Public, State of _California_

Printed Name: _Sandra Anderson_
Notary Commission No. _1330956_
My Commission Expires: _Nov. 19, 2005_

SANDRA ANDERSON
Commission # 1330956
Notary Public - California
Los Angeles County
My Comm. Expires Nov 19, 200

EXHIBIT "A"

Legal Description

Being Lots 7, 8, 9, and 10, Block 190, ORIGINAL CITY OF AUSTIN in TRAVIS County, Texas, according to the map or plat thereof on file in the General Land Office in the State of Texas.

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2005 Feb 25 11:04 AM    2005031206
EVANSK $22.00
DANA DEBEAUVOIR COUNTY CLERK
TRAVIS COUNTY TEXAS

0914033/110364/807335
IHOP, Site #1421, Austin, Travis County, Texas
LCS No. 04-001682 CC

**ELECTRONICALLY RECORDED**     **2016198689**

TRV    **5**    PGS

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## SPECIAL WARRANTY DEED

RICHARD J. ROSENTHAL, hereinafter called "Grantor", for the consideration hereinafter stated, does grant, sell and convey unto WC 707 CESAR CHAVEZ, LLC, a Delaware limited liability company, hereinafter called "Grantee", the following described real property, together with all improvements thereon, including (without limitation) all of Grantee's interest in the buildings, structures, fixtures, and improvements located thereon, if any, and the interest of Grantor, if any, in and to any and all strips or gores, roads, easements, streets, and ways bounding the property and all rights of ingress and egress hereto, situated in Travis County, Texas, (the "Property"):

SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

To have and to hold the above described Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the Grantee, Grantee's heirs, executors, administrators, successors, or assigns, forever.

And Grantor does hereby bind Grantor, Grantor's heirs, executors, administrators, and successors, to warrant and forever defend, all and singular, the Property unto the said Grantee, Grantee's heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, by, through or under Grantor, but not otherwise, subject however, to all matters shown on Exhibit "B" attached hereto.

The consideration for this conveyance, receipt of which is hereby acknowledged, is $10.00 and other valuable consideration paid to Grantor for which no lien either express or implied is retained.

Grantee's Mailing Address:    WC 707 Cesar Chavez, LLC
401 Congress Avenue, 33rd Floor
Austin, Texas 78701

*[signature page to follow]*

Executed this ___17___ day of November, 2016, to be effective November _____, 2016.

GRANTOR:

_____
Richard J. Rosenthal

STATE OF ___CA___ §
§
COUNTY OF ___Los Angeles___ §

This instrument was acknowledged before me on this ___17th___ day of November, 2016, by Richard J. Rosenthal.

_See CA All-Purpose Ack_
Notary Public, State of ___CA___
_Benjamin Herrera, Notary Public_

-2-

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**　　　　　　**CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California　　　　　　　　　　)
County of Los Angeles　　　　　　　　)

On __NOVEMBER 17, 2016__ before me, _____**BENJAMIN HERRERA**_____, Notary Public,
　　　　　*Date*　　　　　　　　　　　　*Here Insert Name and Title of the Officer*
personally appeared _____**RICHARD J. ROSENTHAL**_____
　　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　　*Signature of Notary Public*

BENJAMIN HERRERA
Commission # 2096361
Notary Public - California
Los Angeles County
My Comm. Expires Jan 9, 2019

　　　　*Place Notary Seal Above*

—————————————— **OPTIONAL** ——————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual☐ ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

## EXHIBIT "A"
## TO SPECIAL WARRANTY DEED

## PROPERTY DESCRIPTION

<u>Address</u>:  707 E. Cesar Chavez, Austin, Texas

<u>Legal Description</u>:

Lot(s) 7, 8, 9 and 10, Block 190 of the Original City of Austin, Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, being more particularly described as follows:

Beginning at an iron rod found at the south side of East Cesar Chavez Street (80' wide), the same being the west side of Interstate Highway 35, thence along Interstate Highway 35, South 18°54'00": West, 153.83' to an iron rod found; thence along Driskill Street, North 71°05'43" West, 171.91' to an iron rod found; thence along the same, North 71°06'10" West, 43.36' to an iron rod found; thence along lands of James J. Percora, Sr., Trustee, North 18°50'16" East, 154.17' to an iron rod found; thence along East Cesar Chavez Street, South 70°54'35" East, 43.40' to a PK nail found; thence South 71°01'46" East, 172.03' to the point and place of beginning.

