UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WC 707 CESAR CHAVEZ, LLC, | § | CASE NO. 25-11915 |
| | § | |
| DEBTOR. | § | Chapter 11 |
| | § | |

## DEBTOR'S RESPONSE TO CREDITOR CESAR RAINEY STREET LLC'S MOTION TO DISMISS

TO THE HONORABLE CHRISTOPHER G. BRADLEY, U.S. BANKRUPTCY JUDGE:

Comes now, Debtor WC 707 Cesar Chavez, LLC ("Debtor"), responding as follows to the Cesar Rainey Street LLC's Motion to Dismiss.

## PRELIMINARY STATEMENT

1.      This Chapter 11 case was filed in good faith to facilitate repayment of the secured debt and an orderly reorganization consistent with the purposes of the Bankruptcy Code. The Debtor owns a single property that is valued by the Travis Central Appraisal District ("TCAD") at $26,750,000.00, substantially in excess of the secured indebtedness asserted by Cesar Rainey Street, LLC ("Cesar Rainey" or "Noteholder") (See Exhibit 6, TCAD Appraisal). The Debtor does not seek to avoid payment of Cesar Rainey's claim. Rather, the Debtor filed this case to obtain a concrete payoff figure necessary to refinance the property, satisfy the debt, and promptly exit bankruptcy. That objective was materially advanced when Cesar Rainey filed its proof of claim shortly after the petition date. For the first time, the Debtor was provided a complete accounting of the amount Cesar Rainey asserts is owed, approximately $5.14 million (See Exhibit 5, Proof of Claim #1 - Addendum).

2.      Cesar Rainey's Motion to Dismiss rests on a mischaracterization of the four-year state-court litigation that preceded the bankruptcy filing. That litigation did not consist of serial or

abusive attempts to delay foreclosure, but rather a single, continuous dispute in which foreclosure efforts were repeatedly halted while the Debtor sought a payoff that the Noteholder refused to provide. Throughout that period, the Debtor remained subject to the jurisdiction of the state court. See Exhibit 4, State Court Docket. When the Debtor sought temporary restraining orders, such relief was granted to preserve the status quo in the face of imminent foreclosure, reflecting that the Debtor's claims were at least facially viable under Texas law. The prolonged inability to obtain payoff information from the Noteholder sufficient to permit consummation of payment explains why bankruptcy became necessary and why this case bears no resemblance to the bad-faith filings addressed in *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986). This bankruptcy case has already produced a concrete asserted payoff and will proceed as a routine single-asset real estate case.

<u>I. LITIGATION HISTORY</u>

3.      The state-court case began in November 2020, shortly after Cesar Rainey acquired the loan and initiated foreclosure activity. From the outset, the dispute centered on the Debtor's effort to pay the loan in full and Cesar Rainey's failure and refusal to provide payoff information necessary to permit redemption. The Debtor's Original Petition and initial application for a temporary restraining order were filed in response to an imminent foreclosure and after requests for complete payoff information had gone unanswered (Exhibit 1, Original Petition). The relief sought was limited and intended to preserve the status quo while the Debtor attempted to redeem the property or refinance the loan.

4.      Cesar Rainey characterizes the state-court case as involving "repeated TROs." The docket reflects otherwise. Over approximately four years, the Debtor sought emergency relief only when foreclosure was imminent and payoff information had not been provided in a manner that permitted payment. After the initial TRO request in late 2020, the court denied a temporary

injunction in December 2020, and the case proceeded without emergency relief. In May 2021, following renewed foreclosure activity and additional payoff requests, the Debtor again sought injunctive relief (Exhibit 2, Second TRO Request). Again, the Debtor obtained a temporary restraining order, and though an injunction was not granted, the case continued. No further TRO applications were filed until October 2025, again in response to an imminent foreclosure (Exhibit . 3, Second Amended Petition). Again a temporary restraining order issued.

5.      Under Texas law, a temporary restraining order may issue only upon a showing of a probable right to relief and imminent, irreparable harm. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The fact that the Debtor obtained temporary restraining orders at different points in the state-court case reflects that the claims asserted were, at a minimum, facially viable and sufficient to warrant preservation of the status quo when foreclosure was imminent. Those rulings were preliminary and non-dispositive, but they underscore that the litigation was not frivolous or abusive and was pursued in good faith.

6.      Between 2021 and 2025, the case proceeded through ordinary litigation, including discovery disputes concerning third-party subpoenas related to the loan and payoff mechanics. See Exhibit 4, State Court Docket. The absence of emergency filings during that period underscores that the case did not involve continuous attempts to enjoin foreclosure, but rather a prolonged stalemate in which foreclosure was not actively pursued and payoff information sufficient to resolve the dispute was not provided.

