5/24/2021 3:29 PM
**Velva L. Price
District Clerk
Travis County
D-1-GN-20-007178
Alexus Rodriguez**

CAUSE NO. D-1-GN-20-007178

| | | |
|---|---|---|
| WC 707 CESAR CHAVEZ, LLC, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CESAR RAINEY STREET, LLC | § | |
| | § | |
| Defendant. | § | 353RD JUDICIAL DISTRICT |

## PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiff WC 707 Cesar Chavez, LLC, ("Borrower") files this Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "Application")[1] against Defendant Cesar Rainey Street, LLC ("Lender") and shows as follows:

### SUMMARY OF APPLICATION

A Borrower's right to pay off its debt is a principle as centuries old as is the law. Here, however, Lender refuses to accept Borrower's money. So, in conjunction with this Application, Borrower will deposit in the registry of the court cash in the amount of $3,020,000.00, which is an amount in excess of the amount necessary to pay off Lender's loan, interest and fees in its entirety. It seems intuitive enough that such an act of redemption—undergirded by Texas caselaw dating back to the nineteenth century—will satisfy this Lender. But we know that it will not, because this Lender is not in business to get paid back on its loan; this Lender wants to foreclose and take the property for itself, no matter what. Since upon Borrower's deposit there will no longer be any *indebtedness*, there is no *collateral* securing that indebtedness for Lender to foreclose on. That is axiomatic.

---

[1] This Application is supported and verified by Jeremy Stoler. *See* **Exhibit A**.

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER,
TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**
R:\PNC\Paul\707 Chavez\2021-05-24 707 Chavez Application for TRO and TI (final-2).docx

Page 1

Borrower originally sued Lender after it received notice—during the height of the Covid-19 Pandemic—of a December 1, 2020 foreclosure sale for one of its commercial real estate properties in Austin, Texas (the "Property").[2] Borrower obtained a temporary restraining order and sought a temporary injunction to halt the foreclosure sale because Borrower obtained financing to repay Lender in advance of the foreclosure sale. At the temporary injunction hearing, Lender argued that "[n]o funds have been tendered [and] no ability to pay has been shown."[3] Lender further alleged that the Property could not be paid off because it was "crossed" with another property that Borrower owned (the "Custer Creek Property").

Since that time, circumstances have changed, but Lender's wrongful conduct continues. The loan for the Custer Creek Property has been paid in full—the cross-collateralization issue is moot—and Borrower is ready, willing, and able—and has repeatedly tried—to tender the amount outstanding under the 707 Cesar Chavez loan. Yet, despite Borrower's requests, Lender refuses to respond to requests for a loan payoff statement, payment instructions, and a lien release. Rather than accepting Borrower's tender of the *full amount* of the debt—which Borrower indisputably offered—Lender has scheduled and insists upon a non-judicial foreclosure sale to occur on June 1, 2021.  Lender therefore completely ignores Borrower's equitable right of redemption, refuses to acknowledge that the lien has been extinguished, and seeks to keep the Property for itself by conducting a June 1, 2021 foreclosure sale.

Since Lender refuses to accept payment, Borrower has no choice but to deposit the money into the registry of the court.  If that happens, the Court must enjoin Lender from exercising any and all rights under the loan documents and deed of trust, including but not limited to enjoining

---

[2] The Property is more fully described in the Deed of Trust, defined below.
[3] Excerpts from the temporary injunction hearing transcript (the "Transcript") are attached hereto as **Exhibit B**. *See* Ex. B, 17:15-17.

the Lender from proceeding on the foreclosure or exercising any other rights against security it no longer has. Centuries old case law supports this very basic principle.

## RELEVANT FACTS

Borrower has owned the Property since 2017. The acquisition of the Property was financed by a promissory note in the original amount of $2,713,252 (the "Note") from Amplify Credit Union.[4] Lender, a recently formed shell entity, purportedly purchased the Note on or about September 9, 2020. The Note is secured by a Deed of Trust (the "Deed of Trust").[5]

On April 28, 2021, Borrower—through its representative, Nate Paul—asked Lender for an updated payoff statement "for a payoff date of May 5th with a per diem."[6] *See* Ex. A-3. Borrower followed up the following day. *See id.* Lender did not respond until May 7, 2021 when its general counsel, Mark Riley, contacted Borrower's counsel. *See id.* Rather than providing an updated payoff statement, Mr. Riley said that Lender intended to post the Property for a foreclosure sale to occur on June 1, 2021. *See id.* Mr. Riley then stated that Borrower could contact Lender's litigation counsel if Borrower wanted to try to "buy peace." *See id.*

On May 11, 2021, Borrower received a notice of substitute trustee sale of the Property scheduled for June 1, 2021 (the "Foreclosure Notice").[7]

Borrower's counsel contacted Lender's litigation counsel on May 18, 2021 and informed Lender through its counsel that Borrower was "ready, willing, and able" to pay off the loan:

---

[4] A true and correct copy of the Note is attached hereto as **Exhibit A-1**.
[5] A true and correct copy of the Deed of Trust is attached hereto as **Exhibit A-2**.
[6] A true and correct copy of the April 2021 – May 2021 correspondence between Borrower's representatives and counsel and Lender's in-house and litigation counsel is attached hereto as **Exhibit A-3**.
[7] A true and correct copy of the Foreclosure Notice is attached hereto as **Exhibit A-4**.

From: Villareal, Gavin
Sent: Tuesday, May 18, 2021 7:38 PM
To: Dodson, Chris <chris.dodson@bracewell.com>; steve.benesh@bracewell.com
Cc: Phillips, Tom <tom.phillips@bakerbotts.com>
Subject: FW: D-1-GN-20-007178; WC 707 Cesar Chavez, LLC v. Cesar Rainey Street LLC

Chris and Steve:

We are forwarding the below email from Mark Riley who asks that you be contacted regarding the loan on the property held by WC 707 Cesar Chavez, LLC.

I understand that the Cesar Rainey Street LLC has set the property owned by WC 707 Cesar Chavez, LLC for foreclosure sale on June 1, 2021.  WC 707 Cesar Chavez, LLC is ready, willing, and able to tender in full the outstanding amounts owed.  They have the equitable right redeem in advance of the foreclosure sale.

You previously told the court in this lawsuit that Cesar Rainey Street LLC was entitled to foreclose because "[n]o funds have been tendered [and] no ability to pay has been shown."  That is no longer the case.

Please send me the outstanding payoff amount and the wire transfer instructions and WC 707 Cesar Chavez, LLC will promptly wire the payoff funds.

Please call me or Judge Phillips if you have any questions.  Thanks.

Ex. A-3 (emphasis added). Borrower's counsel followed up with Lender's counsel two days later and *again* stated that Borrower was "ready, willing, and able to tender in full the outstanding amounts owed." *See id.*

No response was received until May 23, 2021. Lender's counsel responded to Borrower's counsel as follows:

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER,
TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**     Page 4
R:\PNC\Paul\707 Chavez\2021-05-24 707 Chavez Application for TRO and TI (final-2).docx

**From:** Dodson, Chris <chris.dodson@bracewell.com>
**Sent:** Sunday, May 23, 2021 8:57 PM
**To:** Villareal, Gavin <gavin.villareal@bakerbotts.com>
**Cc:** Phillips, Tom <tom.phillips@bakerbotts.com>
**Subject:** RE: D-1-GN-20-007178; WC 707 Cesar Chavez, LLC v. Cesar Rainey Street LLC


[EXTERNAL EMAIL]

Gavin,

Lender's position remains as-stated in Mr. Riley's email to Mr. Elliott below, dated May 7th.

Thanks,
Chris

CHRISTOPHER L. DODSON
Partner
chris.dodson@bracewell.com | download v-card
T: +1.713.221.1373 | F: +1.800.404.3970 | M: +1.713.882.8058

*Id.*

In its good faith efforts to pay off its loan, Borrower contacted Mr. Riley, in house counsel for Lender, who then directed Borrower to Bracewell, outside counsel for Lender, who then directed Borrower back to Mr. Riley. *See id.* This bad faith game of hot potato is inexplicable.

In summary, despite knowing that Borrower is willing and able to pay Lender in full, Lender inexplicably refuses to accept payment as is required by law and still intends to foreclose on the Property. Borrower therefore has no choice but to seek injunctive relief to stop the June 1, 2021 foreclosure sale, and to prevent the Lender from exercising any other lien rights given tender of the indebtedness.

<u>**ARGUMENT & AUTHORITY**</u>

Borrower is entitled to the relief sought because Borrower establishes that it has: (1) a cause of action against Lender; (2) a probable right to the relief sought; and (3) imminent and irreparable injury in the interim. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Specifically, Borrower seeks to enforce its equitable right of redemption, and has also asserted breach of contract and declaratory judgment claims against Lender due to Lender's interference with that right.

Under the equitable right of redemption, Borrower can establish *more* than just a "probable" right to the relief sought – it is paying off the underlying obligation; there is no security left to foreclose on.   Further, "every piece of real estate is unique, and if foreclosure were allowed before a full determination of the underlying claim, [Borrower] would be irreparably harmed." *Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N. Prop. Invs., LLC*, 481 S.W.3d 336, 350 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (internal quotations omitted). "It is obvious that the property owner would probably be injured if the property were foreclosed and sold." *Id.* (*quoting Franklin Sav. Ass'n v. Reese*, 756 S.W.2d 14, 15-16 (Tex. App.—Austin 1988, no writ)) (internal brackets omitted).

As such, for the reasons set forth more fully below, Borrower is entitled to a temporary restraining order, temporary injunction, and permanent injunction stopping Lender from taking any further action under the loan documents, including but not limited to the Deed of Trust and related lien on the Property.

**A.      Borrower establishes a probable right to the relief sought.**

Texas law is clear: Borrower has an equitable right of redemption that allows it to pay off the Note at *any point* before a foreclosure sale, and Lender cannot refuse to accept tender of the

amount owed to prevent Borrower's attempted repayment. "The equity of redemption doctrine has survived and exists in Texas as a common law equitable action." *Scott v. Dorothy B. Schneider Estate Trust*, 783 S.W.2d 26, 28 (Tex. App.—Austin 1990, no writ). "To enforce an equity of redemption, one must sue for that purpose and plead such equities that would authorize recovery." *Id.* In addition:

> A party must (1) prove that he has a legal or equitable interest in the property subject to the mortgage; (2) prove that he is 'ready, able or willing to redeem the properties in controversy by paying off the amount of valid and subsisting liens to which the properties [are] subject'; and (3) assert the claim before a foreclosure sale because the equity of redemption terminates once a foreclosure sale occurs.

*Elbar Invs., Inc. v. Wilkinson*, No. 14-99-00297-CV, 2003 WL 22176624, at *3 (Tex. App.—Houston [14th Dist.] Sept. 23, 2003, pet. denied) (mem. op.) (quoting *Scott*, 783 S.W.2d at 28).

Borrower satisfies each of the foregoing elements. First, it is undisputed that Borrower has an interest in the Property that the Deed of Trust encumbers, as Borrower is the owner of the property. Second, Borrower is plainly ready, willing, and able to pay off the amount of the Note and all related charges, through both communication from counsel as well as Borrower's willingness to deposit the funds in the registry of the court. Third, Borrower a Borrower has sued Lender asserting its equitable right of redemption in connection with Lender's baseless refusal to allow Borrower to satisfy the debt prior to the currently scheduled June 1, 2021, foreclosure sale.

First, as it has done in the past, Borrower recently asked Lender to provide a current payoff statement. On May 18, 2021, Borrower's counsel followed up with Lender's counsel and announced that Borrower was "*ready, willing and able to tender in full the outstanding amounts owed.*" Ex. A-3 (emphasis added). Such email—on its face—proves that Borrower is ready, willing, and able to tender the full amount due. *Id.*; *Jensen v. Covington*, 234 S.W.3d 198, 206 (Tex. App.—Waco 2007, pet. denied) ("A tender is an unconditional offer by a debtor to pay

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**
R:\PNC\Paul\707 Chavez\2021-05-24 707 Chavez Application for TRO and TI (final-2).docx

Page 7

another sum not less in amount than that due on a specified debt."), abrogated on other grounds by *Sorrell v. Estate of Carlton*, 593 S.W.3d 167 (Tex. 2019)

Moreover, given that Lender has previously argued that it is entitled to foreclose because Borrower has supposedly shown "no ability to pay," Borrower seeks to deposit all amounts owed into the court's registry.[8]  Lender's argument thus disappears.

For almost 100 years, Texas courts have found that foreclosure sales are improper when a party tenders into the court's registry the full amount due under an obligation. *See Mills v. Moore*, 5 S.W.2d 263, 263-64 (Tex. Civ. App.—Dallas 1928, no writ) ("The entire indebtedness having been tendered . . . and paid *into the registry of the court*, [the noteholders] were given all the relief that a sale under the deed of trust could give them, and their right of sale was thereby extinguished.") (emphasis added); *Gant v. Stewart*, 347 S.W.2d 1, 4 (Tex. Civ. App.—Waco 1961, writ ref'd n.r.e.) (finding a foreclosure sale permissible when the mortgagor did *not* pay or tender the amount owed under a promissory note to the mortgagee or "*into the registry of the court*") (emphasis added). Likewise, since Borrower intends to deposit more than enough funds into the court's registry[9], Lender cannot argue that "[n]o funds have been tendered." *See* Ex. A, 17:15-17.

Further, Borrower's tender of in excess of the full amount due under the Note—$3,020,000.00—extinguishes any lien that Lender holds. "The payment of a debt discharges the lien securing it without any release from the lienholder." *Jarvis v. K&E Re One, LLC*, 390 S.W.3d

---

[8] In conjunction with the Court's grant of this Application, Borrower is ready and willing to promptly deposit the full amount outstanding on the Note (and all related charges) into the court's registry.

[9] Lender's refusal to provide a current payoff statement precludes Borrower from knowing the exact amount owed under the Note. However, based on Lender's calculations in previous payoff statements, Borrower believes the $3,020,000.00 it seeks to deposit into the court's registry is more than enough, especially since Lender has been receiving monthly rents ranging between approximately $10-20,000 per month (or approximately $100,0000 since December 2020), which should be credited against the payoff amount. A true and correct copy of the most recent Loan Payoff Quote, dated December 21, 2020, which shows a net amount due at that time of $2,819,098.57, is attached hereto as **Exhibit A-5**.

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**
R:\PNC\Paul\707 Chavez\2021-05-24 707 Chavez Application for TRO and TI (final-2).docx

Page 8

631, 642 (Tex. App.—Dallas 2012, no pet.) (finding that when loan payoff funds were forwarded to the lienholder, "the lien on the property was extinguished and the [deed of trust] was discharged"). Thus, Borrower's exercise of its equitable right of redemption not only halts the foreclosure sale but further precludes Lender from exercising *any* alleged right in connection with the lien (as the lien is extinguished).

**B.**   **Borrower establishes imminent, irreparable harm if Lender is not enjoined.**

If Lender is not enjoined from treating the lien as if it still exists, Lender will proceed with the June 1, 2021 foreclosure sale, as confirmed by Lender's in-house and outside counsel. A threat of foreclosure constitutes imminent, irreparable harm such that an injunction is warranted. *See, e.g., Franklin*, 756 S.W.2d at 16; *see also Stewart Beach*, 481 S.W.3d at 350 ("A temporary injunction is . . . appropriate to block foreclosure of real property.").

Accordingly, Borrower will be irreparably harmed if Lender is permitted to deny Borrower's equity of redemption and proceed with the June 1, 2021 foreclosure sale.

**C.**   **Borrower has complied with the applicable procedural requirements.**

Pursuant to Texas Rule of Civil Procedure 680 and 682, this Application is supported and verified. *See* Ex. A.

Pursuant to Texas Rule of Civil Procedure 684, Borrower is willing and able to post a bond in this matter and requests that the Court determine a fair and reasonable amount of security to be given by Borrower in the unlikely event the temporary restraining order is wrongfully issued and results in harm to Lender. However, since Borrower asks that the Court allow it to deposit the full amount owed under the Note into the court's registry, Borrower requests that the bond be set at a nominal amount.