Containing 0.76 acres of land, more or less.

## EXHIBIT "B"
## TO SPECIAL WARRANTY DEED

### PERMITTED EXCEPTIONS

1. The following matters and all terms of the documents creating or offering evidence of the matters:

   a. Temporary Underground easement granted to the City of Austin, by instrument dated January 11, 1994, recorded in Volume 12107, Page 1425 of the Real Property Records of Travis County, Texas.

   b. The terms, conditions and stipulations of that certain Lease Agreement dated July 22, 2004, executed by and between CNL Net Lease Funding 2003, LLC, a Delaware limited partnership, as Lessor, and ACG 1421, L.P., a Texas limited partnership, as Lessee, evidenced by Memorandum of Lease recorded under Document No(s). 2004146937 of the Official Public Records of Travis County, Texas and being further affected by Document No(s). 2004031206 of the Official Public Records of Travis County, Texas.

   c. Sidewalk encroaches onto said land as shown on survey dated August 8, 2016, last revised November 28, 2016, prepared by Byron D. Howell Registered Professional Land Surveyor No. 6048 for Bock & Clark.

11-GF# 201502655 em
RETURN TO: HERITAGE TITLE
401 CONGRESS AVE., STE.1500
AUSTIN, TEXAS 78701

B-1

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
December 01 2016 08:00 AM
FEE: $  42.00  **2016198689**

**ELECTRONICALLY RECORDED**          **2016198690**

TRV      **6**      PGS

## ASSIGNMENT AND ASSUMPTION OF LEASE AND
## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE AND UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE ("Assignment") is effective as of this 30th day of November, 2016, between **RICHARD J. ROSENTHAL** ("Assignor"), and **WC 707 CESAR CHAVEZ, LLC**, a Delaware limited liability company ("Assignee"), under the following circumstances:

A.      Assignor is the Landlord with respect to that certain Lease Agreement between Assignor (as successor-in-interest to and CNL Net Lease Funding 2003, LLC) and ACG 1421, L.P., a Texas limited partnership, dated July 22, 2004 (collectively with all addenda thereto, the "Lease"), as evidenced by Memorandum of Lease dated July 22, 2004, filed of record August 2, 2004, as Document No. 2004146937 in the Official Public Records of Travis County, Texas, whereby CNL Net Lease Funding 2003, LLC leased to ACG 1421, L.P., that certain property known as IHOP, Site #1421, Austin, Travis County, Texas, more particularly described on the attached Exhibit "A" and that certain Assignment and Assumption of Lease and Unconditional Guaranty of Payment and Performance between CNL Net Lease Funding 2003, LLC and Assignor dated February 18, 2005 filed of record as Document No. 2005031206 in the Official Public Records of Travis County, Texas;

B.      Assignor (as successor-in-interest to and CNL Net Lease Funding 2003, LLC) is the beneficiary of that certain Unconditional Guaranty of Payment and Performance executed by ACG Texas, LP., d/b/a ACG Texas Restaurant, LP., a Delaware limited partnership ("Guarantor") dated July 22, 2004 to and for the benefit of CNL Net Lease Funding 2003, LLC (the "Guaranty"); and

C.      Assignor desires to assign to Assignee all of Assignor's right, title and interest in, to and under the Lease and the Guaranty, and Assignee desires to assume all of Assignor's obligations under the Lease arising after the date of this Assignment.

NOW, THEREFORE, for the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee agree as follows:

1.      Assignor assigns to Assignee all right, title and interest of the Landlord in, to and under the Lease, and Assignee assumes and agrees to perform all of the obligations of Assignor under the Lease first arising from and after the date of this Assignment.

2.      Assignor represents and warrants that Assignor holds all such right, title and interest of Landlord under the Lease, has the right to convey it to Assignee, that such right, title and interest are unencumbered by Assignor, that the Lease is in full force and effect, and that, to Assignor's actual knowledge, neither the Landlord nor the Tenant is in material default of any of its obligations under the Lease, nor has any event occurred which, with notice, the passage of time, or both, could constitute a material default under the Lease.