7.      The Chapter 11 case was filed in December 2025 after further injunctive relief was denied and after years in which payoff information had not been provided in a manner that permitted consummation of payment. Once the bankruptcy case was filed, Cesar Rainey promptly filed a proof of claim and addendum itemizing principal, accrued interest, attorneys' fees, and the rents collected from IHOP (See Exhibit 5, Summary of Claim). The bankruptcy filing thus

accomplished within weeks what years of state-court litigation could not: disclosure of a concrete asserted payoff and a defined path to repayment. This is exactly why the Debtor was forced to file this case to reorganize and protect is valuable equity, and is in direct contravention to any alleged bad faith.

8.      Importantly, the state-court litigation did not occur in a context in which Cesar Rainey went unpaid. As reflected in the proof of claim, more than $1.2 million in tenant payments were applied to the indebtedness prior to the bankruptcy filing (Exhibit 5). The record therefore reflects not a borrower withholding payment, but a prolonged dispute over nonacceptance of payoff by the Noteholder and escalating charges. Rent payments have continued through the time of filing of this response pursuant to cash collateral agreement between the Debtor and the noteholder.

9.      The property has also consistently maintained substantial equity. The Travis Central Appraisal District's 2025 appraisal reflects a market value of $26,750,000 for the property, consistent with valuations in prior years (Ex. 7 at 1).

## II. NO CAUSE EXISTS FOR DISMISSAL UNDER § 1112(B)

10.      Section 1112(b) authorizes dismissal only upon a showing of "cause," and the moving party bears the burden of establishing that cause exists. 7 Collier on Bankruptcy P 1112.04. In the Fifth Circuit, lack of good faith in the filing of a Chapter 11 petition constitutes cause for dismissal only where, under the totality of the circumstances, the bankruptcy process is being misused in a manner that undermines its integrity. The good-faith inquiry is fact-intensive and focuses on whether the case is functioning to advance the purposes of the Bankruptcy Code. See *Little Creek*, 779 F.2d at 1072; *In re Elmwood Dev. Co.*, 964 F.2d 508, 510–11 (5th Cir. 1992); *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991).

A. *Little Creek* Does Not Mandate Dismissal of Legitimate SARE Cases

11.     Cesar Rainey's reliance on *In re Little Creek Development Co.* overstates that

decision's relevance in the context of a modern single-asset real estate case. *Little Creek* did not

establish a per se rule requiring dismissal of single-asset or two-party Chapter 11 cases, but

articulated a fact-intensive inquiry focused on the debtor's financial condition, motives, and

surrounding financial realities. Courts applying *Little Creek* in the SARE context have

consistently rejected the notion that the existence of a single asset, a limited creditor body, or a

pending foreclosure alone establishes bad faith. See, e.g., *Coolwater LLC v. Camp Arrowhead

Ltd. (In re Camp Arrowhead Ltd.)*, 2010 U.S. Dist. LEXIS 4970 (rejecting *Little Creek* challenge

where debtor's actions were consistent with legitimate reorganization efforts).

12.     Post-1994 decisions further recognize that SARE entities are an accepted category

of Chapter 11 debtors and, while typically two-party, must be evaluated under the totality of the

circumstances. In *In re Riverstreet Ventures, LLC*, the bankruptcy court emphasized that the good-

faith inquiry turns on whether the bankruptcy filing serves a valid reorganizational purpose, not on

formal labels or the number of assets involved. *In re Riverstreet Ventures, LLC*, No. 21-10818,

2021 Bankr. LEXIS 2568, at *16 (Bankr. E.D. La. Sep. 20, 2021). Consistent with that approach,

courts have found good faith even where several *Little Creek* factors were present, so long as the

filing was not undertaken for an improper purpose. *See In re JSAA Realty, LLC,* No. 20-32504,

2022 Bankr. LEXIS 464, at *28-29 (Bankr. N.D. Tex. Feb. 24, 2022). Likewise, in *In re

Eastbourne 59/Grand Parkway, LP,* No. 09-36481-H3-11, 2009 Bankr. LEXIS 3549, at *11

(Bankr. S.D. Tex. Oct. 26, 2009), the court held that a single-asset real estate debtor filed in good

faith where substantial equity existed and market conditions suggested that restructuring was

possible. *See* 2009 Bankr. LEXIS 3549. Applied here, these authorities confirm that *Little Creek*

does not support dismissal of a solvent, equity-rich SARE case filed to facilitate repayment and an orderly exit.

<u>B. This Case Serves a Legitimate Bankruptcy Purpose</u>

13.     When evaluated under that framework, this case plainly serves a legitimate bankruptcy purpose. The Debtor did not file to avoid payment or to relitigate state-court issues. It filed because bankruptcy provided the only forum in which payoff information necessary to redeem the property could be obtained in a reliable and enforceable manner. That purpose was immediately fulfilled through the proof-of-claim process.