## Conclusion

It is not only entirely improper and unlawful, but also bizarre, that Lender refuses what *every* lender wants: to get paid back the money it loaned. But this Lender is different; this Lender, its principals and enablers' motivation is not to collect on its indebtedness but to take real estate that is worth far in excess of the loan for itself. That conclusion is the only logical way to explain Lender's bizarre unwillingness to accept cash.

Borrower respectfully requests that the Court enter a Temporary Restraining Order enjoining Lender from taking *any* further action in connection with its lien on the Property or under the loan documents and the Deed of Trust—including but not limited to the June 1, 2021 non-judicial foreclosure sale—other than accepting Borrower's tender of the full amount and related charges due under the Note.

Upon notice and hearing, Borrower requests that the Court enter a Temporary Injunction extending the Temporary Restraining Order until final judgment is entered in this lawsuit.

After trial on the merits, Borrower requests that the Court enter a Permanent Injunction prohibiting Lender from taking any further action in connection with its lien on the Property— including but not limited to a foreclosure sale—other than accepting Borrower's tender of the full amount and related charges due under the Note.

Respectfully submitted,

/s/ Brian P. Shaw
**ROGGE DUNN**
State Bar No.
**BRIAN P. SHAW**
State Bar No. 24053473
**CHASE J. POTTER**
State Bar. No. 24088245
**ANNA OLIN RICHARDSON**
State Bar No. 24102947

**ROGGE DUNN GROUP, PC**
500 N. Akard St.
Suite 1900
Dallas, Texas 75201
(214) 239-2707 (Telephone)
(214) 220-3833 (Fax)
shaw@roggedunngroup.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in accordance with the Texas Rules of Civil Procedure on May 24, 2021, as follows:

Steven Benesh
BRACEWELL
111 Congress Ave Suite 2300
Austin, Texas  78701-4061

☒ **VIA ECF**
☐ **VIA OVERNIGHT DELIVERY**
☐ **VIA HAND-DELIVERY**
☐ **VIA FIRST CLASS MAIL**
☐ **VIA FAX:**
☐ **VIA EMAIL:** steve.benesh@bracewell.com
☐ **VIA CMRRR:**

Christopher Dodson
BRACEWELL
711 Louisiana Street Suite 2300
Houston, Texas  77002-2770

☒ **VIA ECF**
☐ **VIA OVERNIGHT DELIVERY**
☐ **VIA HAND-DELIVERY**
☐ **VIA FIRST CLASS MAIL**
☐ **VIA FAX:**
☐ **VIA EMAIL:** chris.dodson@bracewell.com
☐ **VIA CMRRR:**

/s/ Brian P. Shaw
BRIAN P. SHAW

**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER,
TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**     Page 11
R:\PNC\Paul\707 Chavez\2021-05-24 707 Chavez Application for TRO and TI (final-2).docx



## DECLARATION OF JEREMY STOLER

STATE OF TEXAS        §
                                 §
COUNTY OF TRAVIS      §

1.　　My name is Jeremy Stoler.  I am over twenty-one (21) years of age, I am of sound mind and body, and I have never been convicted of a felony or offense involving moral turpitude.  I am fully competent to make this Declaration.

2.　　I am the Executive Vice President & Head of Capital Markets at an affiliate of Plaintiff WC 707 Cesar Chavez, LLC ("Borrower" or "Plaintiff"). In that capacity, I have personal knowledge of, experience with, and familiarity with the subjects referenced in this Declaration. I am duly authorized to make this Declaration on behalf of Borrower.

3.　　I have reviewed Plaintiff's Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. The factual statements therein are within my personal knowledge and are true and correct.

4.　　Specifically, in 2017, Borrower purchased real property located at 707 E. Cesar Chavez St., Austin, Texas 78701 (the "Property"). The Property is more particularly described in a Deed of Trust recorded as Instrument No. 2017063353 in the Official Public Records of Travis County, Texas (the "Deed of Trust"). The Property is financed by a promissory note in the original amount of $2,713,252 (the "Note") and is secured by the Deed of Trust. A true and correct copy of the Note is attached hereto as **Exhibit A-1**. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit A-2**.

5.　　On multiple occasions, Borrower has attempted to tender to Defendant Cesar Rainey Street, LLC ("Lender") the full amount outstanding on the Note.  True and correct copies of that correspondence is attached hereto as **Exhibit A-3.**

6.　　On or about May 11, 2021, Borrower received a notice of substitute trustee sale of the Property, which is scheduled to occur on June 1, 2021 (the "Foreclosure Notice"). A true and correct copy of the Foreclosure Notice is attached hereto as **Exhibit A-4**.

7.      Lender has failed to provide Borrower with a current payoff statement, so Borrower is without sufficient information to know the exact amount owed under the Note. However, based on Lender's calculations in previous payoff statements, Borrower believes that it owes $3,015,681.35. As such, Borrower believes that the $3,020,000 it seeks to deposit into the court's registry is more than enough, especially since Lender has been receiving monthly rents ranging between approximately $23,000 per month (or approximately $140,000 since December 2020). A true and correct copy of the most recent Loan Payoff Statement, dated December 21, 2020, which shows a net amount due at that time of $2,819,089.57, is attached hereto as **Exhibit A-5**.

8.      Since Lender has refused to accept Borrower's attempted payment, Borrower can and will deposit into the court's registry cash in excess of Lender's loan, interest and fees, in the amount of $3,020,000.00. Borrower is prepared to deposit such funds simultaneously with obtaining injunctive relief from the Court.

## <u>JURAT</u>

My name is Jeremy David Stoler. My date of birth is May 13, 1975, and my address is 814 Lavaca Street, Austin, Texas 78701. I declare under penalty of perjury that the foregoing is true and correct. This declaration is being executed pursuant to Tex. Civ. Prac. & Rem. Code § 132.001, and any other applicable law authorizing use of an unsworn declaration.


Executed in Travis County, State of Texas, on the 24th day of May, 2021.

Jeremy David Stoler

**EXHIBIT**

**A-1**

# LOAN AGREEMENT

This Loan Agreement ("Agreement") is entered into April 2D, 2017 ("Effective Date") by and among **WC 707 Cesar Chavez, LLC**, (the "Borrower"), **Natin Paul, World Class Holdings, LLC, and World Class Holdings III, LLC** (collectively "Guarantor") and **Amplify Credit Union** (the "Lender").

1.    **THE LOAN.** Lender agrees to lend and Borrower agrees to borrow an amount not to exceed the sum of **Two Million Seven Hundred Thirteen Thousand Two Hundred Fifty-Two and No/100 Dollars** ($2,713,252.00) (the "Loan") on the terms and conditions set forth herein. The Loan will be evidenced by Borrower's Note of even date herewith, or any renewal thereof with interest and principal payable as stated therein (the "Note").

2.    **SECURITY.** The Loan shall be secured by:

**Deed of Trust (with security agreement and assignment of rights and leases) ("Deed of Trust") an Assignment of Leases and Rents along with related UCC financing statements, upon and against each of the parcels of real property more specifically described on Attachment A attached hereto (each a "Property" or collectively, the "Properties"), and insured by a mortgagee title policy of insurance (the "Title Policy") in the form promulgated by the Texas Board of Insurance dated the date of the filing of such Deed of Trust issued by (the "Title Company") in an amount satisfactory to Lender by the terms of which Title Company commits to insure that the Deed of Trust constitutes a valid and prior first lien covering the Property, subject only to those exceptions and encumbrances as may be acceptable to Lender; and**

The Deed of Trust, the Assignment of Leases and Rents, the Guaranties, and this Loan Agreement and all other documents referenced herein may be referred to as the "Security Documents". The Properties may be sometimes referred to as the "Collateral". When Collateral is pledged as security for the Loan, Borrower will grant to Lender a first lien in the Collateral (unless otherwise represented) and agrees to do all things necessary to perfect the lien of Lender in such Collateral.

3.    **GUARANTIES.** If any Guarantors are executing this Loan Agreement, the Loan will be unconditionally guaranteed as evidenced by guaranties executed by each of the Guarantors of even date herewith (collectively "Guaranty").

4.    **CONDITIONS PRECEDENT.** The obligation of Lender to make the Loan to Borrower is subject to the conditions precedent that, as of the date of any advance of the Loan, and after giving effect thereto:

(a)    Lender shall have received the duly executed Note, Agreement and Security Documents;

(b)    Lender shall have received the Title Policy, along with such surveys, appraisals, environmental site audits or assessments, evidence of insurance and evidence of payment of taxes, all associated with the Property, in form and substance satisfactory to Lender, that Lender may require;

(c)    Lender shall have received from each Guarantor a duly executed Guaranty, if applicable;

(d)    Lender shall have received evidence, in form and substance satisfactory to Lender, of property and casualty insurance, covering the business assets of the Borrower, including the Collateral, of a nature and in an amount satisfactory to Lender;

(e)     Lender shall have received copies, in form and substance satisfactory to Lender, of the organizational documents of Borrower and any related entities obligated under the Note or Security Documents, including but not limited to its limited partnership agreement, articles of incorporation, bylaws, organizational consents, authorizing resolutions and any certificates of ownership, if any.

(f)     all representations and warranties made to Lender in this Agreement and the Security Documents shall be true and correct, as of and if made on such date;

(g)     no material adverse change in the financial condition of Borrower since the effective date of the most recent financial statements furnished to Lender by Borrower shall have occurred and be continuing;

(h)     no event has occurred and is continuing, or would result from the requested advance, which with notice or lapse of time, or both, would constitute an Event of Default (as hereafter defined); and

(i)     Lender shall not be obligated to make advances under the Note until it shall have (i) received and reviewed to its satisfaction an updated appraisal report on the Properties, and (ii) determined that, in connection with any request for an advance, that the aggregate amount to be advanced under the Loan will not exceed 75% of the appraised value contained in such appraisal report.

(j)     Full payment of the Loan Origination Fee payable to the Lender in connection with the Loan, which shall be deemed fully earned by the Lender upon execution of this Loan Agreement regardless of the amount of proceeds of the Loan disbursed hereunder.

5.      **REPRESENTATIONS AND WARRANTIES.** In order to induce the Lender to make the Loan hereunder, each Borrower and each Guarantor, if applicable, jointly and severally represents and warrants to Lender that:

(a)     Borrower is a Delaware limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and qualified to do business in Texas, and has the power to own its assets and to transact the business in which it is presently engaged.  There are no jurisdictions other than the State of Texas in which the character of the properties owned or proposed to be owned by the Borrower or in which the transaction of its business as now conducted or as proposed to be conducted requires or will require the Borrower to qualify to do business in any such jurisdiction;

(b)     Borrower and Guarantor, as appropriate, has full power and authority to execute, deliver and perform this Agreement, the Note, the Guaranty, if applicable,  and the Security Documents to be executed by it, and to borrow hereunder and has taken all necessary action to authorize (i) the borrowing hereunder on the terms and conditions of this Agreement and (ii) the execution, delivery and performance of this Agreement, the Note, the Security Documents to be executed by it and all other agreements, instruments and documents provided for herein or therein;

(c)     this Agreement, the Note, the Guaranty, if applicable, and the Security Documents are the legal and binding obligations of Borrower or Guarantor, as appropriate, enforceable in accordance with their respective terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights;

(d)     neither the execution or delivery of this Agreement, the Note, the Guaranty, if applicable, or the Security Documents, nor consummation of any of the transactions herein, or therein contemplated,

nor compliance with the terms and provisions hereof or thereof, will contravene or conflict with any provision of law, statute or regulation to which Borrower or Guarantor, as appropriate, is subject or any judgment, license, order or permit applicable to Borrower or Guarantor, as appropriate, or any indenture, mortgage, deed of trust or other instrument to which Borrower or Guarantor, as appropriate, may be subject; no consent, approval, authorization or order of any court, governmental authority or third party is required in connection with the execution and delivery by Borrower or Guarantor, as appropriate, of this Agreement or any of the other Security Documents or to consummate the transactions contemplated herein or therein;

(e)     all financial statements, if any (which financial statements do not include pro forma projections of Borrower) delivered by Borrower and Guarantor, if applicable, to Lender prior to the date hereof are true and correct, fairly present the financial condition of Borrower and Guarantor, as appropriate, and have been prepared in accordance with generally accepted accounting principles, consistently applied; as of the date hereof, there are no obligations, liabilities or indebtedness (including contingent and indirect liabilities) which are material to Borrower or Guarantor and not reflected in such financial statements; and no material adverse changes have occurred in the financial condition or business of Borrower or Guarantor since the date of the most recent financial statements which Borrower and Guarantor, if applicable, has delivered to Lender;

(f)     except as otherwise disclosed to Lender in writing on or prior to the date hereof, no litigation, investigation, or governmental proceeding is pending, or, to the knowledge of Borrower or any applicable Guarantor, threatened against or affecting Borrower or such Guarantor, which may result in any material adverse change in the business, properties or operations of Borrower or any applicable Guarantor;

(g)     there is no fact known to Borrower or Guarantor, if applicable, that Borrower or Guarantor have not disclosed to Lender in writing which may result in any material adverse change in the business, properties or operations of Borrower or Guarantor;

(h)     Borrower owns all of the Collateral and the assets reflected on its most recent balance sheet free and clear of all liens, security interests or other encumbrances, except those to Lender created pursuant to this Agreement or as previously disclosed in writing to Lender;

(i)     the principal office and principal place of business of Borrower is **401 Congress Avenue, 33rd Floor, Austin, Texas 78701;**

(j)     all taxes required to be paid by Borrower and Guarantor, if applicable, have in fact been paid, except for taxes being contested in good faith by appropriate proceedings for which adequate reserves have been established;

(k)     Borrower and Guarantor, if applicable, is not in violation of any law, ordinance, governmental rule or regulation to which it is subject, and is not in default under any material agreement, contract or understanding to which it is a party;

(l)     no certificate or statement herewith or heretofore delivered by Borrower or any applicable Guarantor to Lender in connection herewith, or in connection with any transaction contemplated hereby, contains any untrue statement of a material fact or fails to state any material fact necessary to keep the statements contained therein from being misleading;

(m)     since the last financial statements submitted to the Lender, there has not been any material adverse change in the Collateral or in the condition (financial or otherwise), assets, liabilities,

6138122.DOCX                                          3

operations or business of Borrower from that shown on the financial information, projections and other information presented to the Lender; and

(n)     the consummation of the transactions contemplated in the Agreement and Security Documents will not result in the breach of or constitute a default under the organizational documents of the Borrower or any agreement or court decree to which Borrower is a party or by which Borrower or its assets or properties are bound.