3.      Assignor hereby agrees to indemnify Assignee against, and hold Assignee harmless from, any and all cost, liability, loss, damage or expense, including, without limitation, reasonable attorneys' fees, first arising or accruing prior to the date hereof in connection with Assignor's performance or observance of, or the failure to perform or observe, any agreement or obligation of Assignor arising under the Lease.  Assignee hereby agrees to indemnify Assignor against, and hold Assignor harmless from, any

1

and all cost, liability, loss, damage or expense, including, without limitation, reasonable attorneys' fees, arising or accruing as of or subsequent to the date hereof in connection with Assignee's performance or observation of, or failure to perform or observe any agreement or obligation arising under the Lease hereby assumed by Assignee.

      4.      Pursuant to paragraphs 4(e) and 10 of the Guaranty, the Guaranty shall apply and is hereby assigned to and for the benefit of the Assignee.

**[Signatures on Next Page]**

SIGNED as of the date first written above.

ASSIGNOR

RICHARD J. ROSENTHAL

STATE OF _____ CA

COUNTY OF _____ Los Angeles

Before me, _____ November 21, 2016 _____, on this day personally appeared _____ Richard J. Rosenthal, who proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the foregoing instrument, and known to me to be **RICHARD J. ROSENTHAL**, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed. Given under my hand and seal of office this __21st__ day of _____ November _____, 2016.

(NOTARY SEAL)

See CA All-Purpose Ack

Notary Public, State of _____ CA

Printed Name: Benjamin Moreau Nehupblic

Notary Commission No. 2056361

My Commission Expires: 01/09/2019

3

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**   CIVIL CODE § 1189

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                              )

County of Los Angeles                      )

On NOVEMBER 21, 2016 before me, _____ BENJAMIN HERRERA _____, Notary Public,
          *Date*                                          *Here insert Name and Title of the Officer*

personally appeared _____ RICHARD J. ROSENTHAL _____
                                                *Name(s) of Signer(s)*

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                          *Signature of Notary Public*

BENJAMIN HERRERA
Commission # 2096361
Notary Public - California
Los Angeles County
My Comm. Expires Jan 9, 2019

          *Place Notary Seal Above*

———————————————— **OPTIONAL** ————————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____ Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____         Signer's Name: _____
☐ Corporate Officer — Title(s): _____       ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General                  ☐ Partner — ☐ Limited  ☐ General
☐ Individual☐       ☐ Attorney in Fact            ☐ Individual        ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator     ☐ Trustee           ☐ Guardian or Conservator
☐ Other: _____            ☐ Other: _____
Signer Is Representing: _____         Signer Is Representing: _____
_____                _____

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**"ASSIGNEE"**

**WC 707 CESAR CHAVEZ, LLC**, a Delaware
limited liability company

Natin Paul, President

STATE OF _Texas_
COUNTY OF _Travis_

    Before me, _Laura Byrd_____, on this day personally appeared Natin Paul, known to me to be the person whose name is subscribed to the foregoing instrument, and known to me to be the President of **WC 707 CESAR CHAVEZ, LLC**, a Delaware limited liability company, and acknowledged to me that he executed said instrument for the purposes and consideration therein expressed, and as the act of said limited liability company. Given under my hand and seal of office this __ _23_ day of _November_____, 2016.

(NOTARY SEAL)

Notary Public, State of _Texas_

Printed Name: _Laura Byrd_
Notary Commission No. _130846548_
My Commission Expires: _10/3/2020_

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

4

## EXHIBIT "A"

### Legal Description

Being Lots 7, 8, 9, and 10, Block 190, ORIGINAL CITY OF AUSTIN in TRAVIS County, Texas, according to the map or plat thereof on file in the General Land Office in the State of Texas.

11-GF# 201502655 em
RETURN TO: HERITAGE TITLE
401 CONGRESS AVE., STE.1500
AUSTIN, TEXAS 78701

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
December 01 2016 08:00 AM
FEE: $  46.00   **2016198690**

A-1