14.     As reflected in Cesar Rainey's proof of claim and addendum, the total amount asserted to be owed as of the petition date is approximately $5.14 million net of collections, inclusive of principal, accrued interest, and attorneys' fees (Ex. 5 at ¶ 7; Summary of Claim). The Debtor does not concede the allowability or reasonableness of all components of that amount, nor does the addendum constitute a true payoff statement with per diem interest or remittance instructions. Nonetheless, the disclosure of a concrete payoff through the bankruptcy process eliminated the uncertainty that had prevented resolution in state court and confirms that this case is proceeding toward a prompt, orderly payoff and exit.

15.     As discussed above, courts have consistently declined to dismiss SARE cases where bankruptcy facilitates transparency, preserves value, or enables repayment. Those principles apply here. The Debtor has substantial equity in the property, as evidenced by the Travis County appraisal valuing the property at $26.75 million (Ex. 6 at 1), and has identified a feasible refinancing path to satisfy the secured claim in full within the SARE timeline.

16.     The payment history and substantial equity further undermine any suggestion of bad faith. Cesar Rainey's proof of claim reflects that significant payments were credited prior to bankruptcy. Additionally, Cesar Rainey accrued substantial attorneys' fees that significantly

exceed what would be expected from defending against temporary restraining orders alone. Their inclusion in the proof of claim underscores that the dispute concerned did not simply center around attempts to restrain foreclosure. The Debtor does not contest the application of payments or the accrual of attorneys' fees herein. The Bankruptcy Code provides the appropriate forum to address those issues in an orderly and transparent manner.

C. This Case Is in a Different Procedural Posture Than *GVS*

17.    Cesar Rainey relies on *GVS*,[1] but that case arose in a materially different procedural posture. First, GVS related to the filing of a mezzanine entity with difficult prospects for reorganization and no income, and where the Debtor had not sought more than injunctive relief in state court at the time of filing. *In re GVS Portfolio I B, LLC*, No. 21-10690 (CSS), 2021 Bankr. LEXIS 1513, at *21 (Bankr. D. Del. June 4, 2021). In contrast, the instant case involves significant equity to be preserved and an income-producing asset: the IHOP lease. Further, in the instant case, the state court does not provide a realistic option, as the Debtor and Noteholder engaged in state-court litigation for four years to no avail.

18.    By contrast, the bankruptcy filing has already accomplished what the Debtor was not able to accomplish in four years. Within weeks of the petition date, Cesar Rainey filed a proof of claim disclosing the payoff that had been unavailable during the state-court litigation (Ex. 5). That disclosure resolved the central impediment to payoff and created a defined path to repayment via refinance. This case involves lengthy efforts in state court, substantial equity, and a clear exit strategy, placing it in a different posture from *GVS*.

_____

## D. Noteholder Has Unclean Hands

19.     This is not the first case in which an entity owned or controlled by Dorsey Bryan Hardeman has refused to provide a payoff outside of bankruptcy only to provide the payoff once the bankruptcy was filed. A similar pattern occurred in *In re WC Custer Creek Center Property, LLC*, Case No. 20-11202-tmd (see e.g. discussion in the Disclosure Statement, Doc#47 at 11) and *In re WC Alamo Industrial Center, LP*, Case No. 22-10226-tmd (see e.g. *Debtor's Motion for Order Compelling Secured Noteholder to Issue Payoff Quote and Payoff Instructions,* Doc#15).

## D. No Cause Exists Under § 1112(b)

20.     Viewed as a whole, the record does not support a finding of cause under § 1112(b). The Debtor is not seeking to avoid Cesar Rainey's claim but to pay it. The bankruptcy filing has already advanced transparency, preserved value, and positioned the Debtor to pay the secured claim in full and exit promptly. Under Fifth Circuit law and the post-SARE statutory framework, dismissal is not warranted. Dismissal at this stage would not advance creditor recovery, judicial economy, or the purposes of Chapter 11.

## III. DEBTOR'S PARAGRAPH-BY-PARAGRAPH RESPONSES TO NOTEHOLDER'S MOTION TO DISMISS

21.     Unless expressly admitted, Debtor denies each allegation in the Motion.

22.     Paragraphs 1 and 2: Debtor denies the allegations made in the "Preliminary Statement."

23.     Paragraphs 3 through 6: Admitted.

24.     Paragraph 7: Debtor admits that it is a Delaware entity and that it is an entity affiliated with Mr. Paul and World Class. The remainder of the paragraph is denied.

25.     Paragraphs 8 through 11: Debtor denies that the lease was renewed but is able to admit the terms of the original lease.

26.     Paragraphs 12 through 20: Admitted other than characterization of Debtor's actions.

27.     Paragraph 21: Admitted other than the characterization of Debtor's actions.

28.     Paragraphs 22 through 25: Admitted except that the amount due and the default status are denied, and taxes remain the responsibility of the Debtor should they not be paid by the tenant.