6.     **AFFIRMATIVE COVENANTS.**  In order to induce the Lender to make the Loan hereunder, until payment in full of the Note and full and complete performance of all other obligations of Borrower hereunder, and under the Security Documents, Borrower and Guarantor, if applicable, will (unless Lender shall otherwise consent in writing):

(a)     maintain its ability to do business in the State of Texas and conduct its business in an orderly and efficient manner consistent with good business practices and in accordance with all valid regulations, laws and orders of any governmental authority, maintaining all licenses, privileges, certificates and the like necessary for the operation of its business, and will act in accordance with customary industry standards in maintaining and operating its assets, properties and investments;

(b)     maintain complete and accurate books and records of its transactions in accordance with generally accepted accounting principles, and will give Lender access during business hours upon reasonable advance notice and as often as Lender may desire to all books, records and documents of Borrower and permit Lender to make and take away copies thereof, and will pay the reasonable fees and disbursements of any accountants or other agents of Lender selected by Lender for the foregoing purposes;

(c)     promptly notify Lender in writing, immediately upon becoming aware of (i) any material adverse change in its financial condition or business; (ii) any default under any material agreement, contract or other instrument to which Borrower or any applicable Guarantor is a party or by which any of its properties are bound, or any acceleration of any maturity of any indebtedness owing by Borrower or any applicable Guarantor, (iii) any material adverse claim against or affecting Borrower or any applicable Guarantor or any of its properties; and (iv) any litigation, or any claim or controversy which might become the subject of litigation, against Borrower or any applicable Guarantor or affecting any property of Borrower or such Guarantor, if such litigation or potential litigation might, in the event of an unfavorable outcome, have a material adverse effect on the financial condition or business of Borrower or applicable Guarantor or might cause an Event of Default (hereafter defined), such written notice specifying the nature and period of existence thereof and any action which Borrower or any applicable Guarantor are taking or propose to take with respect thereto;

(d)     provide Lender with any new leases and renewals applicable to the Properties as obtained, and provide annually, as soon as available, but in any event by 120 days after Borrower's fiscal year end, furnish to Lender financial statements of Borrower containing a balance sheet of Borrower as of the last day of such fiscal year and statements of income, cash flow and contingent liabilities, all in reasonable detail and form acceptable to Lender;

(e)     annually, within 30 days of filing with the Internal Revenue Service, but in any event no later than the end of October of each calendar year, furnish to Lender copies of each Borrower's federal income tax returns;

(f)     annually, within 30 days of the one-year anniversary date of the last personal financial statement in file, furnish to Lender an updated personal financial statement which includes assets, liabilities, contingent liabilities, and personal cash flow information of each applicable Guarantor;

(g)     annually, within 30 days of filing with the Internal Revenue Service, but in any event no later than the end of October of each calendar year, furnish to Lender copies of each applicable Guarantor's federal income tax returns;

(h)     promptly furnish to Lender, at Lender's request, such additional financial or other information concerning assets, liabilities, business operations, financial condition and transactions of Borrower or each applicable Guarantor as Lender may from time to time reasonably request (it being understood and agreed that Borrower shall not be required to furnish audited financial statement, and that all financial statements to be furnished in accordance with this Section 6 shall consist of compilation statements);

(i)     upon thirty days written request of Lender, reimburse Lender for the full cost of narrative appraisals and environmental assessments of the Property, each such appraisal and assessment to be ordered directly by Lender from an appraiser or inspector, as appropriate, satisfactory to Lender in its sole discretion and in form and substance necessary to comply with all laws and regulations affecting Borrower, a copy of each such appraisal and assessment to be provided to Borrower not later than the date on which Lender's reimbursement is received by Lender (failure of Borrower to reimburse lender for any requested appraisal or assessment, will constitute an event of default under this Agreement);

(j)     promptly pay all taxes for which the respective party is responsible as they become due and payable, and promptly pay all lawful claims, whether for labor, materials or otherwise, which might or could, if unpaid, become a lien or charge on any property or assets of Borrower, unless and to the extent only that the same are being contested in good faith by appropriate proceedings and reserves deemed adequate by Lender have been established therefore;

(k)     annually, as soon as available, but in any event within 30 days of taxes becoming due and payable, furnish to Lender proof of paid taxes receipts;

(l)     annually not later than 120 days after, and as of the end of each calendar year provide Lender schedules of real estate and all leases and rent rolls applicable to all properties owned by Borrower and other documentation as to the lease and occupancy of the Properties as requested by Lender in form and substance acceptable to Lender;

(m)     if at any time while this Agreement remains in effect improvements are made to the Property, maintain on its properties insurance of responsible and reputable companies in such amounts and covering such risks as is acceptable to Lender, is prudent and is usually carried by companies engaged in business similar to that of Borrower; Borrower shall furnish Lender, on request, with certified copies of insurance policies or other appropriate evidence of compliance with the foregoing covenant;

(n)     if at any time while this Agreement remains in effect improvements are made to the Property, annually, as soon as possible, but in any event within 30 days of any insurance premium becoming due and payable, furnish to Lender proof of insurance; should Borrower receive any notice of cancellation or notification of its insurance policy in any form, Borrower shall furnish Lender a copy of such notice within three (3) days of receipt;

(o)     Intentionally Deleted.

(p)     allow Lender access to Borrower's premises, books and records as Lender deems necessary during Borrower's normal business hours to conduct routine field examinations with respect to Borrower, its operations and the Collateral; and

(q)     maintain the following financial covenants at loan approval, if any financial covenant fitness was achieved through a global analysis of Borrower and the Guarantors, as applicable, then the same standard will be applied throughout the term of the Loan:

(1)     The Minimum Debt Service Coverage Ratio ("DSCR") shall be tested annually beginning December 31, of the year in which the Note is dated, and continuing regularly and annually thereafter, and shall be maintained at a ratio of not less than 1.20:1. DSCR shall be defined as follows: (Net Operating Income + Depreciation + Interest Expense + Lease Payments) / (Current Maturities of Long Term Debt + Interest Expense + Lease Payments).

(2)     The Minimum Debt to Equity Ratio ("DE") shall be tested annually beginning December 31, of the year in which the Note is dated, and continuing regularly and annually thereafter, and shall be maintained at a ratio of not less than the ratio in effect at loan approval (i.e. 47%). DE shall be defined as follows: (Total Debt)/(Shareholder Equity + Additional in Capital + Retained Earnings).

7.     **NEGATIVE COVENANTS.**  So long as Borrower may borrow hereunder and until payment in full of the Note and performance of all other obligations of Borrower hereunder, Borrower and Guarantor will not, as applicable, without the prior written consent of Lender:

(a)     allow Borrower to pay any amounts by way of salary, bonus, dividends, distributions or otherwise, to any shareholders, partners or applicable Guarantors in any calendar year; without prior written consent of Lender which would cause Borrower to be in default of any loan agreement covenants; provided however, that it is expressly understood that the following payments shall not constitute a default: management fees and salaries;

(b)     allow Borrower to liquidate, dissolve or reorganize; or merge or consolidate with, or acquire all or substantially all of the assets of, any other company, firm or association; or make any other substantial change in its capitalization or its business, which would cause Borrower to be in default of any loan agreement covenants; provided however, that if Borrower otherwise complies with the Loan Agreement covenants, Borrower shall not be restricted in the management, collateralization, sale or purchase of other properties which it owns or intends to own after the Effective Date;

(c)     allow Borrower to purchase, redeem or repurchase any equity interest in Borrower, which would cause Borrower to be in default of any loan agreement covenants;

(d)     allow Borrower to sell any of its assets used or useful in its business, except in the ordinary course of business; or sell any of its assets to any other person, firm or corporation with the agreement that such assets shall be leased back to Borrower or an applicable Guarantor, which would cause Borrower to be in default of any loan agreement covenants;

(e)     knowingly grant, suffer or permit liens on or security interests in Borrower's assets or the Collateral or fail to promptly pay all lawful claims, whether for labor, materials or otherwise, which would cause Borrower to be in default of any loan agreement covenants; notwithstanding the above, in the event mechanic's lien affidavits or claims are filed against the Property or Improvements, Borrower agrees to cause said claims or liens to be released or to bond around said claims or liens within ten (10) days written notification to or from Lender and to provide Lender with copies of said releases or bonds.

(f)      allow Borrower to make any loans, advances or investments to or in any joint venture, corporation or other entity, except for the purchase of obligations of Lender or U.S. Government obligations, which would cause Borrower to be in default of loan agreement covenants;

(g)      allow Borrower to create, incur, assume or become liable in any manner for any indebtedness (for borrowed money, deferred payment for the purchase of assets, lease payments, as surety or guarantor for the debt of another, or otherwise, except for (i) trade accounts payable incurred in the ordinary course of Borrower's business which, at any time during the term of this Agreement, does not exceed $10,000 per month and (ii) acquisition of equipment which, in the aggregate during the term of this Agreement, does not exceed $25,000 other than to Lender;

(h)      allow Borrower to substantially change its present executive or management personnel;

(i)      allow Borrower to change the general character of business as conducted at the date hereof, or engage in any type of business not reasonably related to its business as presently and normally conducted;

(j)      allow Borrower to violate or fail to comply with any covenants or agreements regarding other debt which will or would with the passage of time or upon demand cause the maturity of any other debt to be accelerated;

(k)      allow Borrower to enter into any transaction, including, without limitation, the purchase, sale or exchange of property or the rendering of any service, with any Affiliate (as hereafter defined) of Borrower, except in the ordinary course of and pursuant to the reasonable requirements of Borrower's business and upon fair and reasonable terms no less favorable to Borrower than would be obtained in a comparable arm's length transaction with a person or entity not an Affiliate of Borrower, which would cause Borrower to be in default of any loan agreement covenants; or

(l)      make any payments of principal or interest on any of the subordinated notes without prior written consent of Lender during any period Borrower is in default under the Note, Security Documents or this Agreement.

8.      **OTHER AGREEMENTS.**

(a)      <u>Expenses.</u>  During the term of this Agreement and for as long as any amounts remain outstanding under the Loan, Borrower agrees to pay directly, or to promptly reimburse Lender for its payment of all expenses incurred by Lender in connection with the Loan, including without limitation all costs, fees and expenses of counsel paid or incurred by Lender incident to this Agreement, the Note, the Guaranties, if applicable, and the Security Documents or incident to the collection of the Loan hereunder, appraisal fees, lien search charges, and the cost of any audits, including environmental audits and assessments.  All obligations of the Borrower under this section shall survive the termination or cancellation of this Loan Agreement for any reason whatsoever.

(b)    Commissions or Fees to Third Parties.  Borrower, Lender and each applicable Guarantor each represent and warrant to the other that no brokerage commission, placement fee or finder's fee is payable to any person or entity in connection with the transactions contemplated hereby.  Each party does hereby agree to indemnify, defend and hold the other harmless from and against the payment of any commission or fee to any person or entity claiming by, through or under Borrower, Lender or any Guarantor, as applicable, with respect to the services claimed to have been rendered in connection with the execution of this Agreement or the transactions set forth herein, and, notwithstanding anything herein to the contrary, this indemnity shall survive the Closing or termination of this Agreement.

(c)    Maintenance of Loan to Value.  In the event that, as a result of any written appraisal, ordered by Lender, the Lender determines that the then outstanding balance of the Note is more than eighty percent (80%) of the appraised value of the Real Property, within thirty (30) days following written demand by Lender, Borrower will provide Lender, at Lender's option, with additional collateral or pay down the balance of the Note as necessary to reduce the percentage to eighty percent (80%) or lower as reasonably acceptable to Lender.

9.    **EVENTS OF DEFAULT.**  An "Event of Default" shall exist if any one or more of the following events (herein collectively called "Events of Default") shall occur:

(a)    Borrower or any Guarantor, as appropriate, shall fail to pay when due any principal of, or interest on, the Note or any other fee or payment due hereunder or under any of the Guaranties, if applicable or Security Documents, and such default shall have occurred and remain uncured for a period of ten (10) days following the receipt of written notice by Borrower and each applicable Guarantor of the existence of such default;

(b)    any representation or warranty made in this Agreement, the Note, or in any of the Guaranties, if applicable, or Security Documents shall prove to be untrue or inaccurate in any material respect as of the date on which such representation or warranty is made;

(c)    Borrower becomes insolvent or there is a material adverse change in the assets, liabilities or financial condition of Borrower or any Guarantor, including but not limited to a decline in the personal credit score of Borrower or any Guarantor during the term of the loan of 40 points or more;

(d)    any action or proceeding is commenced by any partner, principal or member in Borrower which seeks as one of its remedies the dissolution of Borrower or any partner, principal or member (as applicable) in Borrower which is not discharged within ten (10) days;

(e)    default shall occur in the performance of any of the covenants or agreements of Borrower or applicable Guarantor contained herein or in the Note, the Guaranties, if applicable, or in any of the Security Documents, and such default shall have occurred and remain uncured for a period of thirty (30) days following the receipt of written notice by Borrower and each applicable Guarantor of the existence of such default;

(f)    Borrower or Guarantor, if applicable, shall (i) apply for or consent to the appointment of a receiver, custodian, trustee, intervenor or liquidator of itself or of all or a substantial part of its assets, (ii) voluntarily become the subject of a bankruptcy, reorganization or insolvency proceeding or be insolvent or admit in writing that it is unable to pay its debts as they become due, (iii) make a general assignment for the benefit of creditors (iv) file a petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy or insolvency laws, (v) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against it in any bankruptcy, reorganization or insolvency proceeding, (vi) become the subject of an order for relief

under any bankruptcy, reorganization or insolvency proceeding, or (vii) fail to pay any money judgment against it before the expiration of thirty days after such judgment becomes final and no longer subject to appeal;

(g) an order, judgment or decree shall be entered by any court of competent jurisdiction or other competent authority approving a petition appointing a receiver , custodian, trustee, intervenor or liquidator of Borrower or applicable Guarantor or of all or substantially all of its or his assets, and such order, judgment or decree shall continue unstayed and in effect for a period of 30 days; or a complaint or petition shall be filed against Borrower or applicable Guarantor seeking or instituting a bankruptcy, insolvency, reorganization, rehabilitation or receivership proceeding of Borrower or applicable Guarantor, and such petition or complaint shall not have been dismissed within thirty days;

(h) any Borrower shall sell, transfer or otherwise convey their interest in the Collateral without prior written consent of the Lender other than incidental sales of personal property in the ordinary course of business; or

(i) A Borrower or Guarantor, if applicable, shall be adjudicated as Bankrupt. .

10. **REMEDIES UPON EVENT OF DEFAULT.** If an Event of Default shall have occurred, Lender at its option may (a) declare the principal of, and all interest then accrued on, the Note and any other liabilities of Borrower to Lender to be forthwith due and payable, whereupon the same shall forthwith become due and payable without notice, presentment, demand, protest, notice of intention to accelerate, or other notice of any kind, all of which Borrower hereby expressly waives, anything contained herein or in the Note to the contrary notwithstanding (b) reduce any claim to judgment, and/or (c) without notice of default or demand, pursue and enforce any of Lender's rights and remedies under this Agreement, the Note, the Guaranties, if applicable, the Security Documents or otherwise provided under or pursuant to any applicable law or agreement. **Borrower agrees that, in addition to Lender's other rights and remedies (unless waived in writing by Lender from time to time in its sole discretion), the interest rate on the Secured Note will increase by one quarter of a percent (.25%) (i) if any documentation set forth in Section 6 above is not furnished to Lender within thirty (30) days of the due date set forth above, and (ii) Borrower fails to provide such documentation within ten (10) days of written notice from Lender. The interest rate on the Secured Note will increase by an additional one quarter of a percent (.25%) if the documentation set forth in Section 6 above continues to not be furnished by Borrower within sixty (60) days of the due date set forth above. If Borrower is not otherwise then in default of the Secured Note, Lender will abate the increases on the Secured Note provided for in this paragraph within thirty (30) days of receipt of all documentation required herein.**

11. **MISCELLANEOUS.**

(a) <u>Notices.</u> Any notices or other communications required or permitted to be given hereunder or under the Note, the Guaranties, if applicable, or the Security Documents must be given in writing and must be personally delivered or mailed by prepaid certified or registered mail to the party to whom such notice or communication is directed at the address of such party as follows:

(i) Borrower: **WC 707 Cesar Chavez, LLC**
**401 Congress Avenue, 33rd Floor**
**Austin, Texas 78701**

(ii) Lender: **Amplify Credit Union**

**Business Lending Department**
**3600 W. Parmer Lane**
**Austin, Texas 78727**

(iii)  Guarantor:

**Natin Paul**
**7800 Cava Place**
**Austin, Texas 78735**

**World Class Holdings, LLC**
**401 Congress Avenue, 33rd Floor**
**Austin, Texas 78701**

**World Class Holdings III, LLC**
**401 Congress Avenue, 33rd Floor**
**Austin, Texas 78701**

Any such notice or other communication shall be deemed to have been given (whether actually received or not) on the day it is personally delivered as aforesaid or, if mailed, on the third day after it is mailed as aforesaid. Any party may change its address for purposes of this Agreement by giving notice of such change to all other parties pursuant to this Section 11(a).

(b)  <u>Governing Law.</u>  This Agreement, the Note, the Guaranties, if applicable, and the Security Documents are being executed and delivered, and are intended to be performed, in the State of Texas, and the substantive laws of Texas shall govern the validity, construction, enforcement and interpretation of this Agreement, the Note, the Guaranties, if applicable, and the Security Documents, except to the extent:  (i) otherwise specified therein; (ii) the federal laws governing national banks expressly supersede and have contrary application; or (iii) federal laws governing maximum interest rates shall provide for rates of interest higher than those permitted under the laws of the State of Texas.

(c)  <u>Invalid Provisions.</u>  If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.