29.     Paragraphs 26 through 28: Admitted other than any implication that the Debtor has not acted in good faith.

30.     Paragraphs 29 and 30: The cases treat two-party dispute as only one factor in the dismissal analysis. As discussed above, SARE cases often involve a small number of parties, with the secured party predominating, and the question remains good faith. Any implication that the Debtor did not file its case in good faith is denied.

31.     Paragraph 31 is denied.

32.     Paragraphs 32 and 33 are statements of law which the Debtor is not required to admit or deny. They are denied to the degree they imply the Debtor's bad faith.

33.      Paragraphs 34 is admitted as far as it is a summary of schedules, but denied that Scale simply "stymied" the Lender. It was the other way around, that the Lender stymied the Debtor's ability to pay off the loan.

34.     Paragraph 35 is admitted as to a summary of the original lease, but Debtor denies that the lease has been renewed since 2024  and denies allegations regarding "the Debtor's…design" as being in bad faith.

35.     Paragraph 36 is denied. The Debtor did not "avail… itself of state law courts on numerous occasions." The Debtor filed one lawsuit. The fact that the courts granted a TRO

numerous times within that case shows that the Debtor was litigating in good faith, and the Noteholder was not. It is the Noteholder's bad faith that should not be countenanced.

36.     Paragraph 37 is denied. The Debtor is not using the bankruptcy to "renegotiate" the Loan, but to pay it off. Ironically, it is the Noteholder which may have destroyed its own right to foreclose by not doing so within the four years that it had its boot on the Debtor's neck in state court. See Exhibit 3 ¶ 28 *et seq.*

37.     Paragraphs 38 and 39 are denied.

38.     Paragraph 40 is admitted.

39.     Paragraph 41 is denied. Now that Noteholder has potentially lost the right to foreclose pursuant to Texas Civil Practice & Remedies Code Section 16.035, it is unclear whether it should be treated as a secured creditor.

40.     Paragraph 42 is admitted as to employees and cash flow other than the lease.

41.     Paragraph 43 is admitted except as to the implication that the case was filed in bad faith and that Scale's purpose was to "stymie" the Noteholder.

42.     Paragraph 44 is denied as to the Debtor seeking injunctive relief "four times unsuccessfully…in different courts." The Debtor received the TROs in the same proceeding due to the Noteholder's bad faith tactics.

43.     Paragraph 45 is denied. The Debtor is not trying to relitigate anything. The Debtor went to state court to get a payoff, which it has now received.

44.     Paragraph 46 is denied as to its characterization of the history of the proceedings prior to bankruptcy court.

45.     Paragraph 47 is denied. Any accusations are irrelevant as to this Debtor and ignore the unclean hands of the Noteholder, which has refused to provide payoff. Further, on information and belief, the sole manager of the Noteholder, Justin Bayne, has been recently incarcerated for

cocaine trafficking, and the ultimate purported equity holder of the Noteholder, Dorsey Bryan Hardeman, has been recently incarcerated for arson.

46.     Paragraph 48 is denied and are irrelevant. Any charges related to this property have been dismissed. Further, the Debtor has not had a bank account in several years while the Noteholder has been collecting rents.

47.     Paragraphs 49 and 50 are denied. The dockets indicate what they indicate, however World Class entities have had several successful bankruptcy cases, and the Debtor is committed to fulfill all bankruptcy obligations.

48.     Paragraphs 51 and 52 are denied for the reasons discussed *supra*.

49.     Paragraphs 53 through 56 are denied.

## IV. CONCLUSION

50.     This Chapter 11 case was filed in good faith to facilitate repayment of the secured debt and an orderly exit. The record reflects that Cesar Rainey was paid substantial sums during the pendency of the state-court litigation, that bankruptcy promptly resolved the payoff impasse by producing a concrete asserted payoff of approximately $5.14 million, and that the Debtor's property holds substantial equity as reflected in the Travis County appraisal valuing the property at $26.75 million. Cesar Rainey has not established cause for dismissal under § 1112(b).

WHEREFORE, the Debtor respectfully requests that the Court deny Cesar Rainey Street, LLC's Motion to Dismiss and grant the Debtor such other and further relief as the Court deems just and proper.

Respectfully submitted,

**HAYWARD PLLC**

By: */s/ Ron Satija*
    Ron Satija
    State Bar No. 24039158

7600 Burnet Rd., Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/Fax)
rsatija@haywardfirm.com
*Proposed Attorneys for*
*WC 707 Cesar Chavez, LLC*

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of foregoing was served on January 13, 2026, using the CM/ECF system on all parties receiving service thereby and within one business day via U.S. First Class mail on all parties on the attached matrix who did not receive CM/ECF service.

*/s/ Ron Satija*
Ron Satija