(d)  <u>Maximum Interest Rate.</u>  Regardless of any provisions contained in this Agreement, the Note, the Guaranties, if applicable, or in any of the Security Documents, Lender shall never be deemed to have contracted for or be entitled to receive, collect or apply as interest on the Note, any amount in excess of the maximum rate of interest permitted to be charged by applicable law, and, in the event Lender ever receives, collects or applies as interest any such excess, such amount which would be excessive interest shall be deemed to be a partial prepayment of principal and treated hereunder as such, and, if the principal balance of the Note is paid in full, any remaining excess shall forthwith be paid to Borrower.  In determining whether or not the interest paid or payable under any specific contingency exceeds the highest lawful rate, Borrower, and Lender shall, to the maximum extent permitted under applicable law, (i) characterize any non-principal payment (other than payments which are expressly designated as interest payments hereunder) as an expense, fee, or premium, rather than as interest, (ii) exclude voluntary prepayments and the effect thereof, and (iii) spread the total amount of interest throughout the entire contemplated term of the Note so that the interest rate is uniform throughout such term.

(e)     Entirety and Amendments.  This Agreement, including any addenda thereto, together with the Note, the Guaranties, if applicable, and the Security Documents embody the entire agreement between the parties and supersede all prior agreements and understanding, if any, relating to the subject matter hereof and thereof, and this Agreement, the Note, the Guaranties, if applicable, and the Security Documents may be amended only by an instrument in writing executed by the party, or an authorized officer of the party against whom such amendment is sought to be enforced.

(f)     Parties Bound.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that Borrower may not, without the prior written consent of the Lender, assign any rights, powers, duties or obligations hereunder.

(g)     Headings.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Agreement.

(h)     Financial Terms.  As used in this Agreement, all financial and accounting terms not otherwise defined herein shall be defined and calculated in accordance with generally accepted accounting principles consistently applied.

(i)     Cumulative Rights and No Waiver.  Each and every right granted to Lender hereunder or under any other document delivered hereunder or in connection herewith, or allowed it by law or equity shall be cumulative of and may be exercised in addition to any and all other rights of Lender, and no delay in exercising any right shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right preclude any other or future exercise thereof or the exercise of any other right.  Any of the foregoing covenants and agreements may be waived by Lender but only in writing signed by a Vice President or higher level officer of Lender.  Borrower expressly waives any presentment, demand, protest or other notice of any kind.

No notice to or demand on Borrower in any case shall, of itself, entitle Borrower to any other or further notice or demand in similar or other circumstances.  No delay or omission by Lender in exercising any power or right hereunder shall impair any such right or power or be construed as a waiver thereof or any acquiescence therein, nor shall any single or partial exercise of any such power preclude other or further exercise thereof, or the exercise of any other right or power hereunder.

(j)     Participation of the Loan.  Borrower agrees that Lender may, at its option, sell interests in the Loan and its rights under this Agreement and the Security Documents to a financial institution or institutions and, in connection with each such sale, Lender may disclose any financial and other information available to Lender concerning Borrower to each prospective purchaser.

(k)     Expenses.  Borrower shall pay all costs and expenses (including, without limitation, reasonable attorney's fees) in connection with (i) any action required in the course of administration of the indebtedness and obligations evidenced by the Security Documents, and (ii) any action in the enforcement of Lender's rights upon the occurrence of an Event of Default.

(l)     Conflicts.  In the event any term of provision hereof is inconsistent with or conflicts with any provision of the other Security Documents, the terms and provisions contained in this Agreement shall be controlling.

(m)     Counterparts.  This Agreement may be separately executed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall be deemed to constitute one and the same instrument.

(n) <u>Waiver of Trial by Jury.</u> **EACH PARTY BY THEIR ACCEPTANCE HEREOF, HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THE DEED OF TRUST, THIS LOAN AGREEMENT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH OF THE PARTIES, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. ANY PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE PARTIES, AS THE CASE MAY BE.**

(o) <u>No Oral Commitments.</u> **THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**BORROWER:**

**WC 707 Cesar Chavez, LLC,**
a Delaware limited liability company

By: _____
Name: Natin Paul
Title: President

**GUARANTORS:**

_____
Natin Paul

**World Class Holdings, LLC**

By: _____
Name: Natin Paul
Title: President

**World Class Holdings III, LLC**

By: _____
 Name: **Natin Paul**
 Title: **President**


**LENDER:**

**Amplify Credit Union**

By: _____
 **Shirley Sheffield**
 **Loan Officer**

## ATTACHMENT "A"

## LEGAL DESCRIPTION

Lots 7, 8, 9 and 10, Block 190, ORIGINAL CITY OF AUSTIN, a subdivision in Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, being more particularly described as follows:

Beginning at an iron rod found at the south side of East Cesar Chavez Street (80' wide), the same being the west side of Interstate Highway 35, thence along Interstate Highway 35, South 18°54'00": West 153.83' to an iron rod found; thence along Driskill Street, North 71°05'43" West, 171.91' to an iron rod found; thence along the same, North 71°06'10" West, 43.36' to an iron rod found; thence along lands of James J. Pecora, Sr., Trustee, North 18°50'16" East, 154.17' to an iron rod found; thence along East Cesar Chavez Street, South 70°54'35" East, 43.40' to a PK nail found; thence South 71°01'46" East, 172.03' to the point and place of beginning.
Containing 0.76 of an acre of land, more or less.

# REAL ESTATE LIEN NOTE

<u>Date</u>:          April 2○ , 2017

<u>Maker</u>:        **WC 707 Cesar Chavez, LLC**

<u>Payee</u>:        **Amplify Credit Union**

<u>Place for Payment (include county)</u>:

**Amplify Credit Union**
**Business Lending Department**
**3600 W. Parmer Lane**
**Austin, Texas 78727**
**Travis County**

<u>Principal Amount</u>:     **Two Million Seven Hundred Thirteen Thousand Two Hundred Fifty-Two and no/100 Dollars ($2,713,252.00)**

<u>Annual Interest Rate on Unpaid Principal from Date of Funding:</u>

      **Five and 00/100 Percent (5.00%)**

<u>Terms of Payment (principal and interest)</u>:

Principal and interest shall initially be due and payable in monthly installments of **$15,861.40** each, payable on the 1st day of each and every calendar month, beginning **June 1, 2017**, and continuing regularly and monthly thereafter, until **June 1, 2024**, when the entire balance due hereon, principal and accrued interest then remaining unpaid, shall be due and payable. Interest shall be calculated on the principal balance hereof remaining unpaid from time to time to the date of maturity of each installment. Each payment received shall be applied first to the discharge of accrued and unpaid interest, and the balance of the payment shall be applied to the reduction of the principal and to the discharge of any other amounts due hereon in such manner as Payee may direct. Payments of principal of the note shall be calculated based on a three hundred (300) month amortization.

Interest on the note prior to its maturity shall be calculated on an Actual 360 in Arrears accrual method as determined by Payee at the rate specified above, provided that in no event shall the amount of interest payable hereunder exceed the Maximum Rate (as defined below).

Nothing in this Note shall authorize the collection of interest in excess of the highest rate allowed by law (the "Maximum Rate"). All agreements between the Maker hereof and the holder hereof are expressly limited so that in no contingency or event whatsoever shall the amount paid, or agreed to be paid, to the holder hereof for the use, forbearance or detention of money to be loaned hereunder exceed the maximum amount permissible under applicable laws. Should it be determined that any sums already collected exceed permitted limits, such excess

sums shall be refunded by reducing the principal owed upon this Note or by making a direct payment to Maker.

THIS LOAN IS PAYABLE AS SET FORTH HEREIN.

The Maker hereof reserves the right to prepay this Note in part or in full at any time without penalty and the interest shall immediately cease on any amount so prepaid.

Annual Interest Rate on Matured, Unpaid Amounts:

After maturity, whether by acceleration or otherwise, interest shall accrue on the outstanding principal balance at a rate per annum equal to eighteen percent (18%) per annum or the Maximum Rate, whichever is less.

Security for Payment:

A Deed of Trust of even date herewith, executed by the Maker hereof to **Scott Humphreys,** Trustee, upon the following described real property, to-wit (the "Property"):

Lots 7, 8, 9 and 10, Block 190, ORIGINAL CITY OF AUSTIN, a subdivision in Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, being more particularly described as follows:

Beginning at an iron rod found at the south side of East Cesar Chavez Street (80' wide), the same being the west side of Interstate Highway 35, thence along Interstate Highway 35, South $18^0 54'00$": West 153.83' to an iron rod found; thence along Driskill Street, North $71^0 05'43$" West, 171.91' to an iron rod found; thence along the same, North $71^0 06'10$" West, 43.36' to an iron rod found; thence along lands of James J. Pecora, Sr., Trustee, North $18^0 50'16$" East, 154.17' to an iron rod found; thence along East Cesar Chavez Street, South $70^0 54'35$" East, 43.40' to a PK nail found; thence South $71^0 01'46$" East, 172.03' to the point and place of beginning.
Containing 0.76 of an acre of land, more or less.

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

Maker agrees to pay a late payment fee equal to five percent (5%) of each installment then due which is not paid within fifteen (15) days after the installment is due. The fee is due without demand on the expiration of the 15-day period and is secured by the liens securing this note. Failure to pay this late-payment fee shall constitute a default on this Note.

In the event of default in the payment of this Note, when due, or in the performance of any agreement contained in the Deed of Trust securing payment hereof and provided such default continues past any applicable cure period set forth in the Deed of Trust or the Loan

Agreement executed in connection with this Note, then the holder of this Note shall have the option, without demand or notice, to declare the principal and interest at once due and payable and to exercise any and all other rights or remedies provided in this Note and the Deed of Trust, if any, including the right to set off against this Note and all other liabilities of the Maker to the holder hereof, all money or other property in its possession held for or owed to the Maker.

Additionally, on default in the payment of this Note, the unpaid balance and earned interest on this Note shall become immediately due at the election of Payee. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest.

If this Note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee reasonable attorney's fees in addition to other amounts due.

Each Maker is jointly and severally responsible for the entire amount of this Note.

The terms Maker and Payee and other nouns and pronouns include the plural if more than one. The terms Maker and Payee also include their respective heirs, personal representatives, and assigns.

Maker warrants and represents to Payee and to each present and future owner and holder of this Note that all loans evidenced by this Note are for business, commercial, investment or other similar purposes and are not primarily for personal, family, household or agricultural use, as such terms are used in Chapter One of the Texas Credit Code.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

THIS NOTE IS PAYABLE IN FULL ON **JUNE 1, 2024**. AT MATURITY, MAKER MUST REPAY THE ENTIRE PRINCIPAL AMOUNT HEREOF AND UNPAID INTEREST THEN DUE. PAYEE IS UNDER NO OBLIGATION TO REFINANCE THIS NOTE AT THAT TIME. MAKER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT MAKER MAY OWN, OR MAKER WILL HAVE TO FIND A LENDER, WHICH MAY BE PAYEE, WILLING TO LEND MAKER THE MONEY. IF MAKER REFINANCES THIS NOTE AT MATURITY, MAKER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF MAKER OBTAINS REFINANCING FROM PAYEE.

**WC 707 Cesar Chavez, LLC,**
    a Delaware limited liability company

By: _____
    Name:  Natin Paul
    Title:  President

**EXHIBIT**

**A-2**

**ELECTRONICALLY RECORDED**    **2017063353**
                                    TRV    **16**    PGS

*50  CTOT  17-298383-mm*

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

ATTENTION COUNTY CLERK: THIS INSTRUMENT COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE DEEDS OF TRUST ON REAL ESTATE ARE RECORDED. ADDITIONALLY, THIS INSTRUMENT SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A DEED OF TRUST, BUT ALSO AS A FINANCING STATEMENT COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN. THE MAILING ADDRESS OF THE GRANTOR (DEBTOR) AND BENEFICIARY (SECURED PARTY) ARE SET FORTH IN THIS INSTRUMENT. GRANTOR IS THE RECORD OWNER OF THE PROPERTY DESCRIBED HEREIN.

## DEED OF TRUST
## (WITH SECURITY AGREEMENT)

| | | |
|---|---|---|
| STATE OF TEXAS | § | KNOW ALL PERSONS BY THESE PRESENTS: |
| | § | |
| COUNTY OF TRAVIS | § | |

That WC 707 Cesar Chavez, LLC ("Grantor"), whose address for purposes hereof is 401 Congress Avenue, 33rd Floor, Austin, Texas 78701 of Travis County, Texas for the purpose of securing the indebtedness hereinafter described, and in consideration of the sum of TEN DOLLARS ($10.00) in hand paid by the Trustee hereinafter named, the receipt of which is hereby acknowledged, and for the further consideration of the uses, purposes and trusts hereinafter set forth, has granted, sold and conveyed, and by these presents does grant, sell and convey unto Scott Humphreys, TRUSTEE, of Travis County, Texas, and his substitutes or successors and assigns, all of its right, title and interest in and to the land, improvements thereon and property situated in Travis County, Texas, described on Attachment "A" attached hereto, having an address of 707 Cesar Chavez, Austin, Texas 78701, and made a part hereof for all purposes (the "Land");

Together with:

(A)    All buildings and other improvements thereon and hereafter placed thereon, and all fixtures, materials, equipment, apparatus, furniture, furnishings and other property, now or hereafter installed or used on the above described property or the improvements thereon, including, but not limited to, all heating, lighting, refrigeration, plumbing, ventilating, incinerating, water-heating, cooking and air-conditioning equipment, machinery, appliances, fixtures and appurtenances, window screens, window shades, venetian blinds, awnings, drapes, carpets, and other floor coverings and shrubbery and other chattels used or furnished in connection with the operation, use and enjoyment of the above described property and the improvements thereon, and all renewals, replacements and substitutions thereof and additions thereto, all of which said property and fixtures shall be deemed to be a part of and affixed to the Land (collectively, the "Improvements"; the Land and the Improvements being collectively referred to hereinafter as the "Real Property");

6138122.DOCX                    1

(B)   The following described personal property: (i) all personal property owned by Grantor now or hereafter located on the Real Property; (ii) all personal property now or hereafter intended for incorporation into, or use in the construction of, improvements on the Real Property; (iii) all furniture, furnishings, fixtures, equipment, contracts, plans, specifications, permits and other documents now or hereafter pertaining to any such construction and all accounts, chattel paper, instruments and general intangibles in any way connected with, or relating to, the Real Property; (iv) all of Grantor's interest in any and all other personal property now or hereafter located, used or intended for use or location, at the Real Property, in connection with the business or other activities conducted or to be conducted by Grantor in connection with the Real Property; and (v) all proceeds of each item of the aforesaid personal property (collectively, the "Personal Property");

(C)   Any and all leases, subleases, licenses, concessions or other agreements (whether written or oral, and whether now or hereafter in effect) which grant a possessory interest in and to, or the right to use, all or any part of the Real Property, and all other agreements (such as utility contracts, maintenance agreements, and service contracts) which in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, together with all security and other deposits made in connection therewith and together with any amendments, extensions, renewals or replacements of any of the foregoing (collectively, the "Leases");

(D)   All rents, revenues, income and profits arising from any part of the above described property and the use thereof, including all rents revenues, bonus money, royalties, rights and benefits accruing to Grantor under all present and future oil, gas and mineral leases on any part of the above described property, and all proceeds payable under any policy of insurance covering the loss of rent resulting from untenantability caused by destruction or damage of the Mortgaged Property; any and all rights and claims of any kind which Assignor may have against any tenant under the Leases or against any subtenants or occupants of the Mortgaged Property (collectively, the "Rents");

(E)   All of Grantor's right, title and interest in all intangible property (collectively, the "Intangible Property"), if any, pertaining to the Land, the Improvements, or the Personal Property or the use thereof, including without limitation, transferable utility contracts, transferable telephone exchange numbers, plans and specifications, engineering plans and studies, floor plans, landscape plans, utility rights, permits, consents and licenses;

(F)   All easements, if any, benefiting the Land or the Improvements (collectively, the "Easements");

(G)   All rights and appurtenances pertaining to the foregoing, (collectively, the "Rights and Appurtenances"); and

(H)   All the estate, right, title and interest of every nature whatsoever of Grantor in and to all of the foregoing and every part and parcel thereof;

TO HAVE AND TO HOLD the Real Property, the Personal Property, the Leases, the Rents, the Intangible Property, the Easements, and the Rights and Appurtenances (collectively, the "Mortgaged Property") belonging unto the Trustee, and to his substitutes or successors and assigns forever. And Grantor does hereby bind itself and its successors and assigns, to warrant and forever defend the

Mortgaged Property unto the said Trustee, his substitutes or successors and assigns forever, against the claim, or claims, of all persons claiming or to claim the same or any part thereof.

This conveyance, however, is made in TRUST to secure the payment of one (1) certain promissory note dated **April 2 0, 2017**, in the principal sum of **Two Million Seven Hundred Thirteen Thousand Two Hundred Fifty-Two and No/100 Dollars ($2,713,252.00)** (the "Note") executed by **WC 707 Cesar Chavez, LLC** (the "Borrower"), payable to the order of **Amplify Credit Union**, (the "Beneficiary"), bearing interest as therein stipulated and providing for acceleration of maturity and for attorneys' fees (the "Secured Note"; all principal, interest and other amounts payable under the Secured Note being collectively referred to as the "Indebtedness").

This deed of trust also secures payment of any debt, obligation or liability that Borrower and/or Grantor and/or any commonly controlled affiliate of Borrower or Grantor may subsequently owe to Beneficiary, regardless of how the other debts, obligations, and liabilities are incurred and regardless of whether they are evidenced by a note, open account, overdraft, endorsement, surety agreement, guarantee, loan agreement or other document. Until Beneficiary releases it, this deed of trust will remain fully in effect to secure future advances and debts to Borrower and/or Grantor and/or any commonly controlled affiliate of Borrower or Grantor, regardless of any additional security given for any such debt and regardless of any renewals, extensions, or partial releases thereof. Notwithstanding the foregoing, however, upon the payment in full of the Secured Note and there does not then exist any default of any other debt, obligation or liability to Beneficiary applicable hereto, Beneficiary shall release the Mortgaged Property covered hereby.

Except as otherwise specifically provided herein, should Grantor do and perform all of the covenants and agreements herein contained and in the Loan Agreement executed by Borrower of even date herewith, and Borrower and/or Grantor shall make prompt payment of the Indebtedness as the same shall become due and payable, then this conveyance shall become null and void and of no further force and effect, and shall be released at the expense of Grantor, by the Beneficiary.

Grantor covenants and agrees as follows:

That it is lawfully seized of the Mortgaged Property, and has the right to convey the same; and that the Mortgaged Property is free from all liens and encumbrances, except as herein provided and except for matters shown on Lender's title policy ("Permitted Exceptions"). As used hereafter, however, the term "Permitted Exceptions" shall not include any leases with respect to the Mortgage Property all of which must be subordinated in writing to the liens created by this deed of trust.

To protect the title and possession of the Mortgaged Property and to pay when due all taxes and assessments now existing or hereafter levied or assessed upon the Mortgaged Property, or the interest therein created by this Deed of Trust, and, subject to the Permitted Exceptions to preserve and maintain the lien hereby created as a prior lien on the Mortgaged Property, including any improvements hereafter made a part of the Mortgaged Property.

To pay or cause to be paid, before delinquent, all taxes and assessments of every kind or character in respect of the Mortgaged Property or any part thereof and, from time to time upon request of Beneficiary, to furnish to Beneficiary evidence satisfactory to Beneficiary of the timely payment of such taxes and assessments and governmental charges (the word "assessments" as used herein includes not only assessments and charges by any governmental body, but also all other assessments and charges of any kind, including, but not limited to, assessments or charges for any utility or utility service, easement, license or agreements upon, for the benefit of, or affecting the Mortgaged Property, and assessments and charges arising under subdivision, condominium, planned unit development or other declarations,

restrictions, regimes or agreements).  Notwithstanding the foregoing, Grantor shall have the right to contest taxes and assessments by appropriate procedures.

To keep the improvements comprising the Mortgaged Property in good condition and to make all repairs of any nature thereto as and when required, and not to permit or commit any waste thereof, and to keep the buildings occupied so as not to impair the insurance carried thereon.

To insure and keep insured all improvements now or hereafter comprising the Mortgaged Property against loss or damage by fire and windstorm, and any other hazard or hazards as may be reasonably required from time to time by Beneficiary during the term of Indebtedness to the extent of the original amount of the Indebtedness or to the extent of the full insurable value of such improvements, whichever is the lesser, in such form and with such insurance company or companies as may be approved by Beneficiary, and to deliver to Beneficiary the policies of such insurance having attached thereto such mortgage indemnity clause as Beneficiary shall direct; and to deliver renewals of such policies to Beneficiary at least ten (10) days before any such insurance policies shall expire.  So long as Grantor is not in default under the loan evidenced by the Note and other Indebtedness, Beneficiary will permit Grantor to rebuild and restore the Mortgaged Property to its previous condition following a casualty, but Beneficiary will hold insurance proceeds in a separate account to be applied to the restoration and repair of the Property upon the following terms and provisions:

(a)  The Mortgaged Property shall be restored to the equivalent of its original condition as Beneficiary may approve in writing.

(b)  Grantor shall cause an architect acceptable to Beneficiary to prepare plans and specifications for the restoration of the damaged property.  In addition, Grantor shall have the repair and restoration work bid by a contractor or contractors acceptable to Beneficiary and shall obtain the contractor's cost estimate for such work.  Grantor shall promptly submit the plans and specifications and the contractor's estimate to the Beneficiary for approval.  Upon receipt of approval by Beneficiary, Grantor will promptly commence and diligently pursue the work of repair and restoration.

(c)  If prior to the commencement of the work, or at any time during the restoration and repair of the Mortgaged Property, Beneficiary shall determine in good faith that the total cost of restoration and repair shall exceed the balance of the proceeds held in its possession, Grantor shall immediately pay, in cash, to Beneficiary the amount of such excess costs.  Until the amount of such excess is paid to Beneficiary, Beneficiary shall not be obligated to disburse any of the proceeds held by Beneficiary.  The insurance proceeds, together with the amount of excess costs paid by Grantor, are hereinafter collectively called "Construction Funds."

(d)  The construction funds will be made available to Grantor as restoration and repair work progresses.  As a condition precedent to each advance, Beneficiary may require Grantor to furnish to Beneficiary draw requests executed by Grantor and its contractor, executed lien waivers signed by the contractor and any subcontractors or suppliers, and such other items as Beneficiary shall reasonable require.  The final advance shall not be made unless and until Beneficiary has received a certificate and affidavit of Grantor (with supporting evidence, including lien waivers and releases) that the construction work has been fully completed and all bills for labor and materials have been paid in full.  Beneficiary shall be entitled to designate, at Grantor's expense, an architect or engineer to make inspections or certifications required by Beneficiary, and Beneficiary shall not be required to make any advance until Beneficiary has received inspections and certifications satisfactory to Beneficiary.

(e)  In the event Grantor shall fail to promptly and fully perform the conditions and covenants set out herein, or in the event during the restoration and repair of any default shall have occurred

6138122.DOCX                                    4

hereunder, Beneficiary may, at its option, immediately cease making further payments apply the construction funds then in its possession either to the reduction of the Indebtedness hereby secured or to the restoration of the Mortgaged Property in the manner above provided. Any excess construction funds, at Beneficiary's option, may be applied to the reduction of the Indebtedness by this deed of trust.

If all or any part of the Mortgaged Property is so located within a special flood hazard area that any structure comprising a part thereof is required, in connection with any Federal or Federally-related loan, to be covered by insurance against the hazard of flood under the National Flood Insurance Program, as the same may have been and may be amended from time to time, then Grantor shall at all times keep any and all such structures now located or hereafter erected or placed upon the Mortgaged Property insured against the hazard of flood in an amount equal to the maximum coverage for which any such structure is eligible from time to time under such National Flood Insurance Program. As used in the immediately preceding sentence, the terms "special flood hazard area," "Federal or Federally-related loan," and "flood" shall have the same meanings as such or similar terms have under the provisions of the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, and the rules and regulations promulgated pursuant to such acts, as the same have been and may be amended from time to time.

That in the event Grantor shall fail to keep the improvements comprising the Mortgaged Property in good repair and condition, or to pay promptly when due all taxes and assessments, as aforesaid, or to preserve the prior lien of this Deed of Trust on the Mortgaged Property, or to keep the buildings and improvements insured, as aforesaid, or to deliver the policy or policies of insurance or the renewal thereof to Beneficiary, as aforesaid, Beneficiary may, at its option, but without being required to do so, make such repairs, pay such taxes and assessments, purchase any tax title thereon, remove any prior liens and prosecute or defend any suits in relation to the preservation of the prior lien of this Deed of Trust on the Mortgaged Property, or insure and keep insured the improvements in an amount not to exceed that above stipulated; that any sums which may be so paid out by Beneficiary and all sums paid for insurance premiums, as aforesaid, including the costs, expenses and attorney's fees paid in any suit affecting the Mortgaged Property when necessary to protect the lien hereof, shall bear interest from the dates of such payments at the rate stated in the Secured Note and shall be paid by Grantor to Beneficiary upon demand, at the same place at which the Indebtedness is payable, and shall be deemed a part of the Indebtedness and recoverable as such in all respects.

It is agreed that the lien hereby created shall take precedence over and be a prior lien to any other lien of any character, whether vendor's, materialmen's or mechanic's lien, hereafter created on the Mortgaged Property. In the event the proceeds of the Indebtedness are used to pay off and satisfy any liens heretofore existing on the Mortgaged Property, then Beneficiary is, and shall be subrogated to all of the rights, superior titles, liens, equities and remedies owned or claimed by any owner or holder of said outstanding liens, however remote, regardless of whether said liens are acquired by assignment or are released by the holder thereof upon payment. It is understood and agreed that the proceeds of the Indebtedness, to the extent that the same are utilized to take up such outstanding liens and charges against the Mortgaged Property, or any portion thereof, have been advanced by Beneficiary at Grantor's request and upon Grantor's representation that such amounts are due and payable.

It is agreed that an extension, or extensions, may be made of the time of payment of all, or any part, of the Indebtedness, and that any part of the Mortgaged Property may be released from this lien without altering or affecting the priority of the lien created by this Deed of Trust in favor of any junior encumbrancer, mortgagee or purchaser, or any person acquiring an interest in the Mortgaged Property, or any portion thereof, it being the intention of the parties thereto to preserve this lien on the Mortgaged Property and all improvements that may be hereafter constructed, superior to any liens that may be placed thereon, or that may be fixed, given or imposed by law thereon, after the execution of this Deed of Trust

notwithstanding any such extension of the time of payment, or the release of a portion of the Mortgaged Property from this lien.

In the event any portion of the Indebtedness cannot be lawfully secured by this Deed of Trust lien on the Mortgaged Property, it is agreed that the first payments made on the Indebtedness shall be applied to the discharge of that unsecured portion of the Indebtedness.

It is agreed that if, subsequent to the execution and delivery of this Deed of Trust, it should be ascertained that there is a defect in the title of Grantor to the Mortgaged Property, or that there is a lien of any nature whatsoever on any part of the Mortgaged Property, which is equal or superior in rank to the lien granted by this instrument, or if a homestead claim is asserted to any part of the Mortgaged Property adverse to this trust, or if, Grantor, its successors or assigns, while the owner of the Mortgaged Property, should commit an act of bankruptcy, or authorize the filing of a voluntary petition in bankruptcy, or should an act of bankruptcy be committed and involuntarily proceedings instituted or threatened, or should the Mortgaged Property be taken over by a Receiver for Grantor, its successors or assigns, the Indebtedness shall, at the option of Beneficiary, immediately become due and payable, and the Trustee may then proceed to sell the Mortgaged Property under the provisions of this Deed of Trust.

Grantor hereby grants a security interest in all accrued and unaccrued rights and interests under the Leases and the Rents to the fullest extent allowed by law, including but not limited to Chapter 64 of the Texas Property Code. Grantor hereby agrees to receive all Rents and apply the Rent so collected, subject only to the payment of reasonable expenses incurred in operating and managing the Mortgaged Property, first to the payment of the portions of the Indebtedness which are then currently due and for the satisfaction and discharge of all currently due obligations, including specifically, but without limitation, to the payment of taxes and assessments upon the Real Property before payment of penalty or interest are due thereon, to the cost of insurance, maintenance and repairs as may be required by the terms of this Deed of Trust and in satisfaction of all obligations under the Leases. Thereafter, Grantor may use the balance of the Rent collected in any manner not inconsistent with the loan documents. Upon the occurrence and during the continuance of any event of default hereunder, immediately upon Beneficiary's request and all advance notice being hereby waived, Grantor shall deliver all security deposits and records with respect to the Leases and Rents to Beneficiary and Beneficiary shall have the exclusive right, power and authority, without the necessity of any further action (but Beneficiary shall have no obligation with respect thereto), to collect, demand, sue for, attach, levy, recover and receive any Rent, to give proper receipts, releases and acquittances therefore and, after deducting the expenses of collection, to apply the net proceeds thereof as a credit upon any portion of the Indebtedness selected by Beneficiary, notwithstanding that such portion selected may not then be due and payable or that such portion is otherwise adequately secured and regardless of whether a foreclosure sale of the remainder of the Real Property has occurred under this Deed of Trust, or whether Beneficiary or the Trustee has taken possession of the remainder of the Real Property or attempted to do any of the same. Grantor hereby authorizes and directs any lessee of the Real Property to deliver any such payment to, and otherwise to attorn all other obligations under the Leases directly to, Beneficiary, immediately upon notice. Grantor hereby ratifies and confirms all that Beneficiary shall do or cause to be done by virtue of this Assignment of Leases and Rents. No lessee shall be required to inquire into the authority of Beneficiary to collect any Rent, and any lessee's obligation to Grantor shall be absolutely discharged to the extent of its payment to Beneficiary.

With respect to the Leases and Rents, Grantor represents and warrants that:

(a)     All existing Leases are valid, unmodified and in full force and effect and no material default exists thereunder except as have been disclosed to Beneficiary in writing;

6

(b)     Except as indicated in the Leases, Grantor has not received any funds or deposits from any tenant except for funds to be applied to accrued Rents; and

(c)     Grantor has good title to the Leases and Rents hereby assigned and authority to assign them and no Leases or Rents have been assigned, mortgaged or pledged, and no other person or entity has any right, title or interest therein.

Until this Deed of Trust has been released, Grantor covenants to:

(a)     punctually perform all of the landlord's obligations under the Leases and to give prompt notice to Beneficiary of any failure to do so;

(b)     enforce the tenants' obligations under the Leases;

(c)     defend, at Grantor's expense, any proceeding pertaining to the Leases, including, if Beneficiary so requests, any such proceeding to which Beneficiary is a party;

(d)     at Beneficiary's request, to deliver executed counterparts of the Leases to Beneficiary;

(e)     save the Beneficiary harmless from any obligations of the lessor under terms of any of the Leases; and

(f)     at Beneficiary's request, to deliver to Beneficiary such further assurances and assignments with respect to the Leases as Beneficiary may from time to time request.

**Until this Deed of Trust has been released, Grantor shall not, without prior written consent of Beneficiary:**

(a)     do anything, or knowingly permit anything to be done, to impair the value and security of any of the Leases or to encumber or assign any existing or future Leases or Rents or the License;

(b)     receive or collect Rents more than one month in advance or grant rental concessions of more than one month's rent;

(c)     anticipate, waive, release, discount, set off or compromise any Rents; or

(d)     waive or release any material obligation of any tenant under the Leases; cancel, terminate or modify any of the Leases; cause or permit any cancellation, termination or surrender of any of the Leases; commence any proceedings for dispossession of any tenant under any of the Leases; or renew or extend any existing Lease, unless such action is taken in the ordinary course of business under such terms and conditions as are generally considered to be commercially reasonable in light of the existing practice of the owners of similar projects in the same geographical area.

Grantor agrees that no settlement for damages for termination of any of the Leases under the Bankruptcy Laws, or under any other federal, state or local statute, shall be made without the prior written consent of Beneficiary, and any check in payment of such damages shall be made payable to both Grantor and Beneficiary. Neither the acceptance by Beneficiary of this Assignment of Leases and Rents nor the granting of any of the aforesaid, shall (a) prior to the actual taking of physical possession and operational control of the Real Property by Beneficiary or Trustee, be deemed to constitute Beneficiary or Trustee as a "mortgagee in possession" or (b) at any time, obligate Beneficiary or Trustee (i) to appear in or defend any action or proceeding relating to the Leases, the Rents or the Real Property, (ii) to take any action

hereunder, (iii) to expend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any Lease (iv) to assume any obligation or responsibility for any deposits which are not physically delivered to Beneficiary or (v) to assume any obligation or responsibility for any injury or damage to person or property sustained in or about the Real Property.

Grantor hereby appoints Beneficiary its attorney-in-fact, with full powers of substitution, empowering Beneficiary to subordinate any of the Leases to the liens created hereby. This power of attorney is a power of attorney coupled with an interest and shall be irrevocable. Upon request by Beneficiary during the continuance of an Event of Default, Grantor shall deliver to Beneficiary executed originals of all Leases (to the extent in the possession of Grantor) and copies of all records relating thereto. Grantor shall make such records available at the Real Property for Beneficiary's inspection at all times. The release of this Deed of Trust after the payment of the Indebtedness in full shall constitute a reassignment of the Leases and Rents to Grantor, and Beneficiary shall return any Leases to Grantor, and, to the extent not necessary for the payment of the Indebtedness, any Rents in Beneficiary's possession at that time.

At Beneficiary's option and request, and from time to time, for the purpose of creating a fund for the payment of taxes and insurance premiums on the Mortgaged Property, Grantor covenants and agrees to make an initial deposit to such fund and to deposit monthly with Beneficiary on the payment dates specified in the Note a sum equivalent to one-twelfth (1/12) of the estimated annual taxes and insurance premiums on the Mortgaged Property, the amount of such initial deposit and estimates to be determined by Beneficiary, said monthly deposits to be in addition to the payments called for in the Note. Beneficiary shall hold the deposits in trust, without bond and without the accrual of interest thereon, for the purpose of paying, at Beneficiary's option, such taxes and insurance premiums as they become due. Should such deposits at any time be insufficient to pay the taxes and premiums when due, Grantor agrees to deposit the deficiency with Beneficiary immediately upon demand. If an excess should accumulate in such fund, such excess shall be credited to the next maturing monthly deposits to such fund, or, at Beneficiary's option, refunded to Grantor or applied to the Indebtedness. If Grantor shall make full payment of the Indebtedness, Beneficiary will, before accepting such full payment, apply any and all amounts then accumulated in such fund to the reduction of principal due on the Indebtedness.

In addition to any obligations of Grantor under any loan agreements executed by Grantor to Beneficiary in connection with the Indebtedness, Grantor agrees (unless Beneficiary shall otherwise consent in writing) to provide Beneficiary the financial or other information concerning assets, liabilities, business operations, financial condition and transactions of Grantor or each applicable Guarantor as required by the Loan Agreement and as Beneficiary may from time to time reasonably request;

Grantor agrees that, in addition to any other conditions of default in this Deed of Trust, the Note, the Loan Agreement or other loan document, Grantor shall be in breach of its obligations and an event of default shall have occurred in the event Grantor fails to maintain the Minimum Debt Service Coverage Ratio, Minimum Debt to Equity Ratio and other obligations described in the Loan Agreement and/or Grantor or any Guarantor becomes insolvent or there is a material adverse change in the assets liabilities or financial condition of Grantor or any Guarantor, in each case subject to the notice and cure periods set forth in the Loan Agreement.

Beneficiary shall be entitled to receive any and all sums which may become payable to Grantor for the condemnation of the Mortgaged Property, or any portion thereof, for public or quasi-public use, or by virtue of private sale in lieu thereof, and any sums which may be awarded or become payable to Grantor for damages caused by public works or construction on or near the Mortgaged Property. All such sums are hereby assigned to Beneficiary which may, after deducting therefrom all expenses actually incurred, including attorney's fees, release the same to Grantor or apply the same to the reduction of

Indebtedness, whether then matured or to mature in the future, or on any money obligation hereunder, as and in such manner as Beneficiary may elect. Beneficiary shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such sums.

Beneficiary may remedy any default hereunder, without waiving same, or may waive any default without waiving any prior or subsequent default, but no waiver by Beneficiary shall be effective unless made in a signed written document. Beneficiary may remedy any default hereunder without creating any obligation or liability on the part of Beneficiary either to remedy any other default or take any action whatsoever.

In the event of default in the payment of any installment, principal or interest, of the Secured Note or the Indebtedness in accordance with the terms thereof, and such breach shall have occurred and remain uncured for a period of ten (10) days following receipt of written notice by Grantor of the existence of such event of default, or in the event of a breach of any of the covenants herein contained to be performed by Grantor, and such breach shall have occurred and remain uncured for a period of thirty (30) days following receipt of written notice by Grantor of the existence of such breach, then, and in any such events, Beneficiary may elect (Grantor hereby expressly waiving notice, presentment, demand, protest, notice of intention to accelerate, or other notice of any kind) to declare the entire Indebtedness immediately due and payable. In the event of default in the payment of the Indebtedness when due or declared due, it shall thereupon, or at any time thereafter, be the duty of the Trustee, or his successor or substitute as hereinafter provided, at the request of Beneficiary (which request is hereby conclusively presumed), to enforce this trust.

Should the Beneficiary declare the entire Indebtedness immediately due and payable, the Beneficiary may initiate foreclosure of the Mortgaged Property by requesting the Trustee to effectuate a non-judicial foreclosure sale. The Trustee or his successor or substitute shall post written notice of the time, place and terms of the sale of the Mortgaged Property then subject to the lien hereof at the courthouse door in each county in which any portion of the Mortgaged Property is located, and shall mail and file notices as required by section 51.002, Texas Property Code, as then amended (or any successor statutes), and otherwise shall comply with that statute. The Trustee or his successor or substitute shall thereafter sell the Mortgaged Property then subject to the lien at public auction to the highest bidder for cash in accordance with such notices on the first Tuesday in any month between the hours of ten o'clock A.M. and four o'clock P.M., at the county courthouse of the county in Texas in which such Mortgaged Property or any part thereof is located, in the area at the county courthouse designated by the county commissioners court for such purpose as recorded in the real property records of the county, or if no such recorded designation has been made, then in the area at the county courthouse designated in the notice. The Trustee or his successor or substitute shall sell all of the Mortgaged Property as an entirety or in such parcels as he may elect, and shall make due conveyance to the purchaser or purchasers thereof, with general warranty binding Grantor, his heirs, successors and assigns. Notwithstanding the above, notice of such sale may be given and the sale may be conducted in any other manner which meets the requirements of the applicable laws of the State of Texas with respect to foreclosure of real and personal property in effect at the time of such sale and such alternative notices and conduct of the sale shall constitute sufficient notice of such sale and proper conduct of such sale hereunder. Out of the money arising from such sale, the Trustee shall pay first, all the expenses of the sale and the conveyance, including a commission of five percent (5%) to himself, which commission shall be due and owing in addition to the attorney's fees provided for in the Secured Note, and then to Beneficiary the full amount of principal, interest, attorneys' fees and other charges due and unpaid on the Secured Note and all other Indebtedness secured hereby, rendering the balance of the sales price, if any, to Grantor, his heirs, successors or assigns. The recitals in the conveyance to the purchaser or purchasers shall be full and conclusive evidence of the truth of the matters therein stated, all prerequisites to such sale shall be presumed to have been performed, and such sale and conveyance shall be conclusive against Grantor, his heirs, successors

and assigns.

Beneficiary, if it is the highest bidder, shall have the right to purchase at any sale of the Mortgaged Property, and to have the amount for which such property is sold credited against the Indebtedness then owing.

Beneficiary, in any event, is hereby authorized to appoint a substitute trustee, or a successor trustee, to act instead of the Trustee named herein without other formality than the designation in writing of a substitute or successor trustee; and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Indebtedness has been paid in full, or until the Mortgaged Property is sold hereunder, and each substitute and successor trustee shall succeed to all of the rights and powers of the original trustee named herein.

In the event any sale is made of the Real Property, or any portion thereof, under the terms of this Deed of Trust, Grantor, his heirs, successors and assigns, upon the making of such sale shall forthwith surrender and deliver possession of the Real Property so sold to the purchaser(s) at such sale, and in the event of their failure to do so they shall thereupon from and after the making of such sale be and continue as tenants at will of such purchaser(s), and in the event of their failure to surrender possession of the Real Property upon demand, the purchaser(s), his heirs, successors or assigns, shall be entitled to institute and maintain an action for forcible detainer of said property in the Justice of the Peace Court in the Justice Precinct in which the Real Property, or any portion thereof, is situated.

Upon any foreclosure sale of any of the Mortgaged Property, the purchaser at that sale shall acquire title to all insurance policies on the Mortgaged Property, whether held by Beneficiary or not, including all interest in paid but unearned premiums for such policies.

In addition to Beneficiary's other rights herein, it is agreed that in the event of a default in the payment of the Indebtedness when due or declared, regardless of the commencement of any action to assert any other right or remedy available to Beneficiary, Beneficiary may, but shall not be required to, institute suit for the collection of the Secured Note, and for the foreclosure of this Deed of Trust lien. It is further agreed that if Beneficiary should institute a suit for the collection thereof, and for a foreclosure of this Deed of Trust lien, that it may at any time before the entry of a final judgment dismiss the same, and require the Trustee, their substitute or successor, to sell the Mortgaged Property in accordance with the provisions of this Deed of Trust.

To further secure the Indebtedness, Grantor hereby grants to Beneficiary a security interest in and to the Mortgaged Property insofar as the Mortgaged Property consists of equipment, inventory, fixtures, chattel paper, documents, instruments, accounts, contract rights, consumer goods, farm products, money, general intangibles, goods and any and all other personal property of any kind or character defined in and subject to the provisions of the Texas Uniform Commercial Code, including the proceeds and products of and from any and all of such personal property. If any default occurs under the terms of the Secured Note or this instrument, Beneficiary is and shall be entitled to all of the rights, powers and remedies afforded a Secured party by the Texas Uniform Commercial Code with reference to the personal property and fixtures in which Beneficiary has been granted a security interest herein, or the Trustee or Beneficiary may proceed as to both the real and personal property covered hereby in accordance with the rights, powers and remedies granted under this instrument in respect of the Real Property covered hereby.

Grantor shall upon demand pay to Beneficiary the amount of any and all reasonable expenses, including the fees and disbursements of Beneficiary's counsel and of any expert and agents, which Beneficiary may incur in connection with (i) the administration of this Deed of Trust; (ii) the custody, preservation, use or operation of, or the sale of, collection form, or other realization upon any property,

real and/or personal, described herein; (iii) the exercise or enforcement of any of the rights of Beneficiary hereunder; (iv) the failure by Grantor to perform or observe any of the provisions hereof; (v) the recording of this Deed of Trust and any financing statement(s); and (vi) the issuance of a title insurance policy insuring Beneficiary's interest in the Mortgaged Property, including all premiums related thereto.

Grantor represents that Grantor knows of no fact or circumstance that Grantor has not disclosed to Beneficiary in writing that could materially adversely affect the Mortgaged Property or its value as security for the payment of the Indebtedness.

Any provision herein to the contrary notwithstanding, (i) this conveyance shall not secure payment of any installment loan or any open-end line of credit established under Chapter 3, Chapter 4 or Chapter 15 of the Texas Credit Code (Vernon's Texas Civil Statutes Art. 5069-3.01 et seq.) and (ii) the lien arising under this Deed of Trust shall not terminate until such lien is released pursuant to a written document signed and acknowledged by Beneficiary.

In the event the Mortgaged Property, or any part thereof, securing the payment of the Secured Note is sold, transferred or conveyed by any means prior to payment in full of the Secured Note, then the holder of said Secured Note shall have the option to declare all of the Secured Note, including principal and accrued interest, if any, due and payable; and if the entire balance is not paid within ten (10) days after the same is declared due and payable, the holder of said Secured Note may proceed to exercise all of its rights contained herein. Any failure to exercise this option by the holder of said Secured Note shall not be construed as a waiver of such right and such option may be exercised at any time.

Upon written request of Beneficiary, Grantor agrees to reimburse Beneficiary for the full cost of annual narrative appraisals and environmental assessments of the Real Property collateral described in this Deed of Trust. Each such appraisal or audit shall be ordered directly by Beneficiary from an appraiser or inspector, as applicable, satisfactory to Beneficiary in its sole discretion and shall be in form and substance necessary to comply with all laws and regulations affecting Beneficiary; a copy of each such appraisal and audit shall be provided to Grantor not later than the date on which Grantor's reimbursement is received by Beneficiary. Failure of Grantor to reimburse Beneficiary for any requested appraisal or audit (not to exceed one appraisal and one audit in any twelve month period), which failure is not cured within ten (10) days after notice to Grantor from Beneficiary, shall constitute an event of default under this Deed of Trust. In the event that, as a result of the appraisal, the Beneficiary determines that the then outstanding balance of the Note is more than eighty percent (80%) of the appraised value of the Real Property, within thirty (30) days following written demand by Beneficiary, Grantor will provide Beneficiary, at Beneficiary's option, with additional collateral or pay down the balance of the Note as necessary to reduce the percentage to eighty percent (80%) or lower as reasonably acceptable to Beneficiary.

Grantor, upon the request of Beneficiary, shall execute, acknowledge, deliver and record such further instruments and do such further acts as may be necessary, desirable or proper to carry out the purposes of this Deed of Trust and to subject to the liens and security interests created thereby any property intended by the terms thereof to be covered thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements, improvements or appurtenances to the Mortgaged Property.

This instrument shall be deemed to be and may be enforced from time to time as a Deed of Trust, Chattel Mortgage, Assignment, Contract, Security Agreement, Financing Statement, or Lien on Machinery Situated on Realty, and from time to time as any one or more thereof, and shall constitute a "fixture filing" for purposes of Article 9 of the Texas Uniform Commercial Code.

All of the covenants and agreements herein undertaken to be performed by and the rights conferred upon the Grantor named herein shall be binding upon and inure to the benefit of not only said party, but also its administrators, grantees, successors and assigns.

Grantor represents and warrants to the best of Grantor's knowledge as follows:

(a)     The Mortgaged Property and the operations conducted thereon do not violate any order of any court or governmental authority, except as disclosed to Beneficiary of even date herewith, or Environmental Laws (as hereinafter defined); (b) without limitation of clause (a) above, the Mortgaged Property and the operations currently conducted thereon and the operations conducted by any prior owner or operator of the Mortgaged Property were not and are not in violation of or subject to any existing, pending or threatened action, suit, investigation, inquiry or proceeding by or before any court or governmental authority or to any remedial obligations under Environmental Laws; (c) all notices, permits, licenses or similar connection with the operation or use of the Mortgaged Property have been duly obtained or filed; (d) any hazardous substances or solid waste generated by the Mortgaged Property have in the past been transported, treated and disposed of only by carriers maintaining valid permits under RCRA (as hereinafter defined), and any other Environmental Law, which carriers and facilities have been and are operating in compliance with such permits; (e) Grantor has taken all steps necessary to determine and has disposed of or otherwise released and there has been no threatened release of hazardous substances on or to the Mortgaged Property except in compliance with Environmental Laws; and (f) Grantor has no material contingent liability in connection with any release or threatened release of any hazardous substance or solid waste into the environment.

As used in this Agreement, "Environmental Laws" shall mean any and all laws, statutes, ordinances, rules, regulations, orders, or determinations of any governmental authority pertaining to health or the environment in effect in any and all jurisdictions in which Grantor is conducting or at any time has conducted business, or where the Mortgaged Property is located, or where any hazardous substances generated by or disposed of by Grantor are located, including without limitation, the Clean Air Act, as amended, the Comprehensive Environmental, Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, the Federal Water Pollution Control Act, as amended, the Occupational Conservation and Recovery Act of 1976 ("RCRA"), as amended, the Safe Drinking Water Act, as amended, the Toxic Substances Control Act, as amended, the Superfund Amendments and Reauthorization Act of 1986, as amended, and other environmental conservation or protection laws.

The terms "hazardous substance" and "release" (or "threatened release") have the meanings specified in CERCLA, and the terms "solid waste" and "disposal" (or "disposed") have the meanings specified in RCRA; provided, however, that (i) in the event either CERCLA or RCRA is amended so as to broaden the meaning of any term defined thereby, such broader meaning shall apply subsequent to the effective date of such amendment; (ii) to the extent the laws of the state in which the Mortgaged Property is located establish a meaning for "hazardous substance," "release", "solid waste" or "disposal" which is broader than that specified in either CERCLA or RCRA, such broader meaning shall apply, and (iii) the terms "hazardous substance" and "solid waste" shall include all oil and gas exploration and production waste that may present an endangerment to public health or welfare or the environment, even if such wastes are specifically exempt from classification as hazardous substances or solid wastes pursuant to CERCLA or RCRA or the state law analogous to those statutes.

Beneficiary, or its representatives, will be permitted to enter upon the Mortgaged Property to inspect the Mortgaged Property and any and all improvements thereto.

Grantor covenants and agrees to keep the Mortgaged Property free of any contamination from hazardous substances, solid wastes or other pollutants and to remove the same (or if removal is prohibited

by law, to take whatever action is required by law) promptly upon discovery at Grantor's sole expense. Grantor will establish and implement such procedures as may be necessary to continuously determine and assure that (i) the Mortgaged Property and the operations conducted thereon are in continually with and do not violate the requirements of any Environmental Laws; (ii) no solid wastes are disposed of on the Mortgaged Property; (iii) no hazardous substance will be released on or to the Mortgaged Property in a quantity equal to or exceeding that quantity which requires reporting pursuant to Section 103 of CERCLA, and (iv) no hazardous substance or solid waste is released on or to the Mortgaged Property so as to pose an imminent and substantial endangerment to public health or welfare or the environment.

At all times throughout the term of the Secured Note, including after giving effect to any Sale permitted herein, (a) none of the funds or other assets of Borrower, any guarantor or indemnitor of any portion of the Secured Note or other indebtedness secured hereby, or any principal of any of them, constitute property of, or are beneficially owned, directly or indirectly, by any person, entity or government subject to trade restrictions under U.S. law, including, but not limited to, the International Emergency Economic Powers Act, 50 U.S.C.§§ 1701 et seq., the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001 (Public Law 107-56), The Trading with the Enemy Act, to U.S.C. App. 1 et seq., and any Executive Orders or regulations promulgated under any such legislation with the result that the investment in Grantor, or any such guarantor, indemnitor or principal, as applicable (whether directly or indirectly), is prohibited by law or the Secured Note made by the Beneficiary is in violation of law (any such person, entity or government being referred to herein as an "Embargoed Person"; (b) no Embargoed Person has any interest of any nature whatsoever in Grantor, or any such guarantor, indemnitor or principal, as applicable, with the results that the investment in Grantor, or any such guarantor, indemnitor or principal, as applicable (whether directly or indirectly), is prohibited by law or the Secured Note is in violation of law; and (c) none of the funds of Grantor, or any such guarantor, indemnitor or principal, as applicable, have been derived from any unlawful activity with the result that the investment in Grantor, or any such guarantor, indemnitor or principal, as applicable (whether directly or indirectly), is prohibited by law or the Secured Note is in violation of law.

Grantor will notify Beneficiary in writing promptly of (i) the commencement of any legal or regulatory proceedings affecting the Mortgaged Property or any part thereof, including without limitation, (A) any and all enforcement, clean-up, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable Environmental Laws, (B) all claims made or threatened by any third party against Grantor or the Mortgaged Property relating to damage, contribution, costs recovery compensation, loss or injury resulting from any hazardous substance (the matters set forth in clauses (A) and (B) are hereinafter referred to as "Hazardous Substance Claims"), and (C) Grantor's discovery of any occurrence or condition on the Mortgaged Property that could cause the Mortgaged Property or any part thereof to be subject to any restrictions on the ownership, occupancy, transferability or use of the Mortgaged Property under any Environmental Laws; and (ii) any casualty loss affecting the Mortgaged Property or any portion thereof, and will take such action as may be necessary to preserve Beneficiary's rights affected thereby; and should Grantor fail or refuse take any such action, Beneficiary may, at its election, take such action on behalf and in the name of Grantor and at Grantor's cost and expense. To the fullest extent permitted by law, Grantor agrees to indemnify Beneficiary from and against any and all claims, losses and liabilities growing out of or resulting from any Hazardous Substance Claims with respect to the Mortgaged Property, except claims, losses or liabilities resulting from the gross negligence or willful misconduct of the Beneficiary.

Regardless of any contingency, event, or agreement between Beneficiary and Grantor, the interest contracted for, taken, received, reserved or charged, directly or indirectly by Beneficiary, in connection with this Deed of Trust, the Secured Note, the Indebtedness, any other instrument(s) executed in connection with or as security for the payment of the Indebtedness or the transaction of which the Secured

Note is a part, shall never exceed the maximum, non-usurious amount Beneficiary may contract for, take, receive, reserve and charge under applicable law. If Beneficiary receives interest in excess of such non-usurious amount, then Beneficiary shall either refund that excess to Grantor or credit that excess, as of the time received, to the unpaid principal under the Secured Note, at Grantor's option. Beneficiary's crediting of payments on the Secured Note, as between interest and principal, shall be provisional until the Indebtedness is fully paid, when a final and binding crediting shall be made. In addition, the principal required to be paid by the Secured Note shall not exceed the sum of all advances made by Beneficiary under the Secured Note (including, without limitation, any advances made and retained by Beneficiary in payment of interest or fees). All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Indebtedness will, to the extent permitted by applicable law, be amortized, pro-rated, allocated and spread throughout the full term of such Indebtedness until payment in full so that the rate or amount of interest on account of such Indebtedness does not exceed the maximum, non-usurious rate Beneficiary may charge Grantor in any given year under applicable law, from time to time in effect and applicable to the Indebtedness for so long as such Indebtedness is outstanding. If any of the provisions of this paragraph conflict with any provision(s) in any other paragraph of the Secured Note, or any provision(s) in any other agreement signed by Grantor, the provisions of this paragraph shall control and govern the interpretation of the Secured Note and any such other agreement.

This Deed of Trust shall be governed by the laws of the State of Texas and the laws of the United States pertaining to transactions in Texas. Grantor hereby submits to the jurisdiction of the courts of the United States and to the courts of the State of Texas as to any disputes (collectively, the "Disputes") that arise out of this Deed of Trust, the loan evidence by the Secured Note, the Secured Note and any other agreements executed in connection therewith. Grantor further agrees that venue of any of the Disputes is proper in the U.S. District Courts or Texas state courts sitting in Travis County, Texas.

DATED: April 20, 2017.

**GRANTOR:**

**WC 707 Cesar Chavez, LLC,**
     **a Delaware limited liability company**

By: _____

    Name:  **Natin Paul**
    Title:  **President**

Mailing address of Trustee:

Scott Humphreys, Trustee
3600 W. Parmer Lane
Austin, Texas 78731

Mailing address of Beneficiary:

Amplify Credit Union
Business Lending Department
3600 W. Parmer Lane
Austin, Texas 78727

STATE OF TEXAS     §

COUNTY OF TRAVIS    §

This instrument was acknowledged before me on the <u>18</u> day of <u>April</u>, 2017, by Natin Paul, President of WC 707 Cesar Chavez, LLC.



_____
Notary Public in and for the State of Texas

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

## ATTACHMENT "A"

### PROPERTY DESCRIPTION

Lots 7, 8, 9 and 10, Block 190, ORIGINAL CITY OF AUSTIN, a subdivision in Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, being more particularly described as follows:

Beginning at an iron rod found at the south side of East Cesar Chavez Street (80' wide), the same being the west side of Interstate Highway 35, thence along Interstate Highway 35, South 18°54'00": West 153.83' to an iron rod found; thence along Driskill Street, North 71°05'43" West, 171.91' to an iron rod found; thence along the same, North 71°06'10" West, 43.36' to an iron rod found; thence along lands of James J. Pecora, Sr., Trustee, North 18°50'16" East, 154.17' to an iron rod found; thence along East Cesar Chavez Street, South 70°54'35" East, 43.40' to a PK nail found; thence South 71°01'46" East, 172.03' to the point and place of beginning.
Containing 0.76 of an acre of land, more or less.



FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
April 21 2017 09:38 AM

**EXHIBIT A-3**

**From:** Dodson, Chris <chris.dodson@bracewell.com>
**Sent:** Sunday, May 23, 2021 8:57 PM
**To:** Villareal, Gavin <gavin.villareal@bakerbotts.com>
**Cc:** Phillips, Tom <tom.phillips@bakerbotts.com>
**Subject:** RE: D-1-GN-20-007178; WC 707 Cesar Chavez, LLC v. Cesar Rainey Street LLC

**[EXTERNAL EMAIL]**

Gavin,

Lender's position remains as-stated in Mr. Riley's email to Mr. Elliott below, dated May 7th.

Thanks,
Chris

_____

**CHRISTOPHER L. DODSON**
Partner
chris.dodson@bracewell.com | download v-card
T: +1.713.221.1373 | F: +1.800.404.3970 | M: +1.713.882.8058

**BRACEWELL LLP**
711 Louisiana Street, Suite 2300 | Houston, TX | 77002-2770
bracewell.com | profile | LinkedIn | Twitter



CONFIDENTIALITY STATEMENT
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Villareal, Gavin [mailto:gavin.villareal@bakerbotts.com]
**Sent:** Thursday, May 20, 2021 1:58 PM
**To:** Dodson, Chris; Benesh, Steve
**Cc:** Phillips, Tom
**Subject:** RE: D-1-GN-20-007178; WC 707 Cesar Chavez, LLC v. Cesar Rainey Street LLC

Chris and Steve:

I'm following up on this email requesting a payoff letter for the loan on the property held by WC 707 Cesar Chavez, LLC. WC 707 Cesar Chavez, LLC is ready, willing, and able to tender in full the outstanding amounts owed. Please send a current payoff letter. Thanks.

---

**From:** Villareal, Gavin
**Sent:** Tuesday, May 18, 2021 7:38 PM
**To:** Dodson, Chris <chris.dodson@bracewell.com>; steve.benesh@bracewell.com
**Cc:** Phillips, Tom <tom.phillips@bakerbotts.com>
**Subject:** FW: D-1-GN-20-007178; WC 707 Cesar Chavez, LLC v. Cesar Rainey Street LLC

Chris and Steve:

We are forwarding the below email from Mark Riley who asks that you be contacted regarding the loan on the property held by WC 707 Cesar Chavez, LLC.

I understand that the Cesar Rainey Street LLC has set the property owned by WC 707 Cesar Chavez, LLC for foreclosure sale on June 1, 2021. WC 707 Cesar Chavez, LLC is ready, willing, and able to tender in full the outstanding amounts owed. They have the equitable right redeem in advance of the foreclosure sale.

You previously told the court in this lawsuit that Cesar Rainey Street LLC was entitled to foreclose because "[n]o funds have been tendered [and] no ability to pay has been shown." That is no longer the case.

Please send me the outstanding payoff amount and the wire transfer instructions and WC 707 Cesar Chavez, LLC will promptly wire the payoff funds.

Please call me or Judge Phillips if you have any questions. Thanks.


Begin forwarded message:

> **From:** Mark Riley <riley@riley-cpa-law.com>
> **Date:** May 7, 2021 at 3:41:49 PM CDT
> **To:** Brian Elliott <brian@scalefirm.com>
> **Cc:** Justin Bayne <mail@bcre.services>
> **Subject: D-1-GN-20-007178; WC 707 Cesar Chavez, LLC v. Cesar Rainey Street LLC**


Mr. Elliott:

> Mr. Justin Bayne forwarded me the attached emails that he received from Mr. Paul. Because Mr. Paul is represented by counsel and this matter is in ongoing litigation, I am responding to you as counsel of record to WC 707 Cesar Chavez, LLC ("Borrower") on behalf Cesar Rainey Street LLC ("Lender").

> As you know, in an effort to settle these disputes, Borrower has been provided with six (6) prior payoff statements including per diems, all of which are expired. Because the Borrower is in default and failed to cure its default within the proscribed time period, the Lender intends to pursue its foreclosure remedy now that foreclosure sales are proceeding in Travis County. We intend to post the property for a foreclosure sale to take place on June 1, 2021. As you know, Borrower's prior efforts to enjoin such a sale were denied by Judge Gamble.

If you would like to discuss a settlement of these disputes in an effort to buy peace, please have your counsel contact our litigation counsel at Bracewell LLP.  But be advised that Lender intends to pursue foreclosure at this time.

Thank you.

Mark Riley
Counsel for Lender

**Mark Riley**
Attorney-at-Law | Certified Public Accountant
2731 Robinhood St. | Houston, Texas 77005-2433
T: 713.822.8935
Riley@Riley-CPA-Law.com

Texas State Bar No. 16929700
Texas CPA License No. 031840

CONFIDENTIALITY STATEMENT

*This email message is covered by the Electronic Communications Privacy Act- 18 U.S.C. §§ 2510-2521. This message is being sent by or on behalf of a lawyer, and it is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, attorney privileged and/or confidential or otherwise legally exempt from disclosure. If the reader of this message is not the intended recipient or the employee or agent responsible for the delivery of it to the intended recipient, you are hereby notified that you are not authorized to read, print, or retain this communication, and that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by reply email and delete all copies of this message from your computer system. Thank you in advance for your cooperation.*

*CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by U.S. Treasury Regulations, Mark R. Riley, P.C. informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.*

**From:** Nate Paul <npaul@world-class.com>
**Sent:** Thursday, April 29, 2021 9:24 PM
**To:** Justin Bayne <mail@bcre.services>; jbayne@baynecommercial.com
**Cc:** Michael Merrick <mmerrick@world-class.com>
**Subject:** Re: 707 E. Cesar Chavez

Justin,
I am following up on my previous email below. Thanks.

Best,
Nate

Nate Paul
npaul@world-class.com

---

**From:** Nate Paul <npaul@world-class.com>
**Sent:** Wednesday, April 28, 2021 2:52 PM
**To:** Justin Bayne; jbayne@baynecommercial.com
**Subject:** 707 E. Cesar Chavez

Justin,

Please send a loan payoff statement for 707 E. Cesar Chavez for a payoff date of May 5th with a per diem. We would appreciate getting this current payoff statement by this Friday, April 30th. Thanks.

Best,
Nate

Nate Paul | President & Chief Executive Officer
WORLD CLASS
814 Lavaca St. | Austin, TX 78701
T 512.327.3300 | F 512.322.9238
npaul@world-class.com | www.world-class.com

The information contained in this e-mail is strictly confidential and for the intended use of the addressee only and may also be privileged or otherwise protected by other legal rules. Any disclosure, use or copying of the information by anyone other than the intended recipient is prohibited. If you have received this message in error, please notify the sender immediately by return e-mail and delete this message from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender does not accept liability for any errors or omissions in the contents of this message or for any damage sustained as a result of software viruses and advise that you carry out your own virus checks before opening any attachment. This email contains the views of the author and should not be interpreted as the views of World Class Holding Company, LLC or its affiliates.

**Confidentiality Notice:**

The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

 4 pgs    202140147


STAYS IN FILE

### NOTICE OF SUBSTITUTE TRUSTEE'S SALE

Notice is hereby given that a public sale at auction of the Mortgaged Property (as defined in the recorded Deed of Trust, defined below) will be held at the date, time and place specified in this notice:

PROPERTY TO BE SOLD:

That certain property located in Travis County, Texas, and more particularly described on Exhibit A attached hereto and made a part hereof for all purposes;

Together with all improvements, buildings, easements, furniture, fixtures, equipment, personal property, intangibles, leases, rents, revenues, contracts, plans, accounts, permits, licenses, and all other property interests, and rights of any kind or nature whatsoever described in the Deed of Trust (defined below).

DATE OF SALE: Tuesday, the 1st day of June, 2021 (which is the first Tuesday of that month).

TIME OF SALE: The earliest time at which the sale shall occur is 10:00 o'clock a.m. The sale shall begin at that time or not later than three hours after that time.

PLACE OF SALE: The west steps of the Travis County Courthouse, 1000 Guadalupe St., Austin, Texas 78701, or as designated by the Commissioner's Court pursuant to Section 51.002 of the Texas Property Code as a place where foreclosure sales are to take place.

**INFORMATION REGARDING THE DEED OF TRUST LIEN THAT IS THE SUBJECT OF THIS SALE AND THE INSTRUMENT TO BE FORECLOSED:**

NAME OF DOCUMENT: Deed of Trust (with Security Agreement) dated April 20, 2017, as assigned by that certain Assignment and Assumption of Note and Security Instruments dated September 9, 2020, as such deed of trust may have been modified, amended, restated or extended (the "Deed of Trust").

DATE: April 20, 2017.

GRANTOR: WC 707 CESAR CHAVEZ, LLC, a Delaware limited liability company.

BENEFICIARY: CESAR RAINEY STREET LLC, a Texas limited liability company, successor by assignment from Amplify Credit Union, a Texas banking corporation.

SUBSTITUTE TRUSTEES: Mark Riley, Angela Zavala, and Michelle Jones.

RECORDING INFORMATION: Instrument Number 2017063353, Official Public Records of Travis County, Texas, filed on April 21, 2017, as assigned by Instrument Number 2020175517, Official Public Records of Travis County, Texas, filed on September 23, 2020.

NOTE: Real Estate Lien Note dated April 20, 2017 in the amount of $2,713,252.00, together with any riders, change in terms, renewals, modifications or extensions.

**INDEBTEDNESS SECURED:**

NAME OF DOCUMENTS:  Loan Agreement dated April 20, 2017, as assigned by that certain Assignment and Assumption of Note and Security Instruments dated September 9, 2020, and all other documents delivered in connection therewith (the "Loan Agreement").

DATE: April 20, 2017.

FACE AMOUNT: $2,713,252.00.

BORROWER: WC 707 CESAR CHAVEZ, LLC, a Delaware limited liability company.

LENDER: CESAR RAINEY STREET LLC, a Texas limited liability company, successor by assignment from Amplify Credit Union, a Texas banking corporation.

**SUBSTITUTION OF TRUSTEE:**

NAME OF DOCUMENT:  Appointment of Substitute Trustee

DATE: November 9, 2020.

NAME/ADDRESS OF SUBSTITUTE TRUSTEES:

Mark Riley
2726 Bissonnet St., #240-244
Houston, Texas 77005-1352

Angela Zavala
Foreclosure Network of Texas
10406 Rockley Road
Houston, Texas 77099

Michelle Jones
Foreclosure Network of Texas
10406 Rockley Road
Houston, Texas 77099

DEFAULT AND REQUEST TO ACT:

Numerous Defaults and Events of Default (each as defined in the Loan Agreement) have occurred under the Loan Agreement and the other Loan Documents (as defined in the Loan Agreement) which are secured by the Deed of Trust. The obligations under the Loan Agreement are fully due and payable. The Lender has directed that the Substitute Trustee under the Deed of Trust, conduct this nonjudicial foreclosure and sell the Mortgaged Property, the proceeds of such sale to be applied in accordance with the provisions of the Deed of Trust and the Loan Agreement.

Therefore, at the date, time, and place set forth above, the Substitute Trustee will sell at public auction the Mortgaged Property to the highest bidder for cash, pursuant to the terms of the Deed of Trust. Those desiring to purchase the Mortgaged Property must be able to demonstrate their

## EXHIBIT A

## LEGAL DESCRIPTION

Lots 7, 8, 9 and 10, Block 190 of the ORIGINAL CITY OF AUSTIN, a subdivision in Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, being more particularly described by metes and bounds as follows:

Beginning at an iron rod found at the south side of East Cesar Chavez Street (80' wide), the same being the west side of Interstate Highway 35, thence along Interstate Highway 35, South 18°54'00": West 153.83' to an iron rod found; thence along Driskill Street, North 71°05'43" West, 171.91' to an iron rod found; thence along the same, North 71°06'10" West, 43.36' to an iron rod found; thence along lands of James J. Pecora, Sr., Trustee, North 18°50'16" East, 154.17' to an iron rod found; thence along East Cesar Chavez Street, South 70°54'35" East, 43.40' to a PK nail found; thence South 71°01'46" East, 172.03' to the point and place of beginning. Containing 0.76 of an acre of land, more or less.



**FILED AND RECORDED**
**OFFICIAL PUBLIC RECORDS**

*Dana DeBeauvoir*

**Dana DeBeauvoir, County Clerk**
**Travis County, Texas**

**202140147**      May 11, 2021 10:42 AM

Fee: $3.00          LOPEZS

ability to pay cash on the date the Mortgaged Property is sold. The sale will be made expressly subject to any title matters set forth in the Deed of Trust, but prospective bidders are reminded that by law the sale will also be made subject to all matters of record affecting the Mortgaged Property, if any, to the extent that they remain in force and effect and have not been subordinated to the Deed of Trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any. The Mortgaged Property will be sold in an "as-is, where is, with all faults" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the Deed of Trust. Prospective bidders are advised to conduct an independent investigation of the nature and condition of the Mortgaged Property. The Deed of Trust may encumber both real and personal property. Formal notice is given of Lender's election to proceed against and sell both the real property and the personal property described in the Deed of Trust consistent with Lender's rights and remedies under the Deed of Trust and also Section 9.604 of the Texas Business and Commerce Code.

**NOTICE REGARDING MILITARY SERVICE:  ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

IN WITNESS WHEREOF this Notice of Substitute Trustee's Sale has been executed on this the 11th day of May, 2021.

Mark Riley, Substitute Trustee

THE STATE OF TEXAS              §
                               §
COUNTY OF HARRIS               §

This instrument was ACKNOWLEDGED before me on May 11, 2021, by Mark Riley, as Substitute Trustee, who acknowledged to me that he executed the same for the purposes and consideration therein expressed, and in the capacity therein stated.

JORGE R. CANTU
Notary Public, State of Texas
Comm. Expires 04-11-2025
Notary ID 6629366

Notary Public in and for the State of Texas
My Commission Expires:
Printed Name:

EXHIBIT

**A-5**

# CESAR RAINEY STREET LLC

500 W. 2nd Street, Suite 1900 | Austin, Texas, 78701-4687

## LOAN PAYOFF QUOTE

December 21, 2020

WC 707 Cesar Chavez, LLC
c/o Brian Elliott
SCALE, LLP
315 Montgomery St, 10th Floor
San Francisco, CA 94104

WC 707 Cesar Chavez, LLC ("Borrower") has requested a loan payoff quote from Cesar Rainey Street LLC ("Lender"). Please provide the Lender with the proposed closing date of the loan, the name of the settlement agent or title company that will provide the Lender with a Closing Disclosure, and to whom the Lender may send the funding instructions, loan payoff instructions, lien release, and tax documents.

**THIS STATEMENT REFLECTS THE TOTAL AMOUNT OF PRINCIPAL AND INTEREST DUE UNDER THE TERMS OF THE NOTE/SECURITY INSTRUMENT TO DECEMBER 21, 2020.**

| | |
|---|---|
| **Primary Account Borrower:** | WC 707 Cesar Chavez, LLC |
| **Date Quoted:** | December 21, 2020 |
| **Payoff Good To:** | December 29, 2020 |
| **Interest Rate:** | 18% |
| **Collateral:** | 707 Cesar Chavez, Austin, TX 78701 |
| | 2040-2070 Spring Creek Parkway, |
| | Plano, TX 75023 |

**This Loan is in default. Pursuant to the Loan Documents, the Note was accelerated on June 29, 2020, and the principal and all accrued interest and other fees in the total amount set forth below, are immediately due and owing.**

| Balance Description | Due Lender |
|---|---|
| Unpaid Principal Balance: | $2,553,137.72 |
| Interest through December 21, 2020: | 265,951.85 |
| **Net Amount Due** | **$2,819,089.57** |

Per Diem Interest after December 21, 2020: $1,276.57

This quote does not include Interim Payments, Charges, Insurance, Add–on or other transactions processed after the date above.

The above amount does not include all attorneys' fees incurred to date or all reductions in the amount due from rents collected.

Further, the amount owed may increase due to accruing interest, late fees, or other expenses or charges.

The WC 707 Cesar Chavez, LLC loan and WC Custer Creek Center Property, LLC loan are both in default and are cross-collateralized. Therefore, both notes will have to be paid off under the Cross-Collateral Agreements. As such, please see the Loan Payoff Quotes for both WC 707 Cesar Chavez, LLC and WC Custer Creek Center Property, LLC for the total payoff.

You may contact Lender's Counsel, Mr. Mark Riley with the proposed closing date of the loan and the name of the settlement agent or title company and for further information as to the exact amount owed or to arrange for payment of the exact amount owed on the date of payment.

Payment must be made in the form of a cashier's check, certified check, wire transfer, or money order, or other form of payment acceptable to the Lender.

Lender may apply any partial payment as a credit toward the Borrower's account. However, acceptance of partial payment shall not constitute a waiver of any of the Lender's rights including its right to pursue additional remedies if full payment is not received.

All payoff figures are subject to clearance of funds in transit.

The payoff is subject to final audit when presented.

Any overpayment or refunds will be sent directly to the Borrower.

The payoff is subject to the Lender's claims for indemnification pursuant to the Loan Documents including, without limitation, the fees and expenses of Lender's legal counsel and professionals.

Lender's investigation of the Borrower continues and the Lender reserves its rights to assert additional or amended claims against the Borrower and/or Guarantor(s) as warranted and as further information is developed and the investigation continues.

The payoff may be subject to the approval of the bankruptcy court.

Please call the number listed below to update figures prior to remitting funds as they are subject to change without notice.

Phone: (713) 822-8935
Fax:    (713) 583-2284
Email: Mail@BCRE.Services

EXHIBIT

**B**

1    REPORTER'S RECORD
     VOLUME 1 OF 1
2    TRIAL COURT CAUSE NO. D-1-GN-20-007178

3

4    WC 707 CESAR CHAVEZ, LLC,   ) IN THE DISTRICT COURT
                                 )
5        Plaintiff               )
                                 )
6                                )
     VS.                         ) TRAVIS COUNTY, TEXAS
7                                )
                                 )
8    CESAR RAINEY STREET, LLC,   )
                                 )
9        Defendant               ) 353rd JUDICIAL DISTRICT

10

11

12   --------------------------------------------------

13          REQUEST FOR TEMPORARY INJUNCTION

14   --------------------------------------------------

15          On the 14th day of December, 2020, the

16   following proceedings came on to be heard in the

17   above-entitled and numbered cause before the Honorable

18   Maya Guerra Gamble, Judge presiding, held in Austin,

19   Travis County, Texas, held via videoconference;

20          Proceedings reported by machine

21   shorthand.

22

23

24

25

```
 1                    A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4         BRIAN ELLIOTT
           State Bar No. 21488900
 5         814 Lavaca Street
           Austin, Texas 78701
 6         (512) 605-6622

 7


 8
      FOR THE DEFENDANT:
 9

10         BRACEWELL LLP

11         STEPHEN W. BENESH
           State Bar No. 02132050
12         111 Congress Ave., Suite 2300
           Austin, Texas 78701
13         (512) 494-3680

14         CHRISTOPHER L. DODSON
           State Bar No. 24050519
15         711 Louisiana, Suite 2300
           Houston, Texas 77002
16         (713) 223-2300

17

18

19

20

21

22

23

24

25
```

1    making sure that the exhibits are in the court's -- are

2    accessible to the court.

3                    THE COURT:  Yeah, preferably.

4                    MR. DODSON:  And so, Your Honor, what

5    happened most recently is after the property was

6    posted -- so, we provided a payoff on October 15th,

7    prior to any impending foreclosure.  Note was not paid.

8    We then posted the property for foreclosure for

9    December 1st.  After we did that, the borrower -- the

10   borrower requested an updated payoff.  They did that at

11   4:57 p.m. the Wednesday before Thanksgiving.  On

12   November 25th.  On Monday, November 30th, so the next

13   business day at that point, we provided an updated

14   payoff.

15                    No funds have been tendered, no ability

16   to pay has been shown, and we are entitled to foreclose

17   under that circumstance.  The borrower -- the note has

18   been in default since August; it's been posted for

19   foreclosure three times.  Or, sorry, it's been posted

20   twice, we will post it again -- we intend to post it

21   again tomorrow for a third time.

22                    And so this is just the latest tactic by

23   World Class to try to avoid foreclosure.  And lenders

24   should not be in the position where the borrower can

25   request payoffs over and over and over and over again

1    and then say they disagree with it and get a -- and

2    enjoin a foreclosure.  That puts us in an impossible

3    situation, where we can't get paid and we can't

4    foreclose on our collateral.  And so it's -- we're put

5    in this whipsaw position.

6              As to the cross-collateral agreement,

7    Mr. Elliott is correct, that issue has already been

8    raised and was rejected by another court.  There's a

9    cross-collateral agreement in place covering two

10   properties and Mr. Elliot's client in that case went in

11   for an injunction based on the cross-collateral

12   agreement and lost and then Mr. Elliot's client filed

13   for bankruptcy right before the foreclosure, just like

14   what happened in our case back in August, Your Honor.

15             The cross-collateral agreement was

16   assigned to my client; the loan documents are all

17   assignable.  The cross-collateral agreement says on its

18   face that it applies to the successors and assigns, and

19   the cross-collateral agreement expressly says, um, that

20   in the event of default -- and both of these loans are

21   in default, Your Honor, one loan is now in bankruptcy,

22   so obviously it's in default, and this loan is also in

23   default.  So both loans that are cross collateralized

24   against each other are in default, and the

25   cross-collateral agreement expressly says that in that

REPORTER'S CERTIFICATE

THE STATE OF TEXAS          )

COUNTY OF TRAVIS            )

            I, Alicia DuBois, Official Court Reporter in and for the 459th District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred remotely via videoconference and were reported by me.

            I further certify that this Reporter's Record of the Proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

            WITNESS MY OFFICIAL HAND this, the 18th day of December, 2020.


*/s/ Alicia DuBois*
Alicia DuBois, CSR
Texas CSR 5332
Exp. Date:  1/31/22
Official Court Reporter
459th District Court
Travis County, Texas
P.O. Box 1748
Austin, Texas 78767
(512) 854-9301

## Automated Certificate of eService
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

R. Rogge Dunn
Bar No. 6249500
dunn@RoggeDunnGroup.com
Envelope ID: 53749799
Status as of 5/25/2021 9:09 AM CST

Associated Case Party: WC 707 CESAR CHAVEZ, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rhonda Thomas - Sr. Paralegal | | thomas@roggedunngroup.com | 5/24/2021 3:29:33 PM | SENT |
| Brian Elliott | | brian@scalefirm.com | 5/24/2021 3:29:33 PM | SENT |
| Chase Potter | | Potter@RoggeDunnGroup.com | 5/24/2021 3:29:33 PM | SENT |
| Anna ORichardson | | richardson@roggedunngroup.com | 5/24/2021 3:29:33 PM | SENT |
| Rogge Dunn | | dunn@trialtested.com | 5/24/2021 3:29:33 PM | SENT |
| Brian P.Shaw | | shaw@RoggeDunnGroup.com | 5/24/2021 3:29:33 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeremy Dunbar | | jeremy.dunbar@bracewell.com | 5/24/2021 3:29:33 PM | SENT |
| Terri Franco | | terri.franco@bracewell.com | 5/24/2021 3:29:33 PM | SENT |
| Rogge Dunn | | efiling@roggedunngroup.com | 5/24/2021 3:29:33 PM | SENT |

Associated Case Party: CESAR RAINEY STREET, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Steve Benesh | | steve.benesh@bracewell.com | 5/24/2021 3:29:33 PM | SENT |
| Mark Riley | | riley@riley-cpa-law.com | 5/24/2021 3:29:33 PM | SENT |
| Chris Dodson | | chris.dodson@bracewell.com | 5/24/2021 3:29:33 PM | SENT |